## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **AMERICOLD LOGISTICS, LLC,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**NEW ENGLAND TEAMSTERS & TRUCKING INDUSTRY PENSION FUND, INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 25, and INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 42,**<br><br>    **Defendants.** | C.A. No. _____ |

## COMPLAINT

Plaintiff Americold Logistics, LLC ("Americold") hereby states as follows for its Complaint against defendants New England Teamsters & Trucking Industry Pension Fund ("Pension Fund"), International Brotherhood of Teamsters Local 25 ("Local 25") and International Brotherhood of Teamsters Local 42 ("Local 42") (collectively, the Pension Fund, Local 25 and Local 42 are the "Defendants"):

## INTRODUCTION

1.      This is a unique dispute regarding the meaning of the words "employer" and "withdraw" in private, tripartite agreements between an employer, Americold, and the Pension Plan, Local 25 and Local 42. With the active encouragement of the Pension Fund, in late 2017, Americold entered into two withdrawal and re-entry agreements: one with the Pension Fund and Local 25, and one with the Pension Fund and Local 42. The agreements were drafted by the

Defendants, and the terms they utilized were not subject to any further negotiation by Americold.

The agreements utilized the terms "employer" and "withdraw," which are commonly known and

defined terms from the Employee Retirement Income Security Act of 1974 ("ERISA"), but not

specifically defined in the tripartite agreements.  Americold reasonably relied on its

understanding of the terms as defined by ERISA.

2.      Prior to execution of the parties' agreements, Americold was a contributing

employer in the Pension Fund's heavily underfunded "legacy" plan.  Under the parties'

agreements, Americold simultaneously "completely withdrew" from the "legacy" plan and

reentered into a different segment of the Pension Fund's plan known as the "Alternative Plan,"

which was designed for "new" employers or "reentering" employers.  The purpose of the

agreements was to provide the Pension Fund with increased cash flow through immediate

"withdrawal liability" payments from employers, like Americold, who had "completely

withdrawn" from the "legacy" plan, while also potentially reducing Americold's overall

exposure to withdrawal liability and the total amount of monthly pension contributions to the

Pension Fund.

3.      No provision of either of the two agreements indicated (or even suggested) that

the Pension Fund had modified, altered or eliminated the common ERISA definitions of

"Employer," "Withdrawal," or "Complete" or "Partial" Withdrawal.  The agreements did

provide a penalty (referred to herein as "snapback liability") for employers who subsequently

"withdrew" from the Alternative Plan (after having withdrawn from the "legacy" plan to

participate in the Alternative Plan), a penalty that eliminated the monetary inducements the

Pension Fund extended for employers who "completely withdrew" from the legacy fund and

enter into the Alternative Plan.  The underlying concept of "snapback liability" does not exist

under ERISA and was a creation of the three Defendants in the private, tripartite agreements.

4.      In December 2020, although Americold had not ceased all "covered operations,"

or ceased to have an obligation to contribute to the Pension Fund, that is, it had not "withdrawn"

from the so-called Alternative Plan, the Pension Fund wrongly held that Americold had

withdrawn from the Alternative Plan and improperly charged it with the aforementioned penalty

payment.  There currently are disputes between the parties regarding the meaning of the term

"withdrawal" as it is used in the Withdrawal Agreements, particularly as to whether Americold

has "withdrawn" from the Alternative Plan, thereby triggering snapback liability.  At the time

Americold entered into the Withdrawal Agreements, Defendants led Americold into mistakenly

believing that only a complete or partial withdrawal by Americold as a whole, which has not

occurred, would result in snapback liability.  Accordingly, Americold is seeking an Order of the

Court for monetary damages, declaratory relief and reformation.

5.      Defendants also, upon information and belief, and subject to further investigation

and discovery, have not treated each employer uniformly under the Pension Fund's rules and

amendments.  Instead, upon information and belief, Defendants treated other employers with

multiple collective bargaining agreements ("CBAs") and withdrawal and re-entry agreements as

not having incurred a withdrawal when, as Americold did here, they ceased operations under

one, but not all, CBAs, and did not continue those operations on a nonunion basis. Americold

also seeks, among other things, monetary damages for its disparate treatment by Defendants.

## THE PARTIES

6.      Americold is a Delaware limited liability company with a principal place of

business in Atlanta, Georgia.  Americold's parent is Americold Realty Trust, a Maryland real

estate investment trust with a principal place of business in Atlanta, Georgia.  Americold is a member of the Americold Realty Trust controlled group under ERISA.

7.      The Pension Fund is a multiemployer plan as that term is used in 29 U.S.C. § 1301(a)(3), with a principal place of business in Burlington, Massachusetts.  The Pension Fund can sue or be sued as an entity.  29 U.S.C. § 1132(d).

8.      Local 25 is a labor organization with a principal place of business in Boston, Massachusetts.

9.      Local 42 is a labor organization with a principal place of business in Boston, Massachusetts.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction pursuant to 29 U.S.C. § 1451(c).

11.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and 29 U.S.C. § 1451(d) because the Defendants reside in this District, the Pension Fund is administered in this District, and a substantial part of the events giving rise to the claims herein occurred within this District.

## BACKGROUND

11.     Americold has participated in the Pension Fund under two Collective Bargaining Agreements ("CBAs"), one covering operations in Boston, Massachusetts within the jurisdiction

of Local 25, and one covering operations in Gloucester, Massachusetts within the jurisdiction of Local 42.

13.     Since before November 2020, Americold, through its operations in Gloucester, Massachusetts, has been covered by the Pension Fund and has not partially or completely withdrawn from the Pension Fund.  Accordingly, Americold has not triggered the snapback liability feature of the private, tripartite agreement at the heart of this dispute.

13.     In 2011, the Trustees of the Pension Fund amended the plan document to adopt a "two-pool" method, in which new employers would not have liability for unfunded vested benefits ("UVB") accruing before their entry (the "Amendment").  The Amendment also incorporated a direct attribution method, under which an employer is liable only for its own employees' attributable UVB.  A true and correct copy of the plan document, as amended, is attached hereto as Exhibit A.

14.     Existing employers remained subject to the Pension Fund's original method, the presumptive method, under which a withdrawing employer is liable for a share of the plan's total UVB based on its percentage of required contributions to all required contributions over a 20-year period.  *See* 29 USC §§ 1391(c)(1), (4).

15.     The Pension Benefit Guaranty Corporation ("PBGC") approved the Amendment. However, upon information and belief, and subject to further investigation and discovery, the Pension Fund did not request from the PBGC its approval of definitions of "Employer", "complete withdrawal" or "partial withdrawal" different from the standard ERISA definitions, and the PBGC did not on its own motion provide new definitions of those common terms.

16.     The Pension Fund embarked on a program to have existing employers agree to "withdraw" from the plan and "re-enter" as new employers, paying a discounted amount for their

agreed withdrawal liability in monthly installments for thirty (30) years, without interest, in addition to contributions due under the terms of their CBAs, as part of the withdrawal step.  Such a program could be beneficial to both the Pension Fund and employers, as it would provide the Fund with increased cash flow, while potentially reducing employers' exposure to withdrawal liability.

17.     Under the Pension Fund's model agreement, if, after withdrawing and re-entering as a new employer, the "employer" were later to "withdraw" from the Fund, it would owe larger monthly payments, to account for the difference between its actual withdrawal liability and its deemed withdrawal liability under the agreement (referred to herein as "snapback" liability).

18.     The agreements utilized commonly known terms from ERISA that were familiar to the parties, "employer," "complete withdrawal," and "partial withdrawal."  *See* 29 USC §§ 3(5), (9), 1301(b)(1), 1383(a), 1385(a).  Because these terms were known and understood by the parties to be defined by ERISA, the Defendants did not define those terms in the agreements and, under the circumstances, it was reasonable for Americold to rely on the ERISA definitions of these terms.

19.     In early 2017, Edward Groden, the Executive Director of the Pension Fund, approached Americold about such a "withdrawal and reentry" agreement.  In response to an inquiry by Americold, Mr. Groden advised Americold by email dated October 19, 2017, as follows:

> The issue of fairness and parity is raised by every company considering entering the direct attribution pool, whether as a transition employer or a new employer....
>
> This Pension Fund introduced a separate and distinct withdrawal liability [direct attribution] pool in 2011 for newly participating employers, but also, so-called, transition employers who withdraw from the presumptive pool approach with respect to pre-transition participation and enter into the direct attribution pool.

This direct attribution pool is required by ERISA to measure for each employer in it, the contributions made against the vested pension benefits earned by that employer's membership.

These Pension Fund Trustees agreed to establish a second, direct attribution withdrawal liability pool only under the condition that actuarial projections demonstrated that the contributions made by each and every employer in the direct attribution pool is expected to fully fund the present value of vested pension benefits earned by each and every employer in that pool.

This Pension Fund has nearly 400 employers in a wide and diverse number of industries. This Pension Fund has run analyses of 100+ employers considering transition and a comparable number of potential new employers. The overarching theme: each employer is unique, based on who they hire, how long they have been employed and the likelihood they will retire from the employer. . . .

At your request, our actuary has verified the contribution rate applicable to the current pension accrual for both bargaining units.  In addition, those calculations were performed on the entire Americold membership represented by both local unions... Based on those calculations, the Pension Fund proposed the particular contribution rates for Americold in the event it desired to transition into the direct attribution liability pool.

A true and correct copy of Mr. Groden's email is attached hereto as Exhibit B.

20.     Mr. Groden's October 19, 2017 email did not state, let alone suggest, that the two Americold bargaining units would be treated as separate employers for purposes of determination of withdrawal and assessment of snapback liability under a withdrawal and re-entry agreement.  On the contrary, the email repeatedly referred to "the employer," but did not define that term.[1]  Based in part on the content of that email, Americold indicated a willingness to sign an agreement effecting such a withdrawal and re-entry.

21.     The Pension Fund insisted that Americold enter into separate withdrawal and re-entry agreements for each bargaining unit.  In response, Americold requested that the Pension Fund provide it with examples of withdrawal and re-entry agreements signed by other similarly

---

[1] In ERISA, the term "employer" includes all trades or businesses within the same controlled group, and whether a withdrawal occurs is determined on a controlled group basis.

situated employers.  The Pension Fund on more than one occasion declined to provide examples;

however, it assured Americold that it would be treated the same as other employers.

22.     Eventually, the Pension Fund and both Local Unions agreed to Americold's

withdrawal and re-entry.  Accordingly, Americold, the Pension Fund, and the respective Local

Unions signed separate sets of agreements – each consisting of a withdrawal agreement and a re-

entry agreement – on October 18, 2017.  True and correct copies of the Withdrawal Agreement

and Reentry Agreement with the Pension Fund and Local 25 are attached hereto as Exhibits C1

and C2, and true and correct copies of the Withdrawal Agreement and Reentry Agreement with

the Pension Plan and Local 42 are attached hereto as Exhibit D1 and Exhibit D2.

23.     Each set of withdrawal and re-entry agreements provided for a deemed

withdrawal from and re-entry to the Pension Fund, with "the Employer" to pay an agreed amount

per month for 30 years to satisfy its deemed withdrawal liability, in addition to contributions for

current work.  Each set of agreements further provided that "the Employer" would be charged

snapback liability if the Employer subsequently incurred a withdrawal.  Snapback liability would

be paid over 20 years.

24.     Under the set of agreements with Local 25 applicable to Americold's Boston

operations, Americold agreed to pay $6,460 per month for 30 years toward its deemed

withdrawal liability of $2,325,600.  Its potential snapback liability under that set of agreements

was $1,512,786, payable over 20 years.

25.     The set of agreements with Local 42 applicable to Americold's Gloucester

operations called for higher deemed withdrawal liability and snapback liability and payments,

due to Americold's larger operations at that location.  For Gloucester, Americold agreed to pay

$31,547 per month over 30 years toward its deemed withdrawal liability of $11,356,800.

26.     Americold closed its Boston operations in November 2020, after the premises was

sold.  In response, by email dated December 21, 2020, the Pension Fund issued an invoice to

Americold for snapback liability (the "Invoice"), increasing the total monthly payment for that

operation to $17,786 for January 2021.  A true and correct copy of the Invoice is attached hereto

as Exhibit E.  The Pension Fund has issued similar invoices to Americold in the succeeding

months.

27.     Americold advised the Pension Fund in a letter dated March 15, 2021, that

it had not withdrawn from the Alternative Plan.  Americold further stated that it would

pay the increased monthly payment under protest.

28.     Under 29 USC §§ 1002(5), (9) and 1301(b), an "employer" may consist of a

single legal entity or may comprise all trades or businesses under common control.  Americold is

a member of the Americold Realty Trust controlled group.  Thus, all controlled group operations

that participate in the Alternative Plan are considered in determining whether a "withdrawal"

occurred.  Here, there was no withdrawal as that term is understood by the parties.

29.     Under 29 USC § 1383(a), an employer incurs a complete withdrawal when it

permanently ceases all covered operations or ceases to have an obligation to contribute under a

multiemployer  plan.  Americold has not ceased all covered operations; nor has it ceased to have

an obligation to contribute to the Pension Fund.  Americold is still operating in Gloucester,

Massachusetts, and is still contributing to the Pension Fund for its Gloucester, Massachusetts

operations.

30.     Under 29 USC § 1385, an employer incurs a partial withdrawal when it has a 70-

percent contribution decline or ceases to have an obligation to contribute at one or more but

fewer than all facilities or under one or more but fewer than all CBAs but continues those operations, i.e., on a nonunion basis.  Americold has not done so.

31.     Americold wrote to the Pension Fund again on March 15, 2021, reiterating its position that it did not withdraw.  Americold explained that, among other things, the Withdrawal Agreement uses the term "Employer," which the Withdrawal Agreement defines as Americold, and the terms "withdraw" or "withdrawal," which are terms of art under the governing statutory provisions and are not otherwise defined in the Withdrawal Agreement.  The letter further reiterated that Americold has not withdrawn from the Pension Fund.  A true and correct copy of the March 15, 2021 letter is attached hereto as Exhibit F.  The Pension Fund did not respond to the March 15, 2021 letter in writing.

## COUNT I
### (Breach of Contract – Pension Fund)

32.     Americold restates and incorporates by reference the paragraphs set forth above as if fully stated herein.

33.     The Withdrawal Agreement defines "Employer" as Americold but does not expressly include a definition of "withdrawal" anywhere in the terms of the Agreement.  Withdrawal is a term of art under 29 U.S.C. § 1381, *et seq*., and the parties intended the Withdrawal Agreement to incorporate the meaning of withdrawal as defined by ERISA.

34.     Although Americold has not incurred a withdrawal under the plain terms of the Withdrawal Agreement, and continues to operate in Gloucester, Massachusetts, the Pension Fund has nevertheless charged Americold for snapback liability when Americold closed its Boston operations.

35.     Despite repeated requests, the Pension Fund has refused to comply with the plain terms of the Withdrawal Agreement and continues to charge Americold with snapback liability.

36.     As a direct and proximate cause of the willful and material breach of the Withdrawal Agreement by the Pension Fund, Americold has suffered damages in excess of $75,000.

## COUNT II
### (Breach of the Duty of Good Faith and Fair Dealing – All Defendants)

37.     Americold restates and incorporates by reference the paragraphs set forth above as if fully stated herein.

38.     By virtue of its business and contractual relationship with Americold, Defendants owed Americold a duty of good faith and fair dealing.

39.     Upon information and belief, and subject to further investigation and discovery, Defendants materially breached their duty of good faith and fair dealing to Americold by: (1) treating other employers with multiple CBAs and withdrawal and re-entry agreements as not having incurred a withdrawal when they cease operations under one, but not all CBAs, and do not continue those operations on a nonunion basis; while (2) treating Americold differently under the same circumstances.

40.     As a direct and proximate cause of Defendants' breach of the covenant of good faith and faith dealing, Americold has suffered damages in an amount to be determined at trial, but not less than $75,000.

## COUNT III
### (Declaratory Judgment – All Defendants)

41.     Americold restates and incorporates by reference the paragraphs set forth above as if fully stated herein.

42.     There currently is an actual controversy between the parties regarding the

meaning of the term "withdrawal" in the Withdrawal Agreements, and whether Americold has

"withdrawn" from the Pension Fund.

43.     Americold seeks and is entitled to a declaratory judgment pursuant to 28 U.S.C. §

2201 that (a) it has not withdrawn from the plan; (b) it was improperly charged "snapback"

liability under the Withdrawal Agreement it entered into with the Pension Fund and Local 25;

and (c) the definition of withdrawal in the Withdrawal Agreements is governed by 29 U.S.C. §

1381, *et seq.*

## COUNT IV
### (Breach of MGL Ch. 93A, §§ 2(a), 11 – All Defendants)

44.     Americold restates and incorporates by reference the paragraphs set forth above

as if fully stated herein.

45.     Pursuant to Massachusetts General Laws Chapter 93A, § 2(a), it is unlawful to

engage in unfair or deceptive acts or practices in the conduct of any trade or commerce.  Under

Massachusetts General Laws Chapter 93A, § 11, "[a]ny person who engages in the conduct of

any trade or commerce and who suffers any loss of money or property, real or personal, as a

result of the use or employment by another person who engages in any trade or commerce of an

unfair method of competition or an unfair or deceptive act or practice declared unlawful by

section two" may recover damages and be awarded equitable relief.

46.     Upon information and belief, and subject to further investigation and discovery,

Defendants engaged in unfair or deceptive acts or practices towards Americold by treating other

employers with multiple CBAs and withdrawal and re-entry agreements as not having incurred a

withdrawal when they cease operations under one, but not all CBAs, and do not continue those

operations on a nonunion basis.  Defendants' disparate treatment of Americold, and associated

unfair and deceptive acts and practices, were knowing and willful.

47.     As a direct and proximate cause of the Defendants' unfair or deceptive acts or

practices, Americold suffered a loss of money when it was forced to make "snapback" payments

to the Pension Fund.

48.     Americold is entitled to recover its damages in an amount to be determined at

trial, but not less than $75,000, trebled, plus attorneys' fees and costs.

**COUNT V**
**(Breach of 29 U.S.C. § 1394 – All Defendants)**

49.     Americold restates and incorporates by reference the paragraphs set forth above

as if fully stated herein.

50.     Pursuant to 29 U.S.C. § 1394, "[a]ll plan rules and amendments authorized under

this part shall operate and be applied uniformly with respect to each employer, except that

special provisions may be made to take into account the creditworthiness of an employer."

51.     Upon information and belief, and subject to further investigation and discovery,

Defendants materially breached 29 U.S.C. § 1394 by not applying uniformly to each employer

all plan rules and amendments.  Instead, upon information and belief, and subject to further

investigation and discovery, Defendants treated other employers with multiple CBAs and

withdrawal and re-entry agreements as not having incurred a withdrawal when they cease

operations under one, but not all CBAs, and do not continue those operations on a nonunion

basis.

52.     As a direct and proximate cause of the Pension Fund's breach of 29 U.S.C. §

1394, Americold has suffered damages in an amount to be determined at trial.

## COUNT VI
### (Equitable Estoppel – All Defendants)

53.     Americold restates and incorporates by reference the paragraphs set forth above as if fully stated herein.

54.     Defendants misrepresented to Americold that only a complete or partial withdrawal by Americold, as a whole, would result in snapback liability, and that the withdrawal agreement was embodied in multiple documents solely to accommodate the local unions.

55.     Defendants made these material misrepresentations to Americold in order to induce it to enter into the Withdrawal Agreements.

56.     Americold was not aware that Defendants intended to deem Americold as having withdrawn from the Pension Fund and to charge Americold with "snapback" liability even when it had not ceased all "covered operations" or ceased to have an obligation to contribute to the Pension Fund.

57.     Americold relied on Defendants' misrepresentations, to its detriment.

58.     The Defendants should be estopped from asserting that the Withdrawal Agreements should be read as separate agreements rather than as a single agreement and that a withdrawal has occurred, and from charging Americold with "snapback" liability.

## COUNT VII
### (Return of Payments Made under Protest – Pension Fund)

59.     Americold restates and incorporates by reference the paragraphs set forth above as if fully stated herein.

60.     Americold was improperly required to make snapback payments to the Pension Fund, which payments it made under protest pending discussions with the Pension Fund.

61.     Americold, however, has not incurred a withdrawal under the plain terms of the parties' Withdrawal Agreement.

62.     Pursuant to 29 U.S.C. §§ 1103(c) and 1399(d) and its implementing regulations, the Pension Fund is obligated to return those snapback payments with interest.

## COUNT VIII
### (Reformation – All Defendants)

63.     Americold restates and incorporates by reference the paragraphs set forth above as if fully stated herein.

64.     A court may reform an agreement to remedy fraud or mutual mistake.

65.     By their acts and omissions, the Defendants led Americold into mistakenly believing that only a complete or partial withdrawal by Americold, as a whole, would result in snapback liability, and that their withdrawal agreement was embodied in multiple documents solely to accommodate the local unions.

66.     The Withdrawal Agreements should be reformed so that they are read as a single agreement providing that only a statutory withdrawal by Americold, taken as a whole, results in snapback liability.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Americold respectfully prays that this Court:

A.     Enter judgment in favor of Americold and against the Pension Fund and Local 25 for breach of contract and return of payments made under protest.

B.     Enter judgment in favor of Americold and against all Defendants for breach of the covenant of good faith and fair dealing; equitable estoppel; breach of Massachusetts General Laws Chapter 93A, § 2(a); and breach of 29 U.S.C. § 1394.

C.     Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 in favor of Americold that (a) Americold has not withdrawn from the plan; (b) Americold was improperly charged "snapback" liability under the Withdrawal Agreement it entered into with the Pension Fund and Local 25; and (c) the term "withdrawal" as used in the Withdrawal Agreements is defined by 29 U.S.C. § 1381, *et seq*.

D.     Enter an Order prohibiting the Pension Fund from asserting that the Withdrawal Agreements should not be read as a single agreement and that a withdrawal has occurred, and from charging Americold with "snapback" liability.

E.     Enter an Order requiring the Pension Fund to refund all of Americold's snapback payments made under protest from January 2021 to present, with interest.

F.     Reform the Withdrawal Agreements so that they provide that only a statutory withdrawal by Americold, taken as a whole, results in snapback liability.

G.     Award Americold damages in an amount to be determined at trial, but not less than $75,000.

H.     Award Americold treble damages and attorneys' fees under Massachusetts General Laws Chapter 93A §11.

I.     Award Americold all such other relief as this Court deems just and proper.

 Dated:  June 27, 2022                              Respectfully submitted,


                                                    */s/ Stephen D. Rosenberg*
                                                    Stephen Rosenberg, BBO# 558415
                                                    Israel Goldowitz (*pro hac vice application
                                                    forthcoming*)
                                                    THE WAGNER LAW GROUP
                                                    125 High Street
                                                    Oliver Street Tower, 5th Floor
                                                    Boston, MA 02110

Telephone: (617) 357-5200
Facsimile: (617) 357-5250
srosenberg@wagnerlawgroup.com
igoldowitz@wagnerlawgroup.com

Christopher M. Loveland (*pro hac vice application forthcoming*)
Sheldon M. Kline (*pro hac vice application forthcoming*)
SHEPPARD MULLIN RICHTER &
  HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006-6801
Telephone:  (202) 747-1924
Facsimile: (202) 747-3832
cloveland@sheppardmullin.com
skline@sheppardmullin.com

*Counsel for Plaintiff Americold Logistics, LLC*