# EXHIBIT A

# COMPLETE RULES AND REGULATIONS

## FOR THE

## NEW ENGLAND TEAMSTERS & TRUCKING

## INDUSTRY PENSION PLAN

**Amended and Restated Effective as of October 1, 1997**

**Including all Amendments Through September 30, 2002**

# NEW ENGLAND TEAMSTERS & TRUCKING INDUSTRY PENSION PLAN

## Restated Effective as of October 1, 1997

## Including All Amendments Through September 30, 2002

## TABLE OF CONTENTS

**ARTICLE I – DEFINITIONS**

| | | |
|---|---|---|
| 1.01 | Actively Engaged in Covered Employment | 1 |
| 1.02 | Actuarial Equivalent | 1 |
| 1.03 | Actuary | 2 |
| 1.04 | Alternate Payee | 2 |
| 1.05 | Beneficiary | 2 |
| 1.06 | Calendar Year | 2 |
| 1.07 | Code | 2 |
| 1.08 | Collective Bargaining Agreement | 2 |
| 1.09 | Contributing Employer | 3 |
| 1.10 | Contribution | 3 |
| 1.11 | Contribution Period | 3 |
| 1.12 | Contribution Rate | 4 |
| 1.13 | Contributory Credit | 4 |
| 1.14 | Covered Employment | 4 |
| 1.15 | Disqualifying Employment | 4 |
| 1.16 | Disqualifying Employment Definitions | 4 |
| 1.17 | Effective Date | 5 |
| 1.18 | Employee | 5 |
| 1.19 | ERISA | 6 |
| 1.20 | Fund | 6 |
| 1.21 | Hour of Service | 6 |
| 1.22 | Local Union | 6 |
| 1.23 | Normal Retirement Age | 6 |
| 1.24 | Participant | 7 |
| 1.25 | Past Service Credit | 7 |
| 1.26 | Pension Credit | 7 |
| 1.27 | Pensioner | 7 |
| 1.28 | Plan | 7 |
| 1.29 | Plan Year | 7 |
| 1.30 | Spouse | 7 |
| 1.31 | Trust Agreement | 8 |
| 1.32 | Trustees | 8 |
| 1.33 | Gender | 8 |

# TABLE OF CONTENTS

(continued)

## ARTICLE II - BASIS OF EMPLOYER PARTICIPATION IN FUND

| | | |
|---|---|---|
| 2.01 | General | 9 |
| 2.02 | Acceptance of a Contributing Employer | 9 |
| 2.03 | Acceptance of New Local Unions | 9 |
| 2.04 | Standard Form of Participation Agreement | 9 |
| 2.05 | Conditions for Participation | 10 |
| 2.06 | Notice of Acceptance | 10 |
| 2.07 | Maintenance of Participation | 10 |
| 2.08 | Termination of Participation | 11 |
| 2.09 | Cancellation of Past Service Credit | 11 |

## ARTICLE III - BASIS OF EMPLOYEE PARTICIPATION

| | | |
|---|---|---|
| 3.01 | Commencement of Participation | 13 |
| 3.02 | Termination of Participation | 13 |
| 3.03 | Reinstatement of Participation | 13 |

## ARTICLE IV - PENSION CREDIT

| | | |
|---|---|---|
| 4.01 | Pension Credit | 14 |
| 4.02 | Contributory Credit | 14 |
| 4.03 | Past Service Credit | 15 |
| 4.04 | Amount of Past Service Credit Limitations | 16 |
| 4.05 | Past Service Credit for First Year of Contribution Period | 16 |
| 4.06 | Pension Credit for Military Service | 17 |
| 4.07 | Limitation of Pension Credit | 17 |

## ARTICLE V - VESTING SERVICE & COMPLETE BREAK IN SERVICE

| | | |
|---|---|---|
| 5.01 | Vested Status | 18 |
| 5.02 | Years of Vesting Service | 19 |
| 5.03 | Complete Break in Service | 19 |
| 5.04 | Exceptions to Complete Break in Service | 21 |
| 5.05 | Restoring Pension Credit | 22 |

# TABLE OF CONTENTS

### (continued)

**ARTICLE VI - PENSION ELIGIBILITY & AMOUNTS**

| | | |
|---|---|---|
| 6.01 | General Eligibility Requirements | 23 |
| 6.02 | Accrual and Accrued Benefit | 23 |
| 6.03 | Contributory Service Accrual and Accrued Benefit | 25 |
| 6.04 | Past Service Accrual | 26 |
| 6.05 | Regular Pension | 27 |
| 6.06 | Early Retirement Pension | 27 |
| 6.07 | Thirty Year Full Service Pension | 28 |
| 6.08 | Minimum Thirty Year (75%) Service Pension | 28 |
| 6.09 | Statutory Pensions | 28 |
| 6.10 | Special Service Pensions | 29 |
| 6.11 | Non-Duplication With Other Benefits | 34 |
| 6.12 | Benefits After a Substantial Interruption of Service | 35 |
| 6.13 | Actuarial Increase for Late Retirement | 37 |
| 6.14 | Cancellation and Reduction | 37 |
| 6.15 | Special Benefit Adjustments | 37 |
| 6.16 | Special Conditions and Benefits | 37 |
| 6.17 | Rounding of Monthly Pension Amount | 37 |

**ARTICLE VII – DISABILITY**

| | | |
|---|---|---|
| 7.01 | Disability Pensions | 38 |
| 7.02 | Total and Permanent Disability Defined | 39 |
| 7.03 | Commencement and Termination of Disability Pension | 39 |
| 7.04 | Restriction on Employment by Disability Pensioner | 41 |
| 7.05 | Benefits Payable Upon Death | 42 |
| 7.06 | Non-Duplication with Other Benefits | 43 |

**ARTICLE VIII - PENSION PAYMENT FORMS, TYPES AND OPTIONS**

| | | |
|---|---|---|
| 8.01 | Normal Form of Pension | 44 |
| 8.02 | Types of Pensions | 44 |
| 8.03 | Benefit Payment Options | 45 |
| 8.04 | Rejection of Normal Form of Pension for Married Participants | 47 |
| 8.05 | Special Rules | 48 |
| 8.06 | Commutation of Pension | 49 |
| 8.07 | Direct Rollover Distributions | 49 |

# TABLE OF CONTENTS

(continued)

**ARTICLE IX - BENEFITS UPON DEATH PRIOR TO RETIREMENT**
| | | |
|---|---|---|
| 9.01 | Single Payment Death Benefit for Death During Active Service | 51 |
| 9.02 | Surviving Spouse Annuity | 52 |
| 9.03 | Thirty Six Month Annuity for Unmarried Participants | 54 |

**ARTICLE X - APPLICATIONS, BENEFITS PAYMENTS AND RETIREMENT**
| | | |
|---|---|---|
| 10.01 | Applications | 55 |
| 10.02 | Information and Proof | 55 |
| 10.03 | Action of Trustees | 55 |
| 10.04 | Right of Appeal | 56 |
| 10.05 | Benefit Payments | 56 |
| 10.06 | Retirement | 57 |
| 10.07 | Incompetence or Incapacity of a Pensioner or Beneficiary | 57 |
| 10.08 | Designation of Beneficiary | 58 |
| 10.09 | Non-Assignment of Benefits | 58 |
| 10.10 | No Right to Assets | 58 |
| 10.11 | Maximum Limitation | 59 |
| 10.12 | Waiver of Benefits | 60 |
| 10.13 | Working After Retirement | 60 |

**ARTICLE XI – SUSPENSION OF BENEFITS**
| | | |
|---|---|---|
| 11.01 | Suspension of Benefits | 61 |
| 11.02 | Benefit Payments Following Suspension | 63 |

**ARTICLE XII – MISCELLANEOUS**
| | | |
|---|---|---|
| 12.01 | Non-Reversion | 65 |
| 12.02 | Limitation of Liability | 65 |
| 12.03 | Termination of the Plan | 65 |
| 12.04 | Savings Clause | 67 |
| 12.05 | Merger | 67 |
| 12.06 | Missing Participants | 67 |
| 12.07 | Benefits Payable Only to Participant, Qualified Spouse, Beneficiary or Alternate Payee | 67 |

# TABLE OF CONTENTS

(continued)

**ARTICLE XIII - PARTIAL PENSIONS UNDER RECIPROCAL AGREEMENT**

| | | |
|---|---|---|
| 13.01 | Purpose | 68 |
| 13.02 | Related Plans | 68 |
| 13.03 | Related Pension Credit | 68 |
| 13.04 | Combined Pension Credit | 68 |
| 13.05 | Partial Pension Eligibility | 68 |
| 13.06 | Election of Pension | 69 |
| 13.07 | Partial Pension Amount | 69 |
| 13.08 | Payment of Partial Pensions | 69 |
| 13.09 | Effective Date | 69 |
| 13.10 | Termination of Partial Pension | 69 |

**ARTICLE XIV – AMENDMENTS**

| | | |
|---|---|---|
| 14.01 | Amendment | 70 |

**ARTICLE XV - EMPLOYER WITHDRAWAL LIABILITY**

| | | |
|---|---|---|
| 15.01 | Preamble | 71 |
| 15.02 | Calculation of Withdrawal Liability | 71 |
| 15.03 | Special Rules With Respect to Employer Contributions | 71 |
| 15.04 | Payment of Withdrawal Liability | 72 |
| 15.05 | Resolution of Disputes | 73 |
| 15.06 | Construction Industry Exemption | 74 |
| 15.07 | Free Look Rule | 75 |

# TABLE OF CONTENTS

### (continued)

**APPENDIX A**   -   Determination of Type of Collective Bargaining Agreement ...........................77

**APPENDIX B**   -   Provisions for Certain Groups of Participants .................................................79

**APPENDIX C**   -   Special One-Time Benefit Adjustments .........................................................82

**TABLE 1A**   -   Fractional Contributory Credit

**TABLE 1B**   -   Contributory Credit for Hours of Service in Excess of 1,800

**TABLE 2A**   -   Contributory Service Accrual for Each Year of Contributory Credit
*[For Participants With 6 Months of Contributory Credit Earned On and After January 1, 1991]*

**TABLE 2B**   -   Contributory Service Accrual for Each Year of Contributory Credit
*[For Participants With 6 Months of Contributory Credit Earned On and After January 1, 1991]*

**TABLE 3**   -   Early Retirement Reduction Percentages
*[For Participants With 6 Months of Contributory Credit Earned On and After January 1, 1991]*

**TABLE 4A**   -   Monthly Special Service Pensions – Plan A Schedule

**TABLE 4A1**   -   Monthly Special Service Pensions – Plan A1 Schedule

**TABLE 4B**   -   Monthly Special Service Pensions – Plan B Schedule

**TABLE 4C**   -   Monthly Special Service Pensions – Plan C Schedules

**TABLE 5**   -   Husband and Wife Pension Percentages

**TABLE 6**   -   Minimum Five Year Contribution Rate Requirements

**TABLE 7**   -   Calculation of Resumed Amount Following Suspension

# NEW ENGLAND TEAMSTERS & TRUCKING INDUSTRY PENSION PLAN

### Amended and Restated Effective as of October 1, 1997
### Including All Amendments Through September 30, 2002

The New England Teamsters & Trucking Industry Pension Fund was created by virtue of an Agreement and Declaration of Trust dated April 11, 1958 for the purpose of providing pension and retirement benefits for employees represented by various Teamsters local unions in New England. This Pension Plan is intended to qualify under Section 401(a) of the Code as a multiemployer trust, within the meaning of Section 414(f) of the Code. This Pension Plan is a defined benefit plan within the meaning of Section 414(j) of the Code.

The Trustees of the New England Teamsters & Trucking Industry Pension Fund amended the Pension Plan in the form of a completely restated plan effective as of October 1, 1976 and October 1, 1985. The restated Pension Plan was further restated in its entirety as of October 1, 1989, and amended from time to time thereafter. This restatement is effective as of October 1, 1997, although it includes all subsequent plan changes through September 30, 2002.

These Rules and Regulations govern the benefits provided to Participants who retire after September 30, 1997, however some provisions require service in Covered Employment after September 30, 1997. Benefits for Participants who do not meet either test are covered by the prior documents governing the Plan, unless specifically noted otherwise in this document.

# ARTICLE I

# DEFINITIONS

Unless the context or subject matter otherwise requires, the following definitions shall govern in the Plan:

**SECTION:**

**1.01    ACTIVELY ENGAGED IN COVERED EMPLOYMENT**

    (a)   If a determination is being made of eligibility for a death or disability benefit, a Participant shall be deemed "Actively Engaged in Covered Employment" if he earned at least 18 months of Contributory Credit in the 36 consecutive months immediately preceding the month in which the Participant died or became totally and permanently disabled.

    (b)   If a determination is being made of eligibility for a retirement benefit, a Participant shall be deemed "Actively Engaged in Covered Employment" if he earned at least 18 months of Contributory Credit in the 36 months ending on the last day of Covered Employment.

    (c)   In the event that an Employee did not earn 18 months of Contributory Credit in the previous 36 consecutive months specified because he was disabled as evidenced by the receipt of disability income benefits from Federal, State, Workers' Compensation, local union health and welfare fund, or other employer paid disability programs, the period for which he continued to receive such income shall be excluded from the test period for the purposes of satisfying the requirement that an Employee be "Actively Engaged in Covered Employment".

    (d)   Notwithstanding any provision to the contrary contained in this Section 1.01, effective August 1, 1999, in the event that an Employee does not earn 18 months of Contributory Credit in 36 consecutive months as provided in this Section 1.01, Contributory Credit paid by the Employer after the date of disability for absences due to illnesses or injuries shall be considered part of the required 18 months of Contributory Credit as required by the Collective Bargaining Agreement.  However, in no event, shall such Contributory Credit paid by the Employer exceed 12 months.

**1.02    ACTUARIAL EQUIVALENT**

The "Actuarial Equivalent" of a benefit means another benefit (differing as to payee or as to time or form of payment) of the same value when computed on the basis of the 1971 Group Annuity Table Male for calculations involving a Participant, and the 1971 Group Annuity Table Female for calculations involving a surviving Spouse, Beneficiary, or Alternate Payees and 8.5% interest.

1

Notwithstanding the above:

(a) Any payments under the Lump Sum Option or commuted values which become payable prior to October 1, 1995 shall be determined using the interest rate that would be used by the Pension Benefit Guaranty Corporation to value annuities under plans terminating on the October 1 of the Plan Year in which the single sum payment is made.

(b) Any payments under the Lump Sum Option or commuted values which become payable October 1, 1995 or later shall be determined using, for each Plan Year, the applicable interest rate as defined by Section 417(e)(3)(A)(ii)(II) of the Code as published by the Federal Reserve for the month of June preceding the beginning of the Plan Year, and the mortality table referenced in Section 417(e)(3) of the Code.

**1.03   ACTUARY**

"Actuary" means the "enrolled actuary" or actuarial firm which employs an "enrolled actuary," as provided in ERISA, engaged by the Trustees to advise them on the actuarial requirements of the Plan.

**1.04   ALTERNATE PAYEE**

"Alternate Payee" means any Spouse, former Spouse, child or other dependent of the Participant recognized by a "qualified domestic relations order" under Code Section 414(p) as having a right to receive all or a portion of the Participant's nonforfeitable benefit under the Plan.

**1.05   BENEFICIARY**

"Beneficiary" means a person who is or may be receiving benefits under the Plan because of the designation for such benefits by a Participant.

**1.06   CALENDAR YEAR**

"Calendar Year" means the period from January 1 to the next December 31. For purposes of compliance with ERISA regulations, the Calendar Year shall serve as the vesting computation period, the benefit accrual computation period, and, after an Employee's initial period of Employment, the computation period for eligibility to participate in the Plan.

**1.07   CODE**

"Code" means the Internal Revenue Code of 1986, as amended from time to time. Reference to a specific provision of the Code shall include such provision, any valid regulation or ruling promulgated thereunder, and any provision of future law that amends, supplements, or supersedes such provision.

**1.08   COLLECTIVE BARGAINING AGREEMENT**

"Collective Bargaining Agreement" means a written agreement between a Local Union and Contributing Employer which incorporates the standard language that requires contributions

2

to the Fund. The Trustees shall prescribe the standard language, which they may revise from time to time. The standard language shall set forth the terms and conditions for the payment of contributions, including minimum and maximum rates for periods for which contributions are payable, the rules governing due dates for payments, and charges for late payment, and shall also include the scope of required coverage of Employees. The establishment of such terms and conditions shall not be construed as making the Fund a party to the agreement.

**1.09   CONTRIBUTING EMPLOYER**

"Contributing Employer" (or "Employer") means an employer as described in paragraphs (a) through (e) of this Section 1.09, provided such employer's participation is not canceled.

(a)   Any employer who has been accepted by the Trustees for participation in this Pension Fund as herein defined, provided the employer has signed a copy of the Trust Agreement and is required to make contributions to the Fund by a Collective Bargaining Agreement and/or as approved by the Trustees.

(b)   Each Local Union, Credit Union, and Joint Council (established by representatives of a participating Local Union), any of which has been approved by the Trustees for participation as a Contributing Employer, which agrees in writing and is required to make contributions to the Fund for its Employees.

(c)   Any Employer Association for its Employees if a substantial percentage of such association employer members are parties to Collective Bargaining Agreements, as herein defined, which agrees in writing to make contributions to the Fund for such Employees.

(d)   This Pension Fund and any affiliated entity for their Employees which has been approved by the Trustees for participation as a Contributing Employer, which agrees in writing and is required to make contributions to the Fund for such Employees.

(e)   Any trust fund established by representatives of a participating Local Union and Contributing Employers pursuant to a trust agreement under the provisions of 302(c)5 of the Taft-Hartley Act for the Employees of such trust fund which has been approved for participation as a Contributing Employer, the trustees of which trust fund agree in writing and are required to make contributions to the Pension Fund for such Employees.

**1.10   CONTRIBUTION**

"Contribution" means the payment required to be made to the Pension Fund under the terms of a Collective Bargaining Agreement, or other agreement as provided for in Section 1.09(b), (d) or (e).

**1.11   CONTRIBUTION PERIOD**

"Contribution Period" means, with respect to a classification of employment, the period during which the employer is a Contributing Employer with respect to the classification of employment.

3

**1.12 CONTRIBUTION RATE**

"Contribution Rate" means the hourly rate of contributions required to be paid to the Pension Fund as agreed to in a Collective Bargaining Agreement. The Trustees shall have the right to determine approved Contribution Rates and define and classify such Contribution Rates, and the benefits payable as a result of such Contribution Rates in order to assure the sound actuarial and administrative operation of the Pension Fund.

**1.13 CONTRIBUTORY CREDIT**

"Contributory Credit" is credit granted under this Plan for service during the Contribution Period as defined in Article IV.

**1.14 COVERED EMPLOYMENT**

"Covered Employment" means employment of an Employee by a Contributing Employer in a job classification covered by the Collective Bargaining Agreement for which the Contributing Employer is obligated by the Collective Bargaining Agreement to contribute to the Fund, and may also include such employment prior to the time when such contributions begin in whole or in part, as specifically provided by this Plan. "Covered Employment" shall not, however, include employment by an employer after termination of that employer's status as a Contributing Employer for failure to pay contributions due, pursuant to the provision of Section 2.08, or employment as an Employee excluded by the provisions of Section 1.18.

**1.15 DISQUALIFYING EMPLOYMENT**

Disqualifying Employment means employment or self-employment that is:

(a) in an industry covered by the Plan when the Participant's pension payments began,

(b) in the geographic area covered by the Plan when the Participant's pension payments began, and

(c) in any type of work in which the Participant was employed in Covered Employment at anytime, as well as any type of work for which contributions are required to be made to the Plan.

Employment after age 70 will not be considered Disqualifying Employment.

**1.16 DISQUALIFYING EMPLOYMENT DEFINITIONS**

For purposes of determining Disqualifying Employment, the following definitions shall apply:

(a) The geographic area covered by the Plan is the New England states and any adjacent states and any adjacent Canadian provinces, to the extent that they include any metropolitan area in which Covered Employment was performed prior to and at the time the Pensioner retired, and any other area covered by the Plan when the Participant's pension began or, but for suspension under this Article XI, would have begun.

4

(b)  If a Pensioner re-enters Covered Employment to an extent sufficient to cause a suspension of benefits, and his pension payments are subsequently resumed, the industry and area covered by the Plan when the Participant's pension began shall be the industry and area covered by the Plan when his pension was resumed.

(c)  Paid non-work time shall be counted toward the measure of 49 hours in any calendar month if paid for vacation, holiday, illness or other incapacity, layoff, jury duty or other leave of absence.   However, time compensated under a workers' compensation or temporary disability benefits law shall not be so counted.

## 1.17   EFFECTIVE DATE

.The "Effective Date" of a Participant's pension is the first day of the first month for which a pension is payable to him following application as described in Section 10.01.

## 1.18   EMPLOYEE

(a)  "Employee" means a person who is an employee of an Employer and who is covered by a collective Bargaining Agreement requiring Employer contributions on his behalf. An employee with respect to whom an Employer defined in paragraphs (b), (c), (d) and (e) of Section 1.09 participates in this Plan is to be deemed an Employee. The term "Employee" does not include any person who is an officer or director of a corporation, or a partner or owner of a business organization if such corporation or business is a Contributing Employer notwithstanding the fact that such person may from time to time perform bargaining unit work. A person who owns 50 percent or more, whether directly or indirectly, of stock, capital or profits of a Contributing Employer or who has the ability to control effectively 50 percent or more of said stock, capital or profits shall be considered an owner of a business and shall not be considered an "Employee".

(b)  A person who owns less than 50 percent but more than 25 percent, whether directly or indirectly, of stock, capital or profits of a Contributing Employer or who has the ability to control effectively less than 50 percent but more than 25 percent of said stock, capital or profits may be considered an owner of a business as the Trustees may determine; and if such determination is made, such person shall not be considered an "Employee".

(c)  "Owner/operator" for purposes as an Employee under this Plan is defined as a driver who enters into a lease arrangement with his Employer whereby the driver rents his equipment to or from his Employer and as a driver is under the direction and control of the Employer. It shall be evidence of a valid owner/operator relationship if the Employer pays the owner-driver's Social Security tax, workers' compensation insurance, and other expenses incidental to his employment as well as the payment, by separate check, to the driver, for his wages and by separate check for his equipment rental.

The term "Owner/operator" as used herein does not include a person during any period for which he:

(i)      is engaged as an individual contractor or was self-employed; or

5

(ii)     is not listed on the payroll or similar type records of a Contributing Employer as an Employee; or

(iii)    is not covered by a Collective Bargaining Agreement as defined herein.

(d)   An individual who is classified as an "independent contractor" who is engaged in the performance of services on the Central Artery/Tunnel project that would be considered Covered Employment if such individual were an Employee.

## 1.19   ERISA

"ERISA" means the Employee Retirement Income Security Act of 1974, 29 USC §§ 1001 et seq., effective September 2, 1974, as amended September 26, 1980 by the Multiemployer Pension Plan Amendments Act of 1980, and as it may be amended thereafter.

## 1.20   FUND

"Fund" or "Pension Fund" means the New England Teamsters and Trucking Industry Pension Fund, the Trust Fund created by the Trust Agreement, and shall mean generally the money or other things of value which comprise the corpus and additions to the Trust Fund.

## 1.21   HOUR OF SERVICE

An "Hour of Service" means each hour for which an Employer is obligated to make Contributions to this Pension Fund under a Collective Bargaining Agreement and which comprises each hour for which an Employee is paid or entitled to payment, including each hour of paid vacation and paid holidays and including periods of absence on account of illness, off-the-job injury or on-the-job injury for which hours of contributions are due to the Pension Fund. An "Hour of Service" shall also include hours for which back pay and or retroactive contributions, irrespective of mitigation of damages, is awarded or agreed to by an Employer. An "Hour of Service" as defined in this Section 1.21 is intended to mean at a minimum an "Hour of Service" as defined in the Department of Labor Regulations 2530.200b-2 insofar as it is applicable to this Plan.

## 1.22   LOCAL UNION

"Local Union" means a Local Union affiliated with the International Brotherhood of Teamsters which has been accepted for participation by the Trustees and which has in writing accepted the Trust Agreement.

## 1.23   NORMAL RETIREMENT AGE

"Normal Retirement Age" means age 64. However, if the Participant at age 64 has neither attained Vested Status nor reached his 5th anniversary of the date he most recently commenced participation in the Plan, then his "Normal Retirement Age" shall be the earlier

of the 5th anniversary of the date he most recently commenced participation or the date the Participant attained Vested Status.

The Normal Retirement Age for benefits accumulated during a period of participation that began prior to October 1, 1989 shall be age 64, or if later, the age of the Participant on October 1, 1989, if that age is older than the Participant's age on the date he reached his 5th anniversary of the date he most recently commenced participation in the Plan prior to October 1, 1989.

**1.24   PARTICIPANT**

"Participant" means a Pensioner or an Employee who meets the requirements for participation in the Plan as set forth in Article III, or a former Employee who has a vested right to a pension under this Plan.

**1.25   PAST SERVICE CREDIT**

"Past Service Credit" is credit granted under this Plan for service prior to the Contribution Period as defined in Article IV.

**1.26   PENSION CREDIT**

"Pension Credit" is the number of years and months of service for which credit is granted under this Plan as defined in Article IV.

**1.27   PENSIONER**

"Pensioner" means an Employee or former Employee to whom a pension under this Plan is being paid or to whom a pension would be paid but for time for delay, suspension or offset as a result of the application of these Rules to such pension.

**1.28   PLAN**

"Plan" means the provisions of the New England Teamsters & Trucking Industry Pension Plan adopted herein with any amendments, modifications, or interpretations thereof duly adopted by the Trustees.

**1.29   PLAN YEAR**

"Plan Year" means the period of 12 months commencing on October 1 and ending the following September 30.

**1.30   SPOUSE**

(a)   A "Spouse" is a person to whom a Participant is considered married under applicable law. To the extent provided in a Qualified Domestic Relations Order (within the

meaning of 206(d) and 414(p) of the Internal Revenue Code) a Spouse shall also mean a Participant's former Spouse.

(b)     A Spouse shall be considered a "Qualified Spouse" if the Participant and Spouse have been married for at least one year immediately preceding the Effective Date of the Participant's Pension or the date of the Participant's death.   Notwithstanding the foregoing sentence, a Spouse of a Participant who has commenced his Pension shall become a "Qualified Spouse" on the first anniversary of the marriage, but not later than the first anniversary of the Participant's Pension Effective Date.  If a Participant marries subsequent to the Effective Date of his Pension, such Spouse will not be considered a "Qualified Spouse" for any purpose under this Plan, unless specifically allowed under Section 8.02.

(c)     A Qualified Spouse who thereafter is divorced from a Pensioner shall still be considered his Qualified Spouse on his date of death (if she is then living) unless a Qualified Domestic Relations Order revokes such status.

## 1.31   TRUST AGREEMENT

"Trust Agreement" means the Agreement and Declaration of Trust establishing the New England Teamsters and Trucking Industry Pension Fund entered into on April 11, 1958, restated as of August 2, 1982 and restated further as of January 26, 1994, with any amendments thereto, and as may be restated or amended hereafter.

## 1.32   TRUSTEES

"Trustees" means the individuals who are acting as Employer Trustees and Union Trustees pursuant to the provisions of the Trust Agreement.

## 1.33   GENDER

Except as the context may specifically require otherwise, use of the masculine or feminine gender shall be understood to include both masculine and feminine genders.

# ARTICLE II

# BASIS OF EMPLOYER PARTICIPATION IN FUND

---

**SECTION:**

**2.01    GENERAL**

This Pension Plan is intended primarily to provide retirement benefits for Employees of Contributing Employers who meet the definition in Section 1.09(a).

It is recognized that this Pension Plan may also be used as a medium for providing benefits for employees of other employers with whom a Local Union may enter into a Collective Bargaining Agreement, provided that, in so doing, the actuarial soundness of the Pension Plan is not impaired.   The purpose of this Article II is to set forth the general terms and conditions under which the Trustees may accept as a Contributing Employer an employer that does not meet the definition of Contributing Employer in Section 1.09, hereinafter referred to as a "new" employer.

**2.02    ACCEPTANCE OF A CONTRIBUTING EMPLOYER**

Upon application by a Local Union, a new employer may be accepted by the Trustees as a "Contributing Employer", or an employer whose participation has been terminated in accordance with Section 2.08 hereof may be accepted for reinstatement as a "Contributing Employer", if such acceptance will not adversely affect the actuarial soundness of the Plan as determined by the Trustees in consultation with the Actuaries for the Fund. To enable the Trustees to make such determination, each Local Union seeking approval of a new employer shall furnish the name, date of birth and employment history of each employee then covered by the Collective Bargaining Agreement between the Local Union and the new employer and such additional information as may be required from time to time. Nothing herein shall require the Trustees to accept any employer as a Contributing Employer.

**2.03    ACCEPTANCE OF NEW LOCAL UNIONS**

Any Local Union affiliated with the International Brotherhood of Teamsters may apply to the Trustees for acceptance as an additional Local Union to be included in the definition of such term in Section 1.22. The acceptance of any such new Local Union shall be at the discretion of the Trustees.

**2.04    STANDARD FORM OF PARTICIPATION AGREEMENT**

Any new employer in order to be accepted as a Contributing Employer in accordance with Section 2.02 hereof, shall be required to sign, along with the Local Union, a Standard Form of Participation Agreement, approved by the Trustees, which sets forth the full details of the

9

basis for contributions to the Fund and the basis for acceptance as a Contributing Employer which prevails at the time of such acceptance by the Trustees, and shall agree to accept and be bound by any revisions or modifications of such Standard Form of Participation Agreement which the Trustees shall promulgate during the term of any Collective Bargaining Agreement between such Contributing Employer and the Local Union of which the Standard Form of Participation Agreement is made a part directly or by reference.

**2.05   CONDITIONS FOR PARTICIPATION**

When granting acceptance for participation as a Contributing Employer to a new employer or to a previously terminated employer in accordance with Section 2.08 hereof, or to a new Local Union in accordance with Section 2.03 hereof, the Trustees may in writing impose any terms and conditions they consider necessary or appropriate to preserve the actuarial soundness of the Plan and to preserve an equitable relationship between the basis of contributions of all Contributing Employers and the benefits provided for all Participants. Such conditions may include but shall not be limited to the imposition of special requirements for months of Pension Credit during the Contribution Period before the commencement of benefits for Pension Credit, and/or the granting of a lower scale of benefits.

When such conditions are imposed, they shall be binding upon the Local Union, the Contributing Employer involved and the Employees for whom contributions are being made and such conditions, if contrary to any term or provision of the remainder of the Plan, shall prevail with respect to the Local Union, the Contributing Employer involved and the Employees for whom contributions are being made.

**2.06   NOTICE OF ACCEPTANCE**

A written Notice of Acceptance shall be sent by the Trustees to any new Contributing Employer or Local Union which is accepted for participation pursuant to Sections 2.02 or 2.03. A new Contributing Employer shall not be considered as accepted by the Trustees until the Fund Office has received a signed copy of the Collective Bargaining Agreement, the Standard Participation Agreement then required, and completed census information for all Employees. Until such written Notice of Acceptance shall be sent by the Trustees any new Contributing Employer or Local Union shall not be deemed to have been accepted for participation in the Fund. Any delay in acceptance by the Trustees shall in no way relieve the new Contributing Employer of any obligations under the Collective Bargaining Agreement to make contributions prior to the date of such acceptance. Funds received in the interim shall be held in escrow and shall not be deemed acceptance of the new Contributing Employer.

**2.07   MAINTENANCE OF PARTICIPATION**

A retirement plan is a long term commitment in which the costs of the benefits provided and the fruits of investment success are shared among generations of Participants and Contributing Employers. In adopting the plan of benefits offered by the Fund and the required Contribution Rates necessary to provide for those benefits, the Trustees have accepted certain long range actuarial commitments consistent with the long term nature of retirement programs. As a result, in agreeing to become and remain a Contributing Employer, each

Contributing Employer recognizes that it shall be required, in future Collective Bargaining Agreements: (a) to maintain an hourly Contribution Rate at least equal to the highest Contribution Rate agreed to in the current Collective Bargaining Agreement; and (b) to contribute the same hourly contribution for all bargaining unit Employees performing the same work.

Each Contributing Employer also recognizes that the Trustees may increase or decrease the level of benefits offered with respect to future Covered Employment, and/or may increase or decrease the rate of contributions necessary to maintain the actuarial soundness of the Plan.

**2.08      TERMINATION OF PARTICIPATION**

A Contributing Employer's participation in this Plan shall cease on the earliest of the dates described in subsections (a), (b), or (c) below. The termination of an Employer's participation in this Plan, whether by action of the Trustees or otherwise, shall not relieve the Employer of any outstanding obligations to the Fund at the effective date of such termination.

(a)     **Delinquent Employer**

If a Contributing Employer does not make contributions to the Fund as required by its Collective Bargaining Agreement with the Local Union,  in accordance with the administrative procedures adopted by the Trustees, the Trustees may terminate the employer's participation in this Fund. The Trustees may reinstate such terminated employer's participation in this Fund including reinstatement of Past Service Credit which has been reduced or canceled under Section 2.09 upon such terms and conditions as they determine to be reasonable and necessary.

(b)     **Contributions No Longer Required**

A contributing Employer's participation in this Fund with respect to a bargaining unit will automatically cease when the Employer no longer has a Collective Bargaining Agreement requiring contributions to the Fund or with that bargaining unit unless continuing contributions are due as a result of a legal duty established and provided by applicable labor management relations law, including 29 USC §158(a)(5).

(c)     **Requested Termination**

A Contributing Employer's participation in this Fund with respect to employees not covered by a Collective Bargaining Agreement shall terminate upon a future date requested by such Employer in a written request to the Trustees.

**2.09      CANCELLATION OF PAST SERVICE CREDIT**

(a)     Upon the termination of participation of a Contributing Employer described in subsection (b) below the Trustees will cancel the Past Service Credit (as defined in Article IV) of the employees described in subsection (c) below.

(b)     **Employers Affected:**

(i)      Delinquent Employers described in Section 2.08(a), and Employers requesting termination under Section 2.08(c); and

11

(ii)    Employers for whom there is no longer a Collective Bargaining Agreement requiring contributions to the Fund if the cessation of such contributions was a result of actions by members of a bargaining unit, which actions include, but are not limited to the following:

(A)    decertification or other removal of the Union as a bargaining agent; and

(B)    ratification or other acceptance of a Collective Bargaining Agreement which permits withdrawal of the bargaining unit, in whole or in part, from the Plan.

(c)    **Employees Affected:**

Those working for the terminated Contributing Employer in covered Employment on the date the Employer's Participation are terminated.

(d)    **Automatic Reinstatement:**

Except for Employees described in Section 2.09(b)(ii), any Past Service Credit canceled under this Section 2.09 shall be reinstated upon the payment of any delinquent contributions owed at termination and upon the payment of all withdrawal liability payments required by the Plan.

# ARTICLE III

# BASIS OF EMPLOYEE PARTICIPATION

**SECTION**

**3.01    COMMENCEMENT OF PARTICIPATION**

An Employee who is engaged in Covered Employment during the Contribution Period shall become a Participant in the Plan on the earliest January 1 or July 1 following completion of a period of 12 consecutive months (as measured from the date he first works an hour in Covered Employment for which contributions are due) during which he completes at least 750 Hours of Service in Covered Employment.

The required hours may also be completed with any hours of work in other than Covered Employment with the same Contributing Employer if that other employment is continuous with the Employee's Covered Employment with that Employer, provided that the Employee is working in Covered Employment on the date he is eligible to become a Participant.

**3.02    TERMINATION OF PARTICIPATION**

An Employee who completes less than 375 Hours of Service in Covered Employment in any Calendar Year prior to achieving Vested Status shall cease to be a Participant as of the last day of that Calendar Year. In determining whether a Participant has achieved Vested Status, service described in Section 5.02(b) shall be taken into account. Solely for the purpose of determining whether an Employee retains his status as a Participant he shall be deemed to have worked 40 hours in Covered Employment for each week (or fraction thereof) that he is in receipt of Workers' Compensation.

**3.03    REINSTATEMENT OF PARTICIPATION**

(a)    An Employee who has lost his status as a Participant in accordance with Section 3.02 shall again become a Participant by meeting the requirements of Section 3.01 on the basis of service in Covered Employment within a Calendar Year after the Calendar Year during which his participation terminated. An Employee whose participation is reinstated under this Section 3.03 by virtue of reemployment in Covered Employment shall accrue additional Pension and Vesting Credit as of the date of such reemployment, provided such Participant has not attained Vested Status.

(b)    An Employee who had not attained Vested Status when he lost his status as a Participant and who incurred a Complete Break in Service before he is reemployed in Covered Employment shall again commence participation in accordance with Section 3.01. A Complete Break in Service is defined in Section 5.03.

13

# ARTICLE IV

# PENSION CREDIT

**SECTION**

**4.01   PENSION CREDIT**

"Pension Credit" is the number of years and months of service for which credit is granted under this Plan. There are two types of Pension Credit:

(a)   **Past Service Credit**

Credit granted for employment before the Contribution Period.

(b)   **Contributory Credit**

Credit granted for employment during the Contribution Period.

The general term Pension Credit is the sum of Past Service Credit and Contributory Credit. The Plan's benefit formulas differ between Past Service and Contributory Credit. Other features depend only on total Pension Credit.

**4.02   CONTRIBUTORY CREDIT**

Contributory Credit for the purpose of accrual of pension benefits shall be granted on the basis of Hours of Service for which a Contributing Employer has an obligation to contribute (prior to October 1, 1979, for Hours of Service for which a contributing Employer paid) under an approved Collective Bargaining Agreement, as follows:

(a)   One Year of Contributory Credit shall be granted for each Calendar Year in which a Participant completes 1,800 or more Hours of Service.

(b)   If the Participant completes less than 1,800 Hours of Service in a Calendar Year for which an Employer has an obligation to contribute, he shall earn Months of Contributory Credit as set forth in Table 1A.

(c)   For Hours of Service worked on and after January 1, 1998 in the Movie or Pipeline Industry or on the Central Artery/Tunnel Project, as those industries and project have been defined by the Trustees, Contributory Credit for the purpose of accrual of pension benefits shall be granted on the basis of Hours of Service for which a Contributing Employer in the Movie or Pipeline Industry or on the Central Artery/Tunnel Project has an obligation to contribute under an approved Collective Bargaining Agreement, as follows:

   (i)   If the Participant completes at least 2,230 Hours of Service in a Calendar Year, he shall earn Months of Contributory Credit as set forth in Table 1B.

   (ii)   When the Hours of Service earned by an Employee in the Movie or Pipeline Industry or Central Artery/Tunnel Project constitute the majority of the

14

Employee's hours earned in any Calendar Year, they shall be combined with the Employee's Hours of Service earned in any other type of industry in that Calendar Year to determine Contributory Credit under Table 1B.

**4.03   PAST SERVICE CREDIT**

A Participant employed by an Employer accepted for participation in this Plan shall be entitled to a year of Past Service Credit, as described and limited in Section 4.04, for each Calendar Year of employment with the Employer prior to the Contribution Period provided that the employment was in the classifications described in paragraphs (a) through (e) below, and the Participant was employed as his primary employment (and not as a part-time Employee) at least 135 days in that Calendar Year.

Where evidence of this employment is the number of hours worked in a Calendar Year, eight hours shall be presumed to equal one day of employment. Where evidence of this employment is the amount of wages received in a calendar quarter, the number of hours shall be determined by dividing the amount of the wages received by the prevailing rate in a then-prevailing Collective Bargaining Agreement applicable to the industry of which the Employer is a part, and the hours shall be commuted to days by dividing the total hours by eight.

(a)   With respect to an employer who becomes a Contributing Employer, employment as an Employee in a job classification and at a place of business covered by a Collective Bargaining Agreement between a Local Union and such employer.

(b)   With respect to an employer who went out of business before ever making contributions to the Pension Fund, Past Service Credit shall be granted only if the Trustees determine on the basis of evidence submitted that the employer was engaged in the same type of business as other contributing Employers with which the Local Union has Collective Bargaining Agreements and would become a Contributing Employer if it had continued in business, and the individual was an Employee in a job classification and business which would have been covered by a Collective Bargaining Agreement between the Local Union and such employer. In no event, however, shall Past Service Credit be granted for employment with such an employer which went out of business before ever making contributions if, at the time it went out of business, other companies in the same industry and type of business were already obligated to make contributions to the Pension Fund.

(c)   With respect to an employer whose primary business is not in the trucking industry but who hires truck drivers and who later discontinues its trucking work and contracts such work to a Contributing Employer who thereafter continues such trucking work for such employer, Past Service Credit will be granted for periods of such employment as an Employee in Covered Employment prior to the transfer of work as though it were Covered Employment with the Contributing Employer.

(d)   With respect to Participants who are full-time paid officers of a Local Union including business agents and representatives, the Trustees will accept proof of membership in good standing in a Local Union as evidence of employment for at least 135 days in such year to qualify for Past Service Credit for that year.

(e)   With respect to Participants who are Employees of a Participating Employer Association, Credit Union or Joint Council, the Trustees shall accept proof of

15

employment with the Association, Credit Union or Joint Council as evidence of employment for at least 135 days in such year to qualify for Past Service Credit for that year.

**4.04    AMOUNT OF PAST SERVICE CREDIT LIMITATIONS**

(a)    No Past Service Credit shall be granted unless the Participant was working in Covered Employment as an Employee of the new Contributing Employer at the time the Employer commenced participation in the Plan.

(b)    If a Participant is working for a Contributing Employer whose contributions are first required to be paid after December 31, 1979 the Past Service Credit of that Participant shall be limited as follows:

(i)    Two years of Past Service Credit for each year of Contributory Credit earned in the Fund until he shall have been credited with all years of Past Service Credit to which he is entitled under Section 4.03 above.

(ii)    If the new Contributing Employer was required to make contributions before January 1, 1988, and either

was signatory to Collective Bargaining Agreement in effect on December 31, 1979 which did not require contributions to the Fund, or

entered into its first Collective Bargaining Agreement after December 31, 1979 which did not require contributions to the Fund,

then the Employer must have agreed to make contributions to the Fund commencing the first day of the next following renewal agreement.    If contributions did not begin on the first day of the next renewal agreement, no Past Service Credit shall have granted for employment in the period between the expiration of the Collective Bargaining Agreement referred to in paragraph (A) or (B) above and the first day for which contributions became payable.

(c)    The Trustees may adopt such other rules for granting Past Service Credit as they consider appropriate and consistent, to be applied to Participants of new Employers accepted for participation in accordance with Article II.

**4.05    PAST SERVICE CREDIT FOR FIRST YEAR OF CONTRIBUTION PERIOD**

As contributions for the first year of the Contribution Period may commence during a Calendar Year rather than at the beginning of a Calendar Year the Participant will be granted Months of Past Service Credit if he worked sufficient hours during the Calendar Year (both before and during the Contribution Period) so that he would have been granted a Year of Past Service Credit for this Calendar Year had his Employer joined the Fund in a later year. He will be credited with Past Service Credit equal to 12 months less the number of months of Contributing Credit actually earned that Calendar Year.

**4.06**    **PENSION CREDIT FOR MILITARY SERVICE**

Service in the armed forces of the United States shall be credited to the extent required by law.  To protect his full rights, a Participant who leaves Covered Employment to enter such military service must resume Covered Employment within the time prescribed by law. Furthermore, he must make the claim for credit for Miltary Service by bringing such service to the attention of Trustees and supply such evidence of military service as the Trustees shall require in order to determine his rights.  Any Pension Credit shall be considered Contributory Credit only if Participant had accumulated Contributory Credit prior to entering the armed forces.  Military service also includes service in Armed Forces Reserves, Army National Guard and Air National Guard while engaged in active and inactive duty training and full time National Guard duty.  So long as permitted by law, a maximum of five (5) years of Pension Credit may be recognized under this Section 4.06.

In the event that an Employer commences participation in the Fund while the Participant is serving in the military service, the period of the Employer's participation during the Participant's military service shall be credited to the Participant provided the Participant satisfies the reemployment provisions of this Section 4.06 and was a full time regular Employee at the time of his induction into military service.

Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to military service will be provided in accordance with Section 414(u) of the Code.

**4.07**    **LIMITATION OF PENSION CREDIT**

No Pension Credit shall be granted to any person who does not satisfy the definition of "Employee".

# ARTICLE V

# VESTING SERVICE AND COMPLETE BREAK IN SERVICE

**SECTION**

**5.01    VESTED STATUS**

(a)    ERISA requires that certain of the benefits under this Plan be nonforfeitable or vested. A Participant becomes Vested, or has achieved Vested Status, by fulfilling the service requirements for receipt, after his attainment of Normal Retirement Age and upon retirement, of a nonforfeitable pension.

(b)    **Vested Status Defined**

A Participant has attained Vested Status if he:

    (i)    Is a Participant when he attains his Normal Retirement Age, or

    (ii)    Has accumulated at least five Years of Vesting Service or five Years of Contributory Credit and was a Participant (as determined prior to application of this paragraph (ii)) on January 1, 1990 or later and retires October 1, 1990 or later.

    (iii)    If the Participant does not achieve Vested Status under paragraph (ii) above, he may achieve Vested Status under paragraph (A) or (B) below:

        (A)    He has accumulated 10 Years of Vesting Service or 10 Years of Contributory Credit, and either:

            (1)    he earned a Year of Vesting Service after 1976 and prior to incurring a Complete Break in Service, or

            (2)    he earned at least three Years of Vesting Service after 1970 and worked at least 375 hours in Covered Employment in Calendar Years 1974, 1975, or 1976.

        (B)    He has accumulated 15 Years of Pension Credit with at least six months of Contributory Credit earned after age 49 and he has satisfied the requirements of Section 6.01(a).

(c)    **Special Rules**

Appendix B contains special rules that may provide earlier vesting to Participants not working under a Collective Bargaining Agreement who became Participants prior to October 1, 1990 and who had at least one Hour of Service after September 30, 1989.

**5.02   YEARS OF VESTING SERVICE**

    (a)   **General Rule**

A Participant shall be credited with one Year of Vesting Service for each Calendar Year during the Contribution Period (including periods before he became a Participant) in which he completes at least 750 Hours of Service in Covered Employment.

    (b)   **Hours in Non-Covered Classification**

If a Participant works for an Employer required to make contributions to the Plan in a classification not covered by this Plan, and such employment is continuous with his employment with that Employer in Covered Employment (either immediately prior to or immediately following his period of service in Covered Employment), his Hours of Service in such non-covered classification during the period for which contributions are required after December 31, 1975 shall be counted toward a Year of Vesting Service. If, after December 31, 1975, the Participant completes a Year of Vesting Service but less than 375 Hours of Service in Covered Employment for which contributions are payable to the Fund, he shall be credited with a prorated portion of a full year of Pension Credit in the ratio of hours of such service in Covered Employment to 2,000 hours.

A Participant shall be credited with one Year of Vesting Service for each Calendar Year during the Contribution Period in which he completes at least 750 Hours of Service in Covered Employment.

    (c)   **Exceptions**

        (i)   A Participant shall not be credited with Years of Vesting Service for years preceding a Complete Break in Service, as defined in Section 5.03 below.

        (ii)   In order to be credited with Years of Vesting Service for years prior to 1976, the Participant must either:

            (A)   work in Covered Employment for at least 375 hours in Calendar Year 1974, 1975 or 1976, or

            (B)   earn a Year of Vesting Service in a Calendar Year after 1976 prior to incurring a Complete Break in Service.

        (iii)   In addition, once a Participant has met the requirements of paragraph (ii) above, in order to be credited with Years of Vesting Service for years prior to 1971, the Participant must have earned at least three Years of Vesting Service after December 31, 1970.

**5.03   COMPLETE BREAK IN SERVICE**

If a Participant had not incurred a Complete Break in Service as defined in paragraphs (a) and (b) below as of December 31, 1989, he shall not incur a Complete Break in Service. Thereafter, his Years of Vesting Service shall be aggregated for all periods of his covered service.

Years of Pension Credit and Years of Vesting Service accumulated under this Plan prior to 1990 shall be canceled if, prior to achieving Vested Status, the Participant fails to accumulate

sufficient hours in Covered Employment over a number of years so that he incurs a Complete Break in Service as described below.

Solely for the purpose of determining whether a Complete Break in Service has occurred, hours of Covered Employment for which contributions are required to be made to a Related Plan as defined in Article XIII shall be considered to be contributions to this Plan.

Once a Participant incurs a Complete Break in Service in accordance with Section 5.03(a), Years of Pension Credit and Years of Vesting Service, which are cancelled as a result, shall not be reinstated, except as provided in Section 5.05.

(a)   **Complete Break in Service January 1, 1976 until December 31, 1989**

(i)   It shall be considered a Complete Break in Service, and a Participant's previously accumulated Years of Pension Credit and Years of Vesting Service shall be canceled, if prior to achieving Vested Status or Normal Retirement Age (or, if earlier, prior to attaining age 52 with 15 years of Pension Credit) he fails to complete 375 Hours of Service in Covered Employment in each Calendar Year of that period of consecutive Calendar Years, including at least one after 1975, that equals the number of Years of Vesting Service and Years of Pension Credit with which he has been credited.

Employment with a Contributing Employer in a classification not covered by this Plan but which is creditable under Section 5.02(b) shall be counted as if it were Covered Employment in determining whether a Complete Break in Service has been incurred. In any event, however, a Participant shall not incur a Complete Break in Service after September 30, 1987 until the Consecutive Calendar Years in which he fails to complete 375 hours equal at least five.

(ii)   Solely for the purpose of determining whether a Complete Break in Service has occurred, the absence of an Employee from Covered Employment by reason of:

(A)   the Employee's pregnancy,

(B)   birth of a child of the Employee,

(C)   placement of a child with the Employee in connection with his adoption of the child, or

(D)   care for such child for a period beginning immediately after such birth or placement,

shall be credited as Hours of Service to the extent that Hours of Service would have been credited but for such absence (or, where that cannot be determined, eight Hours of Service per day of absence) to a maximum of 375 hours for each such pregnancy, childbirth, or placement.

The hours so credited shall be applied to the Calendar Year in which such absence begins, if doing so will allow the Employee to complete at least 375 Hours of Service in that Calendar Year, otherwise they shall be applied to the next Calendar Year. The Trustees may require, as a condition for granting such

20

credit, that the Employee establish in timely fashion and to the satisfaction of the Trustees that the Employee is entitled to such credit.

This paragraph (a)(ii) shall apply only to absences that begin after September 30, 1987.

(b) **Complete Break in Service before January 1, 1976**

    (i)    A Participant shall have incurred a Complete Break in Service if before January 1, 1976 and prior to achieving Vested Status or Normal Retirement Age (or, if earlier, prior to attaining age 52 with 15 Years of Pension Credit) he failed to earn at least eight Months Pension Credit in any one of six consecutive Calendar Years during the Contribution Period. No Break in Service shall be deemed to have occurred, however, if Contributions were made to the Pension Fund on his behalf for a cumulative total of at least 5,000 hours in such period of six consecutive Calendar Years.

    (ii)    Following the Complete Break in Service referred to in paragraph (i) above, the Trustees shall waive the Break in Service and reinstate the Participant's participation, previous Years of Vesting Service, and previously accumulated years of Pension Credit if the Participant returned to Covered Employment and earned at least two months of Pension Credit in a Calendar Year prior to 1980, and thereafter earned Pension Credit at least equal to the number of consecutive Calendar Years of insufficient Pension Credit which occasioned the Break in Service.

(c) **Special Rule for 1976-1978**

For the Calendar Years 1976, 1977, and 1978, determination of a Complete Break in Service may be made under either paragraph (a) or (b) above.

**5.04**    **EXCEPTIONS TO COMPLETE BREAK IN SERVICE**

Prior to 1990, the following Calendar Years shall not be counted as one of the consecutive Calendar Years for the purpose of determining a Complete Break in Service:

(a) Any full Calendar Year in which a Participant received workers' compensation benefits for the full year.

(b) Any Calendar Year in which a Participant received a least 13 weeks of non-occupational benefits for loss of income either from a jointly administered Local Union and Employer Health Services and Insurance Fund, or in accordance with the Rhode Island Cash Sickness Benefits law.

(c) Any Calendar Year in which a Participant received Social Security Disability benefits for the full year.

A Break in Service shall be considered to occur for an Employee of a Local Union only if such Local Union Employee fails to earn at least one full Year of Pension Credit in any one of ten consecutive years during the Contribution Period.

**5.05**    **RESTORING PENSION CREDIT**

For Participants who earned at least ten (10) Years of Vesting Service prior to 1976 and whose Pension Credit was cancelled under the terms of this Article V, such Pension Credit will be restored if such Participant earns a vested right to a benefit subsequent to the cancellation of the previously earned Pension Credit.

# ARTICLE VI

# PENSION ELIGIBILITY & AMOUNTS

## SECTION

### 6.01    GENERAL ELIGIBILITY REQUIREMENTS

In addition to meeting the specific eligibility requirements applicable to each pension benefit described later in this Article VI, to be eligible for pension benefits defined in this Article VI, a Participant must meet both of the following requirements:

(a)    Except for the Statutory Pension, he must have accumulated at least 48 months of Contributory Credit. If the Contributing Employer were first required to contribute prior to January 1, 1977, only 36 months of Contributory Credit is required.

(b)    He must make timely application for a benefit as required by Article X.

### 6.02    ACCRUAL AND ACCRUED BENEFIT

Pension benefits under this Plan are generally based on the Participant's Accrued Benefit, which is the sum of his Contributory Service Accrual and his Past Service Accrual. The amount of a Participant's Accrued Benefit described in this Article VI or the amount of any Disability Pension provided under Article VII applies only to Participants whose pension Effective Date is after September 30, 1991 and who have accumulated six months of Contributory Credit after December 31, 1990.

(a)    **Accumulation of Accrual**

   (i)    *Contributory Service Accrual*

   For each Calendar Year in which the Participant earns Contributory Pension Credit, he shall earn a Contributory Service Accrual which shall be added to his prior Accrued Benefit. The Contributory Service Accrual for each year is determined by the hourly Contribution Rates set forth in the Collective Bargaining Agreement under which the Participant is working.

   (ii)    *Past Service Accrual*

   For each Calendar Year in which the Participant earns Past Service Credit, he shall earn a Past Service Accrual which shall be added to his prior Accrued Benefit. The Past Service Accrual for each year is determined by the hourly Contribution Rates set forth in the first Collective Bargaining Agreement requiring contributions to the Fund under which the Participant was working.

23

(b) **Maximum Pension Credits Recognized**

If a Participant earns more than 25 years of Pension Credit, his Accrued Benefit shall be associated with only the 25 highest valued years of Pension Credit. Notwithstanding the above, once a Participant has earned an Accrued Benefit which recognizes 25 years of Pension Credit, he shall accumulate an additional amount of Accrued Benefit which recognizes more years of Pension Credit by subsequently earning additional years of Pension Credit at or above the minimum Contribution Rate for Pension Credit in specified Calendar Years required for each additional year of extended credit according to the table below.

| MAXIMUM YEARS OF RECOGNIZED PENSION CREDIT | CONTRIBUTIONS PAID DURING A CALENDAR YEAR MUST BE AT A CONTRIBUTION RATE GREATER THAN OR EQUAL TO: | EARLIEST CALENDAR YEAR IN WHICH HOURS OF SERVICE MUST BE EARNED |
|---|---|---|
| 26 | $2.66 | 1994 |
| 27 | 2.86 | 1995 |
| 28 | 3.11 | 1996 |
| 29 | 3.46 | 1997 |
| 30 | 3.46 | 1998 |
| 31 | 3.46 | 1999 |
| 32 | 3.76 | 2000 |
| 33 | 3.76 | 2001 |

If a Participant's Contributions are paid under the terms of more than one Collective Bargaining Agreement, those Contributions will be treated as being paid under the terms of one Collective Bargaining Agreement, as long as the Collective Bargaining Agreements are designated by the Fund Office as "Like Contracts". For this purpose, "Like Contracts" are two or more Collective Bargaining Agreements, signed by different Contributory Employers that provide for substantially the same Contribution Rates or progression of Contribution Rates during the Calendar Year. If such Collective Bargaining Agreements are not deemed to be "Like Contracts", Contributions must be received at the rates specified in the table above on at least 600 Hours of Service.

If a Participant's Accrued Benefit recognizes more than 25 Years of Pension Credit and he subsequently earns additional Contributory Credit for a succeeding Calendar Year at a Contribution Rate eligible for a lower number of years of recognized Pension Credit his Accrued Benefit will be determined under this paragraph. For such a Participant, his Accrued Benefit at the end of that succeeding year shall be calculated recognizing only the highest valued number of years applicable to the Contribution Rate upon which the most recent Calendar Year of Credit was earned. However his Accrued Benefit at the end of that succeeding year will not be less than the amount of Accrued Benefit he had earned at the end of the prior Calendar Year.

**6.03    CONTRIBUTORY SERVICE ACCRUAL AND ACCRUED BENEFIT**

Tables 2A and 2B set forth the monthly annual Contributory Service Accrual benefit amounts for each approved hourly Contribution Rate with respect to each Year of Contributory Credit. Table 2A is applicable for Contributory Credit earned through December 31, 1986. Table 2B is applicable for Contributory Credit earned on and after January 1, 1987. The Trustees may from time to time establish annual Contributory Service Accrual benefit amounts for additional Contribution Rates when such rates are provided for in Collective Bargaining Agreements.

If a Participant earns less than 12 months of Contributory Credit as determined under Section 4.02(b), fractional Contributory Service Accrual is granted by multiplying the applicable monthly Contributory Service Accrual benefit amount by the ratio of the months of Contributory Credit to 12. If a Participant earns more than 12 months of Contributory Credit as determined under Section 4.02(c), full and fractional Contributory Service Accrual is granted by multiplying the applicable monthly Contributory Service Accrual benefit amount by the ratio of the months of Contributory Credit to 12. If contributions are received at rates other than those approved Contribution Rates shown in Table 2A or 2B, Contributory Service Accrual shall be granted as if the Contributions were actually made at the next lower approved Contribution Rate.

(a)    **For Pension Credit Earned After 1986**

The Contributory Service Accrual benefit amount earned for each Calendar Year after 1986 is based on the method below which provides the largest Contributory Service Accrual:

(i)    The Contributory Service Accrual shall be that benefit applicable to the highest approved hourly Contribution Rate contributed on a Participant's behalf for that Calendar Year according to a Collective Bargaining Agreement (if applicable) for service in Covered Employment, provided that he works at least 600 hours at that rate.

(ii)    If the Participant works less than 600 hours at his highest approved hourly Contribution Rate for the Calendar Year, such hours shall be added to the hours at his next highest approved hourly Contribution Rate and tested against the 600 hour requirement. The Contributory Service Accrual earned shall be that amount from Table 2B which corresponds with the lowest approved hourly Contribution Rate included in this 600 hour test.

(iii)    The Contributory Service Accrual shall be equal to that amount from Table 2B which corresponds to the average approved hourly Contribution Rate (total contributions divided by total hours, with both numerator and denominator calculated using only the highest paid 1,800 hours of Contributions if more than 1,800 hours of Contributions are received) made on the Participants behalf for service in Covered Employment for that Calendar Year. Notwithstanding anything above, for Calendar Year 1987 the Contributory Service Accrual will be determined only under this paragraph (iii).

(b)    **For Pension Credit Earned Prior to 1987**

The Contributory Service Accrual for each Year of Pension Credit earned by a Participant for service prior to 1987 shall be that amount from Table 2A which

25

corresponds to the Pre-1987 Approved Contribution Rate assigned to the Participant as of December 31, 1986 (or as of December 31 of a later year if Section 6.03(c) is applicable) according to Appendix A, which governs the setting of Approved Contribution Rates.

(c)   **Alternative Calculation**

(i)   If, at the close of 1986, the Participant was not eligible for the maximum Contributory Service Accrual then payable under Table 2A, the Contributory Service Accrual for Pension Credit earned through and including the first Calendar Year in which the Participant becomes eligible for that maximum Contributory Service Accrual according to Appendix A, shall be determined under paragraph (b) above as if such paragraph applied through the end of the year in question.

(ii)   In no event, however, shall this extension of the application of 6.03(b) continue beyond the last full Calendar Year covered under the last Collective Bargaining Agreement signed before April 1, 1991, but in no event beyond December 31, 1994.

(iii)   If this paragraph (c) applies, the benefits calculated under paragraph (a) above shall not begin to accrue until the Calendar Year following the last Calendar Year recognized in paragraph (i) above.

(iv)   The Participant shall be credited with a Contributory Service Accrual which is the larger of (A) the benefit under paragraphs (a) and (b) above, without application of this paragraph (c), or (B) the alternative benefit calculated under this paragraph (c).

**6.04   PAST SERVICE ACCRUAL**

A Participant's Past Service Accrual for Past Service Credit granted while working for Contributing Employers first required to contribute prior to 1988 shall be determined under Section 6.03.

A Participant's Past Service Accrual for each year of Past Service Credit granted while working for a Contributing Employer first required to contribute on or after January 1, 1988, shall be the benefit multiplier times the average hourly Contribution Rate contained in that Contributing Employer's first Collective Bargaining Agreement requiring contributions to the Fund, subject to a minimum and a maximum monthly benefit per Year of Past Service Credit. The benefit multipliers used and minimum and maximum monthly benefits for applicable retirement dates are shown in the table below.

|  | For Retirements on and After | | |
|  | July 1, 1998 | August 1, 1998 | October 1, 2000 |
|---|---|---|---|
| **Benefit Multiplier** | 14.64 | 16.10 | 17.71 |
| **Minimum Monthly Benefit** | $14.70 | $17.00 | $19.00 |
| **Maximum Monthly Benefit** | $29.40 | $33.00 | $37.00 |

For purposes this Section 6.04, a Participant's retirement date is his earliest Effective Date. For a Participant whose benefit is suspended subsequent to his earliest Effective Date in accordance with Article XI, his Past Service Accrual for each year of Past Service Credit will be adjusted to reflect his subsequent retirement date only if he earned Contributory Credit during his period of reemployment.

Notwithstanding the provisions above, if a Contributing Employer first required to contribute on or after January 1, 1988 with an average hourly Contribution Rate contained in that Contributing Employer's first Collective Bargaining Agreement requiring contributions to the Fund is less than 60¢ per hour, a Participant's Past Service Accrual for each year of Past Service Credit granted while working shall be the one-half of the corresponding Monthly Contributory Service Accrual shown in Table 2B.

**6.05   REGULAR PENSION**

(a)   **Eligibility**

A Participant may retire on a Regular Pension if he:

(i)   meets the General Eligibility Requirements of Section 6.01,

(ii)   has at least 15 years of Pension Credit,

(iii)   has at least 6 months of Contributory Credit after age 49, and

(iv)   has attained age 64.

The Trustees may waive the requirement for six months of Pension Credit after age 49 if the Participant was disabled and could not earn Pension Credit for that reason.

(b)   **Amount of Benefit**

The monthly amount of Regular Pension is the Participant's Accrued Benefit.

**6.06   EARLY RETIREMENT PENSION**

(a)   **Eligibility**

A Participant may retire on an Early Retirement Pension if he:

(i)   meets the General Eligibility Requirements of Section 6.01,

(ii)   has at least 15 years of Pension Credit,

(iii)   has at least 6 months of Contributory Credit after age 49, and

(iv)   has attained age 52.

The Trustees may waive the requirement for six months of Pension Credit after age 49 if the Participant was disabled and could not earn Pension Credit for that reason.

(b)   **Amount of Benefit**

The monthly amount of Early Retirement Pension is the Participant's Accrued Benefit multiplied by the Early Retirement Pension Reduction Percentage from Table 3 based on the Participant's age at benefit commencement.

27

**6.07    THIRTY YEAR FULL SERVICE PENSION**

    (a)   **Eligibility**

        A Participant may retire on a Thirty Year Full Service Pension at any age if he:

        (i)   meets the General Eligibility Requirements of Section 6.01;

        (ii)  has at least 30 years of Contributory Pension Credit; and

        (iii) retires October 1, 1989 or later.

    (b)   **Amount of Benefit**

        The monthly amount of the Thirty Year Full Service Pension is the Participant's Accrued Benefit multiplied by the Thirty Year Full Service Pension Early Retirement Reduction Percentage from Table 3 based on the Participant's age at benefit commencement. This provides him with a minimum of 100% of the Early Retirement Pension he would have had were he age 60.

**6.08    MINIMUM THIRTY YEAR (75%) SERVICE PENSION**

    (a)   **Eligibility**

        A Participant may retire on a Minimum Thirty Year Service Pension at any age if he:

        (i)   meets the General Eligibility Requirements of Section 6.01, and

        (ii)  has at least 30 years of Pension Credit (Past Service Credit and Contributory Credit combined).

    (b)   **Amount of Benefit**

        The monthly amount of the Minimum Thirty Year Service Pension is the Participant's Accrued Benefit multiplied by the Minimum Thirty Year Service Pension Early Retirement Reduction Percentage from Table 3 based on the Participant's age at benefit commencement. This provides him with a minimum of 75% of the Early Retirement Pension he would have had at age 60.

**6.09    STATUTORY PENSIONS**

    (a)   **Statutory Pension**

        (i)   *Eligibility*

            A Participant who has attained Vested Status, as defined in Section 5.01, but who does not meet the requirements for a Regular, Early Retirement, Thirty Year Full Service, or Minimum Thirty Year Service Pension may retire on a Statutory Pension at his Normal Retirement Age.

        (ii)  *Amount of Benefit*

            The monthly amount of the Statutory Pension is the Participant's Accrued Benefit payable at Normal Retirement Age.

**(b)   Early Retirement Statutory Pension**

(i)   *Eligibility*

A Participant who has attained Vested Status as defined in Section 5.01 and who has 15 or more Pension Credits, but who does not meet the requirements for a Regular, Early Retirement, Thirty Year Full Service, or Minimum Thirty Year Service Pension may retire on an Early Retirement Statutory Pension on the first day of any month following the attainment of age 52.

(ii)   *Amount of Benefit*

The monthly amount of the Early Retirement Statutory Pension is the Participant's Accrued Benefit payable at Normal Retirement Age multiplied by the Early Statutory Pension Retirement Percentage from Table 3 based on the Participant's age at benefit commencement.

## 6.10   SPECIAL SERVICE PENSIONS

(a)   **Eligibility**

Effective October 1, 1991, and subject to the Deferred Eligibility Requirements of paragraphs (c) and (d) below, a Participant shall be entitled to the Plan A Special Service Pension if all of the following requirements have been satisfied:

(i)   Certain benefits within this Plan A Special Service Pension benefit must be earned while working at higher Contribution Rates, as described in Table 4A.

(ii)   The Participant must be eligible under Appendix A.1.01 to have his benefits determined under a Collective Bargaining Agreement which qualifies for the Plan A Special Service Pension.

(iii)   *Continuity of Service Requirement*

(A)   The Participant must earn 830 hours of Pension Credit in the Calendar Year in which he first becomes eligible for the Plan A Special Service Pension (but not earlier than 1991), by completing the age and service requirements for this benefit as shown in Table 4A. If he does not earn 830 hours of Pension Credit in the first Calendar Year in which he becomes eligible for the Plan A Special Service Pension, he shall not quality for this benefit until he does earn 830 hours of Pension Credit in a subsequent Calendar Year.

(B)   The Participant must show a continuity of service, as follows:

(1)   *As of January 1, 1991:*

(aa)   Following his initial Calendar Year of participation, the Participant must never have had a Calendar Year in which he earned less than 375 hours of Pension Credit, or

(bb)   Following each Calendar Year in which the Participant earned less than 375 hours of Pension Credit, he has had a Calendar Year in which he earned at least 750 hours of Pension Credit and as of the date of reference maintains a

29

history of, or subsequently earns, 18 month of Pension Credit in the immediately preceding 36 months.

(2)   *After January 1, 1991:*

If the Participant does not meet the requirements of paragraph (1) above, or if he earns less than 375 hours of Pension Credit in a Calendar Year after 1990, he must:

(aa)   earn at least 830 hours of Pension Credit in a subsequent Calendar Year, and

(bb)   as of the date of reference maintain a history of, or subsequently earn, 18 months of Pension Credit in the immediately preceding 36 months.

(iv)   The Participant must earn 600 hours of Pension Credit during a period of continuous participation beginning on January 1, 1991 at the Contribution Rate of at least $2.21 per hour in the Calendar Year of 1991 or $2.26 per hour in any subsequent Calendar Year.

(v)   The 20 and 25 Year Plan A Special Service Pension require six months of Contributory Credit after age 49.

(vi)   The Participant must meet all other requirements of the Plan for entitlement to benefits.

(b)   **Qualifying Collective Bargaining Agreement**

To qualify to provide the Plan A Special Service Pension, a Collective Bargaining Agreement must meet the requirements specified in paragraphs (i), (ii), (iii), or (iv) below:

(i)   The Collective Bargaining Agreement must provide a Contribution Rate sequence of $2.11 - $2.21 -$2.31 per hour during Calendar Years 1990 through 1992.

(ii)   The Collective Bargaining Agreement must provide a Contribution Rate sequence of $2.26 - $2.41 -$2.56 per hour, with 12 months of contributions at each of these rates, for agreements which become effective in Calendar Year 1991 or thereafter.

(iii)   Any Collective Bargaining Agreement calling for at least 12 months of contributions at or above $2.56 per hour shall qualify to provide the Special Service Pension at the beginning of the first month during the contract that actual contributions for the balance of the contract will be at or above the Contribution Rate sequence of $2.26 - $2.41 - $2.56, as described in paragraph (ii) above, as long as actual contributions during each of the six twelve month periods immediately prior to this qualifying date are at or above a Contribution Rate sequence of $1.61 - $1.66 - $1.71 - $1.86 - $1.96 - $2.06, with 12 months of contributions at each rate. If this six year test is not met, the qualifying date shall be delayed during the contract and into the next contract, if necessary, until the six year test is met.

(iv)   Any Collective Bargaining Agreement calling for at least 12 months of contributions at or above $2.26 that would otherwise meet the terms of paragraphs (ii) or (iii) above which does not include all the rates or required payment periods of the Contribution Rate sequence of $2.26 - $2.41 -$2.56 shall qualify to provide the Special Service Pension under paragraphs (ii) or (iii) above, as the case may

30

be, at the beginning of the first month during the contract that actual contributions for the balance of the contract plus contributions during the first 24 months of the next Collective Bargaining Agreement, as agreed to in a supplemental statement signed by the Contributing Employer, will be at or above the $2.26 - $2.41 - $2.56 Contribution Rate sequence.

(c)     **Original Deferred Eligibility**

(i)     A Collective Bargaining Agreement that provided for a contribution rate of at least $2.00 per hour during the entire 1991 Calendar Year shall qualify for the Special Service Pension when the conditions of paragraph (a)(i) above are satisfied.

(ii)    A Collective Bargaining Agreement that requires a contribution rate of less $2.00 per hour any time in 1991 which is eventually renewed or extended to qualify for the Special Service Pension under paragraph (b)(ii) above, with use of the supplemental statement under paragraph (b)(iv), if required, shall not qualify for the Special Service Pension until:

(A)    the Employer contributes at $2.00 per hour or higher for two Calendar Years if the Employer contributes $1.86 per hour but less than $2.00 per hour in 1991; or

(B)    the Employer contributes at $2.00 per hour or higher for four Calendar Years if the employer contributes $1.66 per hour but less than $1.86 in 1991; or

(C)    the Employer contributes at $2.00 per hour for five Calendar Years if the Employer contributes less than $1.66 per hour in 1991.

(d)     **Revised Deferred Eligibility**

(i)     If a Participant is covered under a Collective Bargaining Agreement in effect on June 30, 1995 that does not meet the Contribution Rate requirements for the Plan A Special Service Pension or has a Contribution Rate history that does not meet the Contribution Rate requirements for the Plan A Special Service Pension, subsequent Collective Bargaining Agreements or Contribution Rate sequences may qualify to provide the Plan A Special Service Pension only if the Contribution Rates, starting with a successor Agreement, renewal or extension entered into after June 30, 1995 and continuing with each successive contract, renewal or extension, are at least equal to:

(A)    average Contribution Rates for the first  five contract or Calendar Years of at least $2.26 per hour; and

(B)    the highest Contribution Rate of at least $2.56 per hour.

(C)    In addition to the requirements above, the Participant must earn 600 hours of Pension Credit at the Contribution Rate of at least $2.41 per hour, but no earlier than the fifth contract year that satisfies both (A) and (B) above.

For purposes of this Section 6.10(d), a Participant's average Contribution Rate is determined for the applicable contract or Calendar Year as the sum of each Contribution Rate times the number of hours worked at such Contribution Rate divided by the total hours for the applicable period.

31

These terms (A), (B) and (C) may be met through one six-year contract, or through a succession of shorter contracts.

(D)    A Collective Bargaining Agreement with a Contributing Employer that on June 30, 1995 meets the Contribution Rate requirements for a Special Service Pension and any successor Agreements, renewals, or extensions thereto shall continue to qualify to provide the Plan A Special Service Pension as long as the terms of such successor Agreement renewal, or extension continues to meet the other requirements for a Special Service Pension.

(e)   **Amount**

(i)    A Participant eligible to receive the Plan A Special Service Pension in accordance with paragraph (a) above shall be entitled to a Special Service Pension based on his years of Contributory Credit and, in certain cases as shown in Table 4A, based on the Contribution Rates upon which those years of credit were earned.

(ii)   For each of the Special Service Pensions, the amount payable shall be determined on the basis of paragraphs (A) and (B) below:

(A)    *The Participant's Age*

(1)    Prior to March 1, 1994, the Participant's attained age at benefit commencement, or, if earlier, the end of the Calendar Year in which he last earned six months (830 hours) of Pension Credit.

(2)    Effective March 1, 1994, the Participant's age at retirement, or, if earlier, his age at the end of the last Calendar Year for which he had reported hours. The age used in this determination shall not be greater than the Participant's age at the end of the Calendar Year following the last Calendar Year in which he earned 375 hours of Contributory Credit.

(B)    *The Participant's Contributory Credit*

(1)    Prior to March 1, 1994 and subject to the Continuity of Service Requirements of Section 6.10(a)(iii), the Participant's accumulated Contributory Credit at the end of the Calendar Year of or prior to retirement in which the Participant last earned six months (830 hours) of Pension Credit under a contract which qualifies for the Plan A Special Service Pension.

(2)    Effective March 1, 1994 and subject to the Continuity of Service Requirements of Section 6.10(a)(iii), the Participant's accumulated Contributory Credit at the end of the Calendar Year of or prior to retirement in which the Participant last earned 375 hours of Pension Credit under a contract which qualifies for the Plan A Special Service Pension.

(f)   **Plan A1 Special Service Pension**

Effective October 1, 1995 and subject to the Deferred Eligibility requirements of paragraphs (c) and (d) above, a Participant shall be entitled to the Plan A1 Special Service Pension as set forth in Table 4A1 if requirements for the Plan A Special Service Pension and the requirements specified in Table 4A1 are met:

32

(i)　　The Collective Bargaining Agreement must provide for a contribution rate sequence of $2.86 - $3.11 - $3.46 per hour.

(ii)　　The 30 to 35 Plan A1 Special Service Pension requires Contributory Credit after 30 years to be earned after 1993.

(g)　**Plan B Special Service Pension**

Effective October 1, 1996, a Participant shall be entitled to the Plan B Special Service Pension as set forth in Table 4B provided that the following requirements are met:

(i)　　The Participant must have attained age 55 and completed 25 years of Contributory Credit.

(ii)　　The Participant contributory rate sequence meets the requirements of Plan A or Plan A1.

(iii)　　The Participant is credited with at least one hour at a Contribution Rate of at least $3.46, concurrently or subsequently to his 25th Contributory Credit Year.

(iv)　　The Participant's Contribution Rate history satisfies the minimum five year Contribution Rate requirements specified in Table 6. To satisfy the minimum five year Contribution Rate requirements, the Participant's five year average of Contribution Rates must equal or exceed the average shown in Table 6 corresponding to the Participant's year of retirement. The Contribution Rate applicable to Contributions received in the Participant's year of retirement is combined with the Contribution Rates applicable to Contributions received in the four Calendar Years immediately preceding the Participant's year of retirement in which the Participant earned Pension Credit.

(h)　**Plan C Special Service Pension**

Effective October 1, 1997, a Participant shall be entitled to the Plan C Special Service Pension as set forth in Table 4C-1997, Table 4C-1998 and Table 4C-1999, depending on the Participant's retirement date, provided that all the following requirements are met:

(i)　　The Participant is eligible for either Plan A or Plan A1 based upon the Participant's Contribution Rate sequence history.

(ii)　　The Participant must be credited with at least 320 Hours of Contributory Service at a minimum rate of $3.46.

(iii)　　A Contribution Rate of at least $3.76 within 24 months of satisfying the requirement of subsection (ii) above.

(iv)　　The Participant's Contribution Rate history satisfies the minimum five year Contribution Rate requirements specified in Table 6. To satisfy the minimum five year Contribution Rate requirements, the Participant's five year average of Contribution Rates must equal or exceed the average shown in Table 6 corresponding to the Participant's year of retirement. The Contribution Rate applicable to Contributions received in the Participant's year of retirement is combined with the Contribution Rates applicable to Contributions received in the four Calendar Years immediately preceding the Participant's year of retirement in which the Participant earned Pension Credit.

If a Participant does not retire on a Plan C Special Service Pension after satisfying all of the eligibility requirements (those described in paragraphs (i) through (iv) above, and Years of Contributory Credit) but continues to work in Covered Employment under a contract which provides for a lower level of Contributions, the additional Years of Pension Credit earned after his initial year of eligibility will not result in an increase in his Plan C Special Service Pension unless he again earns 320 Hours of Service at a Contribution Rate of at least $3.46 per hour and retires under a contract which provides for the $3.76 Contribution Rate.

(i)     **Plan C Part-Time Special Service Pension**

Effective October 1, 1997, a Participant shall be entitled to 50% of the Plan C Special Service Pension as set forth in Table 4C-1997, Table 4C-1998 and Table 4C-1999, depending on the Participant's retirement date, provided that all the following requirements are met:

(i)     The Participant is eligible for either Plan A or Plan A1 based upon the Participant's Contribution Rate sequence history.

(ii)    The Participant must be credited with at least 320 Hours of Contributory Service at a minimum rate of $3.46.

(iii)   A Contribution Rate of at least $3.76 within 24 months of satisfying the requirement of subsection (ii) above.

(iv)    The Participant's Contribution Rate history satisfies the minimum five year Contribution Rate requirements specified in Table 6. To satisfy the minimum five year Contribution Rate requirements, the Participant's five year average of Contribution Rates must equal or exceed the average shown in Table 6 corresponding to the Participant's year of retirement. The Contribution Rate applicable to Contributions received in the Participant's year of retirement is combined with the Contribution Rates applicable to Contributions received in the four Calendar Years immediately preceding the Participant's year of retirement in which the Participant earned Pension Credit.

For purposes of determining the pension benefit under this Section 6.10(i) only, one Year of Contributory Credit is earned for each Calendar Year in which the Participant earns at least 830 hours.

If a Participant does not retire on a Plan C Part-Time Special Service Pension after satisfying all of the eligibility requirements (those described in paragraphs (i) through (iv) above, and Years of Contributory Credit) but continues to work in Covered Employment under a contract which provides for a lower level of contributions, the additional Years of Pension Credit earned after his initial year of eligibility will not result in an increase in his Plan C Part-Time Special Service Pension unless he again earns 320 Hours of Service at a Contribution Rate of at least $3.46 per hour and retires under a contract which provides for the $3.76 Contribution Rate.

**6.11     NON-DUPLICATION WITH OTHER BENEFITS**

(a)     No pension benefits shall be payable for any month for which the Participant or Pensioner, before he has attained his Normal Retirement Age, receives weekly accident

and sickness benefits from any jointly administered, collectively-bargained trust fund or other employer-financed, temporary-disability insurance plan.

(b) The application of this Section 6.11 shall not have the effect of reducing the value of the Participant's pension for payment at his Normal Retirement Age and, to the extent necessary to avoid reduction, the monthly amount of the pension shall be adjusted so as not to deprive the Pensioner of the value of his benefit as payable from his Normal Retirement Age.

(c) Any pension benefits payable for any month for which workers' compensation benefits are payable to a Pensioner under age 65 shall be offset by the amount of such workers' compensation benefits. If the pension benefit is granted prior to August 1, 1990, the offset shall continue beyond age 65. Notwithstanding the above there shall be no offset for workers' compensation benefits received as a result of an injury sustained while working in any employment that would not result in a suspension of benefits under Section 11.01.

Pension benefits payable for months after any workers' compensation benefits have ended will not be offset. Proof of a lump sum settlement or of a final award for permanent disability as well as benefits paid under a structured settlement will be satisfactory evidence to the Trustees that, for purposes of the offset provisions of this Section 6.11, workers' compensation benefits are no longer considered as being paid or payable.

In the event that a Participant or Pensioner has not demonstrated his lack of entitlement to workers' compensation benefits to the satisfaction of the Trustees, the Trustees may pay pension benefits subject to a "reimbursement agreement" on a form prescribed by the Trustee entered into by the Participant or Pensioner.

(d) If a Pensioner who is otherwise eligible for benefits dies while his benefits are not payable or are offset under this Section 6.11, any payment to his surviving Spouse or Beneficiary shall be determined according to Article IX, without offset.

(e) If a Participant has commenced his Pension under the terms of this Article VI, he will not be eligible for a Disability Pension described by Article VII, even if such Participant is deemed disabled by the Social Security Administration with an onset or award date that precedes his pension Effective Date.

**6.12   BENEFITS AFTER A SUBSTANTIAL INTERRUPTION IN SERVICE**

If a Participant does not earn two months of Contributory Credit in a Calendar Year, whether or not he had the achieved Vested Status, and if he fails to earn 18 months of Contributory Credit during the next five consecutive Calendar Years, upon resuming Covered Employment his benefits shall be determined as the sum of (a) and (b) below, recognizing in such sum, however, no more than the maximum years of recognized Pension Credit under Section 6.02.

(a) His Accrued Benefit earned as of the end of the first Calendar Year in which he did not earn two months of Contributory Credit, if such benefit has not been forfeited following a Complete Break in Service.

(b) His Accrued Benefit earned during subsequent Covered Employment, determined without recognizing his prior years of Pension Credit.

Once a Participant has earned five years of Contributory Credit subsequent to the year in which he did not earn two months of Contributory Credit, his benefit shall be redetermined as if it were earned during a single continuous period of Covered Employment. Notwithstanding the foregoing, the Contributory Service Accrual limitation described by Section 6.03(c)(ii) will be applied.

**6.13    ACCRUAL INCREASE FOR LATE RETIREMENT**

(a)    The Accrued Benefit of a Participant who

(i)    is eligible to retire on a Regular Pension with at least 25 years of Pension Credit, Thirty Year Full Service Pension, or a Minimum Thirty Year Service Pension of $500 per month or more, and

(ii)    has accumulated at least 30 months of Pension Credit after attaining age 60, defers his retirement to age 65 or later,

shall be increased by $100 per month.

(b)    Notwithstanding the above, if any Participant defers retirement beyond his Normal Retirement Age, his Accrued Benefit shall be increased by the largest of

(i)    the $100 per month increase specified in (a),

(ii)    his Accrued Benefit payable at his Normal Retirement Age increased by 10½% for each year such payments are deferred past his Normal Retirement Age, or

(iii)    his Accrued Benefit determined on his payment commencement date based on all Pension Credit earned without adjustment, including the $100 per month increase specified in (a) if applicable. Such Accrued Benefit will include any increases to the Participant's Contributory Service Accrual described in Table 2A and Past Service Accrual described in Section 6.04, based on the Participant's payment commencement date.

Subject to the requirements of paragraph (c) below, if a Participant is eligible for a Special Service Pension as of his Normal Retirement Age, such Special Service Pension will increase based on the Participant earning additional Contributory Credit or satisfying the requirements for a higher Special Service Pension benefit based on Contribution Rates applicable to Contributions received after his Normal Retirement Age in accordance with Section 6.10.

(c)    Effective January 1, 1999, in the case of a Participant who retires in a Calendar Year after the Calendar Year in which the Participant attains age 70½ pursuant to Section 10.05(c)(i), the Participant's Special Service Pension shall be increased 10½% per year to take into account the period beginning on April 1 following the Calendar Year in which the Participant attains age 70½ for which the Participant is not receiving any benefits under the Plan.

If a Participant engages in Disqualifying Employment, as described in Sections 1.15 and 1.16, subsequent to his Normal Retirement Age without engaging in Covered Employment, the adjustments to his Accrued Benefit or Special Service Pension payable at Normal Retirement Age described in paragraphs (b)(iii) and (c) above shall only apply to the number of months during which the Participant worked at least one hour in Covered Employment during the Participant's total number of months of retirement deferral.

36

**6.14   CANCELLATION AND REDUCTION**

Any nonforfeitable benefits earned by a Participant who has achieved Vested Status may be reduced by amendments made within the limitations of the Internal Revenue Code. They are further subject to cancellation as described in Section 2.09 of this Plan if the Contributing Employer upon whose service these benefits were earned ceases to contribute to the Plan.

**6.15   SPECIAL BENEFIT ADJUSTMENTS**

Any Participant, Beneficiary, Qualified Spouse or Alternate Payee in receipt of benefit payments may be subject to special benefit increases as set forth in Appendix C.

**6.16   SPECIAL CONDITIONS AND BENEFITS**

Where the Trustees have exercised their rights under Section 2.05 and imposed special conditions for the initial or continued participation of any Contributing Employer, including imposition of special requirements for months of Contributory Credit before the commencement of benefits for Pensioners and/or the granting of a lower scale of benefits or the use of any other method for determining Pension Credits, all to preserve the actuarial soundness of the Plan, such special conditions shall apply to the Employees of such Contributing Employer only and these Employees shall not be eligible for the benefits provided in this Article VI which may be greater than the benefits set forth in such special conditions for initial or continued participation, including those shown in Appendix B.

**6.17   ROUNDING OF MONTHLY PENSION AMOUNT**

If the monthly pension benefit is not a whole dollar amount, it shall be rounded to the next higher dollar amount.

# ARTICLE VII

# DISABILITY

**SECTION**

**7.01    DISABILITY PENSIONS**

    (a)    **Eligibility**

        A Participant may retire on a Disability Pension, regardless of age, if he becomes totally and permanently disabled, as hereinafter defined, when he is Actively Engaged in Covered Employment, as defined in Section 1.01, and he meets all of these requirements:

        (i)    he meets the General Eligibility Requirements set forth in Section 6.01,

        (ii)    he has at least 10 years of Pension Credit (or 15 years of Pension Credit for Disability Pension payable prior to August 1, 1998), and

        (iii)    he has never been in receipt of any pension benefit described in Article VI.

    (b)    **Amount**

        (i)    For Disability Pensions effective on or after August 1, 1998, the monthly amount of the Disability Pension shall be equal to the larger of the Participant's Accrued Benefit multiplied by the Early Disability Pension Reduction Percentage set forth in Table 3 based on the Participant's age as of the date that the Disability Pension commences and his Special Service Pension. This Disability Pension will be paid in accordance with the Participant's elections made under Article VIII.

        (ii)    For Disability Pensions payable prior to August 1, 1998, the monthly amount of the Disability Pension shall be the Participant's Accrued Benefit subject to a maximum of:

            (A)    $17.20 per month per year of Pension Credit to a maximum of $430 per month ($16.00 per year of Pension Credit to a maximum of $400 per month if the Disability Pension became effective before October 1, 1991 or if this Disability Pension became payable after September 30, 1991 and the Participant was not eligible for a benefit under Table 3), if the Participant is currently working under a Collective Bargaining Agreement which calls for Contribution Rates of less than $1.00 per hour at the time of his disablement, or

            (B)    $21.60 per month per year of Pension Credit to a maximum of $540 per month ($20.00 per year of Pension Credit to a maximum of $500 per month if the Disability Pension became effective before October 1, 1991 or if this Disability Pension became payable after September 30, 1991 and the Participant was not eligible for a benefit under Table 3), if the

Participant is currently working under a Collective Bargaining Agreement which calls for Contribution Rates of more than $1.00 per hour at the time of his disablement.

(iii)   For a Disability Pension that commences on or after October 1, 1991 (or which becomes payable later to a Participant who is not eligible to have his benefit determined under Table 2A or 2B), the monthly amount of the Pension is $80.

(iv)   For a Disability Pension that commences prior to October 1, 1991 (or which becomes payable later to a Participant who is not eligible to have his benefit determined under Table 2A or 2B), the monthly amount of the Disability Pension is $75.

## 7.02   TOTAL AND PERMANENT DISABILITY DEFINED

(a)   **Totally and Permanently Disabled**

A Participant shall be deemed totally and permanently disabled within the meaning of Section 7.01 hereof only if the Trustees shall find on the basis of medical evidence that:

(i)   such Participant is totally unable, as a result of bodily injury or disease, to engage in any kind of substantial gainful work; and

(ii)   such disability has existed for six full calendar months and the medical evidence establishes that the disability is likely to last for at least an additional six months.

(b)   **Proof of Disability**

The Trustees may require or accept as sole proof of total and permanent disability a determination by the Social Security Administration that the Participant is entitled to a Social Security Disability benefit. A Participant applying for a Disability Pension may be required to submit to an examination by a physician or physicians selected by the Trustees and may be required to submit to reexamination periodically. The Trustees may contract with a physician, medical group, or other organization to conduct these disability examinations and investigations. Under such circumstances, the Participant who is applying for a Disability Pension may be required to submit proof of his disability to the physician, medical group, or other organization, and otherwise comply with the requirements of said physician, medical group, or other organization relative to initial and continued eligibility for the Disability Pension as described in Sections 7.01 and 7.02, in addition to those established by the Trustees.

## 7.03   COMMENCEMENT AND TERMINATION OF DISABILITY PENSION

(a)   **Commencement**

The first monthly payment of a Disability Pension shall commence the first of the month following six months of total and permanent disability and shall continue thereafter so long as the Pensioner remains totally and permanently disabled as herein defined.

(b) **Termination**

 (i) For Disability Pensions first payable on or after August 1, 1998, the Disability Pension payable under this Article VII shall cease if the Participant either returns to Covered Employment or engages in Disqualifying Employment in accordance with the Suspension of Benefits rules of Article XI.

 (ii) For Disability Pensions first payable prior to August 1, 1998, Disability Pensions payable under this Article VII shall cease prior to the Participant's Normal Retirement Age upon the earliest of:

  (A) his death, or

  (B) the date he is no longer totally and permanently disabled.

 (iii) If the Disability Pension became effective after September 30, 1991 and the Participant was eligible for benefits under Table 2A or 2B, the Participant may voluntarily convert to a benefit payable prior to his Normal Retirement Age. The benefit payable at Normal Retirement Age is described in paragraph (iv) below. The benefit adjustment required for a benefit payable prior to Normal Retirement Age will be in accordance with the applicable section of Article VI.

 (iv) For Disability Pensions payable prior to August 1, 1998, if the Participant remains in receipt of a Disability Pension at his Normal Retirement Age, his Disability Pension shall be adjusted as follows:

  (A) If the Statutory Pension under Article VI for which the Participant would then qualify based on Pension Credit earned through his date of disability, payable in the Life Annuity form, is greater than his Disability Pension, his Disability Pension shall cease and he shall commence his Statutory Pension.

  (B) If the Statutory Pension under Article VI for which the Participant would then qualify based on Pension Credit earned through his date of disability, payable in the Life Annuity form, is less than his Disability Pension, his Disability Pension shall continue in the same amount for the rest of his life and shall be payable in place of any other benefit under this Plan to which he would have been entitled.

 Pension payments made after the Participant's Normal Retirement Age will be paid in accordance with the Participant's elections made under Article VIII.

 (v) For Disability Pensions payable on or after August 1, 1998, such Disability Pension shall continue with no adjustment.

(c) **Recovery from Total and Permanent Disability**

 (i) If a Participant receiving a Disability Pension, which was first payable prior to August 1, 1998, shall subsequently cease to be totally and permanently disabled prior to his Normal Retirement Age, he shall then be entitled to apply for any pension to which he is then entitled under Article VI based on Pension Credit earned through his date of disability. In that event, his monthly pension shall be an amount based on his then current age. Such Early Retirement Pension shall not be reduced by the value of the Disability Pension that the Participant received.

(ii)   If a Participant receiving a Disability Pension which was first payable on or after August 1, 1998 ceases to be totally and permanently disabled prior to his Normal Retirement Age, and the Participant was eligible to apply for any pension under Article VI, such Participant may elect to begin his Early Retirement Pension as adjusted by the appropriate factors set forth in Table 3. Such Early Retirement Pension shall not be reduced by the value of the Disability Pension that the Participant received.

**7.04   RESTRICTION ON EMPLOYMENT BY DISABILITY PENSIONER**

The restrictions below shall apply to a Participant receiving a Disability Pension who is under Normal Retirement Age.

(a)   If a disabled Participant who is eligible for and receiving a Disability Pension engages in substantial gainful activity, the Trustees shall suspend any further payments of the Disability Pension so long as he is so engaged. Effective prior to October 1, 1999, in determining whether work activity constitutes "substantial gainful activity" the Trustees shall be entitled to rely on guidelines issued by the Social Security Administration. Effective October 1, 1999, in determining whether work activity constitutes "substantial gainful activity", the Trustees shall utilize the following table.

| Monthly Disability Pension Amount | De Minimis Monthly Earning Limit |
|---|---|
| Less than $100 | No Limit |
| At least $100 but less than $300 | $1,290 |
| At least $300 but less than $600 | $800 |
| At least $600 | $700 |

In any event, the Trustees shall be entitled to rely on guidelines issued by the Social Security Administration, to determine whether work activity constitutes "substantial gainful activity" when those guidelines, based upon the age of the recipient, permit greater *de minimis* monthly earnings.

The Trustees may authorize a 12 month period of suspension for rehabilitation purposes. If the Pensioner is unable to continue in substantial gainful employment after the 12 month period, his Disability Pension shall again become payable without any medical re-evaluation. If he is able to continue his employment beyond the 12 month period, his Disability Pension shall be terminated.

(b)   If a disabled Participant eligible for and receiving a Disability Pension appears to have recovered from his disability, the Trustees may continue Disability Pension payments for up to six months in which period the disabled Participant shall be given the opportunity to furnish additional information of a medical nature as evidence that the disability in fact continues and that he has not recovered. The Disability Pension payments shall terminate unless the Board of Trustees shall, on the basis of the medical evidence, determine that the Participant continues to be totally and permanently disabled as defined in Section 7.02.

(c)   A Disability Pensioner may be required from time to time upon request to submit a copy of his current income tax return to the Pension Fund or, if no tax return has been filed, to submit a signed affidavit to that effect. Failure to respond to such a request from the Trustees could delay payment of the monthly pension to which he may otherwise be entitled.

**7.05   BENEFITS PAYABLE UPON DEATH**

(a)   **Disability Pension Has Commenced**

(i)     If a Participant who is receiving a Disability Pension described in Section 7.01(b)(i) dies, a survivor benefit will be paid to his Surviving Spouse only if a Husband and Wife Pension was elected at the time of the Participant's application for benefits.  Any survivor benefit payable to the Surviving Spouse will be in accordance with the Husband and Wife Pension chosen.

(ii)    If a Participant who is receiving a Disability Pension described in Sections 7.01(b)(ii), 7.01(b)(iii) or 7.01(b)(iv) dies, the Disability Pension shall cease and his Surviving Spouse will be eligible for a death benefit payable under Section 9.02.

(b)   **Disability Pension Has Not Commenced**

(i)     The following surviving Spouse and single payment death benefits shall be paid on behalf of a Participant who qualifies for a Disability Pension described in Section 7.01(b)(i) and who dies before payments begin under Section 7.03. Surviving Souse and single payment death benefits paid under this Section 7.05(b) will commence the first day of the month following the date of death of the Participant. Such Spouse and single payment death benefits shall be paid without regard to any pending application for benefits or elections thereon.

(A)    If the Participant has a Spouse as defined in Section 1.30, a Surviving Spouse Annuity will be payable. The monthly benefit shall be in an amount equal to the pension benefit the Participant would have been entitled to at the time of his death based upon age and Pension Credits determined under this Article VII and calculated as the 100% Husband and Wife Pension with the standard 25% reduction factor.

(B)    If the Participant does not have a Spouse as defined in Section 1.30 and dies on or after October 1, 2000, a monthly benefit shall be paid to his designated Beneficiary for 36 months. The monthly benefit shall be in an amount equal to the pension benefit the Participant would have been entitled to at the time of his death based upon age and Pension Credits determined under this Article VII less a 25% reduction factor.

(C)    The Single Payment Death Benefit described in Section 9.01 shall be payable to the Participant's designated Beneficiary.

(ii)    If a Participant, who qualifies for a Disability Pension described in Sections 7.01(b)(ii), 7.01(b)(iii) or 7.01(b)(iv), dies before payments begin under Section 7.03, a Surviving Spouse Annuity will be payable in accordance with Section 9.02. The continuation percentage and benefit reduction are dependent upon the date of death of the Participant, as described in Section 9.02. The Single

42

Payment Death Benefit shall be payable to the Participant's designated Beneficiary, subject to the requirements of Section 9.01.

**7.06    NON-DUPLICATION WITH OTHER BENEFITS**

(a)    No disability pension benefits described in Section 7.01 shall be payable for any month for which the Participant or Pensioner receives weekly accident and sickness benefits from any jointly administered, collectively-bargained trust fund or other employer-financed, temporary-disability insurance plan.

(b)    The application of this Section 7.06 shall not have the effect of reducing the value of the Participant's pension for payment and, to the extent necessary to avoid reduction, the monthly amount of the pension shall be adjusted so as not to deprive the Pensioner of the value of his benefit

(c)    Any disability pension benefits payable for any month for which workers' compensation benefits are payable to a Pensioner under age 65 shall be offset by the amount of such workers' compensation benefits. Notwithstanding the above there shall be no offset for workers' compensation benefits received as a result of an injury sustained while working in any employment that would not result in a suspension of benefits under Section 11.01.

Pension benefits payable for months after any workers' compensation benefits have ended will not be offset. Proof of a lump sum settlement or of a final award for permanent disability as well as benefits paid under a structured settlement will be satisfactory evidence to the Trustees.

In the event that a Participant or Pensioner has not demonstrated his lack of entitlement to workers' compensation benefits to the satisfaction of the Trustees, the Trustees may pay pension benefits subject to a "reimbursement agreement" on a form prescribed by the Trustee entered into by the Participant or Pensioner.

(d)    If a Pensioner who is otherwise eligible for Disability Pension dies while his benefits are not payable or are offset under this Section 7.06, any payment to his surviving Spouse or Beneficiary shall be determined as follows:

(A)    If the Participant has a Spouse as defined in Section 1.30, a Surviving Spouse Annuity will be payable. The monthly benefit shall be in an amount equal to the Disability Pension benefit the Participant would have been entitled to at the time of his death without regard to the offset described in this Section 7.06 and calculated as the 100% Husband and Wife Pension with the standard 25% reduction factor without any offset.

(B)    If the Participant does not have a Spouse as defined in Section 1.30, a monthly benefit shall be paid to his designated Beneficiary for 36 months. The monthly benefit shall be in an amount equal to the Disability Pension the Participant would have been entitled to at the time of his death without regard to the offset described in this Section 7.06 less a 25% reduction factor without any offset.

(C)    No Single Payment Death Benefit described in Section 9.01 shall be payable.

43

# ARTICLE VIII

# PENSION PAYMENT
# FORMS, TYPES AND OPTIONS

## SECTION

### 8.01    NORMAL FORM OF PENSION

The form of a Participant's Pension shall be as follows:

(a)    If the Participant is not married on his pension Effective Date, his pension shall be paid in the form of a Single-Life Annuity.

Under this form of benefit the Pensioner shall receive a monthly income in an amount as determined under Article VI, ending with the payment for the month of his death.

(b)    If the Participant is married on his pension Effective Date, his pension shall be paid in the form of a Husband and Wife Pension. If the Participant has not been married for at least one year on his pension Effective Date, his pension shall be paid as a Single-Life Annuity in accordance with paragraph (a) above. Subsequent to the first anniversary of the marriage, his pension shall be paid as a Husband and Wife Pension in accordance with this paragraph (b).

Under this form the Pensioner shall receive a reduced monthly pension payable for his lifetime with 50%, 75% or 100% of his reduced benefit, as elected by the Pensioner prior to the Effective Date of his pension, continuing thereafter to his surviving Qualified Spouse, ending with the payment for the month of her death. The monthly amount of the Pensioner's reduced pension is equal to the percentage of his unreduced Single-Life Annuity Pension shown in Table 5. The monthly amount of his pension, once it becomes payable, shall not be increased if the Spouse predeceases the Pensioner. If no election is made, a 50% Husband and Wife Pension shall be automatically provided.

### 8.02    TYPES OF PENSION

(a)    **Husband and Wife Pension with "Pop-Up"**

Under this type, the Pensioner shall receive a reduced monthly pension payable as long as he and his Qualified Spouse both survive, with the designated percentage of his reduced benefit, as elected by the Pensioner prior to his pension Effective Date, continuing after his death to his surviving Qualified Spouse, ending with the payment for the month of her death. Should his Qualified Spouse predecease him, the amount of his monthly payment will "pop-up" to the full amount of his unreduced Single-Life Annuity and continue at that level, ending with the payment for the month of his death.

44

The monthly amount of the Pensioner's reduced pension is equal to the percentage of his unreduced Single-Life Annuity Pension shown in Table 5.

If a Pensioner elects the Husband and Wife Pension with Pop-Up as described in this Section 8.02(a) and his Qualified Spouse predeceases him, his monthly pension will be adjusted as described above. If such Pensioner later remarries, he may elect again a Husband and Wife Pension with Pop-Up naming a subsequent Qualified Spouse. Such election must be made within 12 months of his date of remarriage and will be effective following the first anniversary of his date of remarriage. If the Pensioner dies before the first anniversary of his date of remarriage, no benefits will be paid to the Spouse.

(b) **120 Certain Payments Pension**

    (i)    Under this type, the Pensioner shall receive a reduced monthly pension equal to 90% of the Single-Life Annuity Pension, payable for his lifetime, with the guarantee that if he dies before he has received 120 monthly pension payments, his monthly pension shall continue to be paid to his designated Beneficiary until a total of 120 payments has been made, including the payments to both the Pensioner and his Beneficiary. At the option of the Beneficiary, these remaining payments may be commuted and paid as a lump sum.

    (ii)    If this type is elected and no Beneficiary is named, or if the last-named Beneficiary has predeceased the Pensioner, the estate of the Pensioner shall be deemed to be the Beneficiary. If the last-named Beneficiary dies after the Pensioner and such Beneficiary has received at least one pension payment, then the commuted value of the remaining payments shall be paid to the estate of such Beneficiary.

## 8.03    BENEFIT PAYMENT OPTIONS

(a) **Lump Sum Option**

    (i)    This option may be elected in combination with any one of the other benefit forms. Under this option, the retired Participant shall receive a reduced monthly benefit with the balance of his benefit converted to a lump sum payment.

    (ii)    *Maximum Benefit Convertible*

    The amount of monthly income that the Participant may convert to a lump sum may not exceed the smaller of:

    (A)    10% of his monthly pension, or

    (B)    that pension which will produce the following lump sum amounts:

| Effective Date Of Pension | Maximum Lump Sum |
|---|---|
| Prior to 10/1/1991 | $ 7,500 |
| 10/1/1991 to 9/30/1992 | 10,000 |
| 10/1/1992 to 9/30/1993 | 15,000 |
| 10/1/1993 to 9/30/2000 | 20,000 |
| 10/1/2000 and later | 50,000 |

(iii)   The amount of the lump sum that shall be paid for each dollar of converted monthly pension shall fluctuate based on market interest rates in effect on the Effective Date of the Participant's pension, as described in Section 1.02.

(iv)   The lump sum shall be paid on the pension Effective Date.  If the Participant dies after the Effective Date of his pension but before having received the lump sum, payment shall be made to his designated Beneficiary.

(v)   In no event shall the amount of lump sum payable under this Section 8.03 be less than the present value of the converted monthly pension determined in accordance with Sections 417(e) and 415(b) of the Code.

(vi)   If the pension is paid under the terms of a qualified domestic relations order, the maximum amount of monthly income the Participant and Alternate Payee may convert to a lump sum described in paragraph (ii) above will be determined based on the combined amount of pension benefit payable to both the Participant and the Alternate Payee.

(vii)   In accordance with applicable federal, state and local tax laws, a lump sum payment made under this Section 8.03

(A)   qualifies as a direct rollover distribution described in Section 8.07, or

(B)   may be subject to mandatory tax withholding treatment, and

(C)   may be subject to early distribution tax penalties.

(b)   **Christmas Benefit Option**

(i)   This option may be elected in combination with any one of the other benefit forms.  Under this option the retired Participant shall receive a reduced monthly benefit which is 93% of the benefit that would have otherwise been payable to him under the benefit form he has elected.  The Plan shall pay to him each December 1 an extra monthly payment (or Christmas Benefit) provided he is alive on that date.  If elected in combination with any benefit form other than the Life Annuity, or if elected in combination with the Lump Sum option, the reduction for this option shall be applied last.

(ii)   After the first year, the amount of the Christmas Benefit shall be identical to the retired Participant's regular monthly payment.  On the first December of retirement the Christmas Benefit shall equal the Participant's regular monthly payment times the number of regular monthly payments due that Calendar Year divided by 12.

(iii)   If the Christmas Benefit is elected in combination with the Husband and Wife Pension Pop-Up, as described in Section 8.02(a), and the Qualified Spouse predeceases the Pensioner, the amount paid in each December following the Qualified Spouse's death will be equal to the monthly benefit payable to the Pensioner, adjusted for the "pop-up".

(iv)   The Christmas Benefit is not paid to any surviving Spouse under the Husband and Wife Pension or to any Beneficiary under the 120 Payments Certain Pension.  As a result, the 7% deduction for the Christmas Benefit option is added back in to the Participant's benefit amount when calculating the amount of

46

benefit that will be paid to the surviving Qualified Spouse or designated Beneficiary, as applicable.

**8.04    REJECTION OF NORMAL FORM OF PENSION FOR MARRIED PARTICIPANTS**

(a)    **Married Participant Election**

Subject to the restriction of paragraph (b) below, a Participant other than a Participant retiring on a Disability Pension may reject the normal form of pension described in Section 8.01 and elect instead from among the other types or options described in Sections 8.02 and 8.03, other than the Husband and Wife Pension with Pop Up described in Section 8.02(a). If the Participant is married at his pension Effective Date, however, such rejection and election must be made jointly with his Spouse as described in paragraph (d) below.

Such rejection and election (including a revocation of a prior election) must be made in writing on a form prescribed by the Trustees, and filed with the Trustees prior to the later of the Effective Date or award notification date of his pension. An election may not be made or altered after the later of the Effective Date or award notification date of the Participant's pension. A married Participant, however, may jointly with his Spouse change his benefit form after the later of his pension Effective Date or award notification date as long as such revised election is filed within 90 days of his receipt of the written notification described in paragraph (c) below.

(b)    **Limitation on Elections**

A Participant who is eligible only for a Statutory Pension may choose only the Husband and Wife Pension (with or without "pop-up") or the Single-Life Annuity Pension. The Christmas Benefit option described in Section 8.03(b) may be elected in conjunction with the Husband and Wife Pension or the Single-Life Annuity Pension.

(c)    **Written Notification of Election**

Upon a Participant's application to retire, the Trustees shall furnish the Participant, within at least 30 days and no longer than 90 days prior to the starting date of benefits, with a written, non-technical explanation of the forms of benefit payment available to him, including the normal form of pension described in Section 8.01. Such explanation shall also describe the Participant's right to reject the standard form of pension and elect another form, the effect on his benefit of such a rejection and election, the rights of the Participant's Spouse, and the right to revoke any previous election.

The benefit commencement date for a distribution in a form other than the standard form of pension may be less than 30 days after receipt of the written explanation described above provided: (i) the participant has been provided with information that clearly indicates that the participant has at least 30 days to consider whether to waive the standard form of pension and elect (with spousal consent) a form of distribution other than the standard form of pension; (ii) the participant is permitted to revoke any affirmative distribution election at least until the benefit commencement date or, if later, at any time prior to the expiration of the 7-day period that begins the day after the explanation of the standard form of pension is provided to the participant; and (iii) the benefit commencement date is a date after the date the written explanation was provided to the participant.

(d) **Spousal Consent Required**

If the Participant is married on his Pension Effective Date and elects a form of payment other than the Husband and Wife Pension described in Table 5, any such election must be consented to by his Spouse. Such an election and spousal consent is valid only if:

(i) The Participant files the election in writing in such form as the Trustees may prescribe, and the Participant's Spouse acknowledges in writing the effect of the election, and consenting to the election of the alternative form of benefit (including all choices and beneficiary designations that may be required to implement that form of benefit). The Spouse's written acknowledgement must be witnessed by a notary public or such representative of the Plan as the Trustees may designate for that purpose.

(ii) The Spouse's consent is not required if the Participant establishes to the satisfaction of the Trustees that:

(A) he is not married;

(B) the Spouse whose consent would be required cannot be located; or

(C) consent of the Spouse cannot be obtained because of extenuating circumstances, as provided in IRS regulations.

(e) **Proof of Marriage**

The Trustees may require proof of marriage at any time in connection with the administration of the Husband and Wife Pension. The Trustees shall be entitled to rely on a written representation last filed by the Participant before the Effective Date of his pension as to whether he is married and to the identity of his Spouse. If such representation later proves to be false, the Trustees will adjust for any excess benefits paid as the result of the misrepresentation.

## 8.05   SPECIAL RULES

(a) If the Participant is eligible for a Disability Pension which was first payable prior to August 1, 1998 under Article VII, the only available forms of his pension are a Single-Life Annuity or a Christmas Benefit Option. He shall not be entitled to elect the other types or options of pension described in Sections 8.02 and 8.03. When his Disability Pension ceases and he commences his Statutory Pension or other pension under Article VI to which he may be entitled, the normal form of this Statutory or other pension shall be the reduced 50% Husband and Wife Pension described in Section 8.01(b) above if he is married on the date on which his Disability Pension ceases. The payment of this Statutory or other pension shall be subject to all of the provisions of this Article VIII, especially Section 8.04(b).

(b) If the Participant is receiving a Disability Pension which was first payable prior to August 1, 1998 under Article VII and his Disability Pension does not cease at Normal Retirement Age as described in Section 7.03(b), upon his death there shall be paid to the surviving Qualified Spouse to whom he was married at Normal Retirement Age a lifetime pension equal to the benefit that would have been paid to her had his Disability Pension ceased at Normal Retirement Age and had he commenced the Statutory Pension to which he would then have been entitled in the 50% Husband and Wife form (or such larger continuation percentage that remains part of his Accrued Benefit if he

48

does not have six months of Pension Credit after 1990). The Participant shall not have the right to elect payment from among the types or options of pension as described in Section 8.03.

(c)  If a Participant is eligible for a Disability Pension which was first payable on or after August 1, 1998, such Participant shall be entitled to elect the form of pension set forth in Sections 8.01(a) and (b) and Section 8.02 and Section 8.03 subject to the restriction on elections set forth in Section 8.03.

(d)  An election of a form of pension may not be altered after the Effective Date of a Participant's pension unless such revised election is filed within 90 days of his receipt of the written notification described in Section 8.04(c) above. The election of the Husband and Wife form of pension, once it becomes payable, cannot be changed or revoked if the Pensioner is divorced or legally separated under a court decree from the Spouse to whom he was married at his pension Effective Date.   The Spouse to whom the Participant was married on his pension Effective Date shall remain entitled to any survivor benefits under his pension form regardless of any changes in her marital status after the pension Effective Date.

(e)  If the Participant and Spouse have not been married for one year on the pension Effective Date, payments under his benefit form shall commence in an amount equal to the Single-Life Annuity benefit form.  If the Pensioner dies before he and his Spouse have been married for one year, no payments shall continue to his Spouse. When the Pensioner and his Spouse have been married for one year, further payments to the retired Participant shall be made in the reduced designated Husband and Wife form of payment, and his Qualified Spouse shall be entitled to survivor payments upon his death.

## 8.06   COMMUTATION OF PENSION

In the event that the present value of a pension on its Effective Date is less than $3,500, the Trustees shall convert the benefit to a lump sum payment which shall be the Actuarial Equivalent of the pension benefit.  In the event the present value of a pension on its Effective Date is more than $3,500 and the benefit is less than $25 a month, the benefit shall be converted to a lump sum payment at the joint option of the Pensioner and his Spouse; or as to a survivor's benefit at the option of the Beneficiary. Any lump sum payable under this Section 8.06 shall be determined in accordance with Section 417(e) of the Code.

## 8.07   DIRECT ROLLOVER DISTRIBUTIONS

(a)  If any distribution of $200 or more to a Participant, Spouse, Beneficiary, or Alternate Payee and such distribution constitutes an "eligible rollover distribution" within the meaning of Section 402(c)(4) of the Code, the recipient may elect, instead, to have all or part of such eligible rollover distribution paid in a direct rollover to an Eligible Retirement Plan, as described in paragraph (c) below, selected by the recipient.  Such direct rollover shall be made in accordance with procedures established by the Trustees.

(b)  If the Participant, Spouse, Beneficiary or Alternate Payee elects not to roll over such distribution, or if an election is not made in a timely manner, such distribution shall be made directly to the entitled individual subject to applicable federal, state, and local withholding taxes.

49

(c)   An "Eligible Retirement Plan" means:

    (i)    an individual retirement account described in Section 408(a) of the Code;

    (ii)    an individual retirement annuity (other than an endowment contact) described in Section 408(b) of the Code;

    (iii)    with respect only to Participants and Alternate Payees under Qualified Domestic Relations Orders, a qualified defined contribution plan and exempt trust described in Section 401(a) and Section 501(a) of the Code, respectively, the terms of which permit the acceptance of rollover contributions; or

    (iv)    with respect only to Participants and Alternate Payees under Qualified Domestic Relations Orders, an annuity plan described in Section 403(a) of the Code.

# ARTICLE IX

## BENEFITS UPON DEATH PRIOR TO RETIREMENT

**SECTION**

**9.01    SINGLE PAYMENT DEATH BENEFIT FOR DEATH DURING ACTIVE SERVICE**

(a)    Upon the death of a Participant who:

    (i)    is Actively Engaged in Covered Employment,

    (ii)    dies before his pension Effective Date, and

    (iii)    has 10 or more years of Pension Credit, including at least 2 years of Contributory Credit,

a Single Payment Death Benefit shall be paid to his designated Beneficiary. The death benefit shall be an amount equal to $100 for each year of Pension Credit to a maximum of $2,500, but not less than $1,000.    If the Participant shall have had one hour of contributions made on his behalf during the four Calendar Years ending with the Calendar Year of his date of death at a rate of $2.66 or more, the death benefit shall be an amount equal to $200 for each year of Pension Credit, to a maximum of $5,000, but not less than $2,000.

(b)    If no Beneficiary has been named, or if the last-named Beneficiary has predeceased the Participant, then the payment required under this Section 9.01 may be made to the surviving Spouse of such Participant, if any, and if there is no surviving Spouse, payments provided under this Section 9.01 may be made to any surviving children of the Participant.

(c)    The question of the existence of a surviving Spouse or children, and the proportion of benefits to one or more children, shall be at the sole and absolute discretion of the Trustees.    No one shall be eligible to receive a death benefit under this Section 9.01 unless an application is made in writing in a form and manner prescribed by the Trustees which is filed within one year of the death of the Participant; provided, however, that the Trustees may extend the time for filing for good and sufficient reasons which are acceptable to the Trustees which prevented or interfered with the filing by the surviving Spouse or children within the prescribed one year.    In the event there is no surviving Spouse or children, the estate of the Participant shall be deemed to be the Beneficiary.

(d)    As noted in Section 7.05(b), a Single Payment Death Benefit will be paid to the Beneficiary of a deceased disabled Participant only if his Disability Pension has not commenced in accordance with 7.03(a)

**9.02   SURVIVING SPOUSE ANNUITY**

(a)   **Eligibility and Benefit Description**

The surviving Qualified Spouse of a Participant who had achieved Vested Status and who dies prior to commencing benefits under this Plan shall, upon application in writing on a form prescribed by the Trustees, be entitled to a monthly Surviving Spouse Annuity as described in this Section 9.02. The Surviving Spouse Annuity shall commence at such date and in such amount as is described in paragraphs (b) and (c) below and shall cease with the payment due for the month in which the Spouse dies.

A disabled Pensioner may be eligible for a Surviving Spouse Annuity as further described in paragraph (f) below.

(b)   **Immediate Annuity**

(i)   *Eligibility*

The Surviving Spouse Annuity shall commence the first day of the month following the date of death of the Participant, if, on his date of death:

(i)   the Participant could have retired under Article VI and would have been entitled to an immediate lifetime income under the Plan, or

(ii)   the Participant

(1)   was Actively Engaged in Covered Employment; and

(2)   had accumulated at least 15 years of Pension Credit, including at least four months of Contributory Credit at $1.00 per hour or more.

(ii)   *Amount*

The amount of the Surviving Spouse Annuity shall be the amount that would have been payable to the surviving Qualified Spouse had the Participant retired under Article VI on his date of death, electing the 50% Husband and Wife Pension, and then immediately died. Effective October 1, 1995, if the Participant was Actively Engaged in Covered Employment at his date of death, the 15% reduction customarily applied to calculate a 50% Husband and Wife Pension shall be waived. If the Participant was under age 52 on his date of death, the benefit amount shall be calculated as if he were age 52. The requirement for six months of Pension Credit after age 49 will be waived for Participants who satisfy the eligibility requirements of paragraph 9.02(b)(i) above.

For deaths which occur on or after April 1, 1998 of a Participant Actively Engaged in Covered Employment at his date of death, the amount of the Surviving Spouse Annuity shall be the amount that would have been payable to the surviving Qualified Spouse had the Participant retired under Article VI on his date of death, electing the 100% Husband and Wife Pension, and then immediately died. The 25% reduction as set forth in Table 5 will be applied in calculating the amount of the 100% Husband and Wife Pension. If the Participant was under age 52 on his date of death, the benefit amount shall be calculated as if he were age 52. The requirement for six months of Pension Credit after age 49 will be waived for Participants who satisfy the eligibility requirements of paragraph 9.02(b)(i) above.

(c)     **Deferred Annuity**

   (i)    ***Eligibility and Commencement Date***

          A benefit under this paragraph (c)(i) shall be payable only if the Participant died after August 22, 1984. If the surviving Qualified Spouse was not eligible for an immediate annuity under paragraph (b) above, the Surviving Spouse Annuity shall commence on the first day of the earliest month the Participant could have commenced benefits under Article VI were he to have survived to such earliest benefit commencement date while earning no additional Pension Credit.

   (ii)   ***Amount***

          The amount of the Surviving Spouse Annuity shall be the amount that would have been payable to the surviving Qualified Spouse had the Participant survived to his earliest commencement date, retired under the 50% Husband and Wife Pension, and then immediately died. Effective October 1, 1995, if the Participant was Actively Engaged in Covered Employment at his date of death, the 15% reduction applied pursuant to Table 5 to calculate a 50% Husband and Wife shall be waived.

          For deaths which occur on or after April 1, 1998, of a Participant Actively Engaged in Covered Employment at his date of death, the amount of the Surviving Spouse Annuity shall be the amount that would have been payable to the surviving Qualified Spouse had the Participant survived to his earliest commencement date, retired under Article VI electing the 100% Husband and Wife Pension, and then immediately died. The 25% reduction as set forth in Table 5 will be applied in calculating the amount of the 100% Husband and Wife Pension.

(d)     **Minimum Surviving Spouse Annuity**

        If a Participant's Spouse is eligible for an immediate Surviving Spouse Annuity upon his death and if she would have been eligible for an immediate Surviving Spouse Annuity had the Participant died on or after September 30, 1991, the Surviving Spouse Annuity shall not be less than the benefit that would have been paid under the provisions of the Plan in effect on September 30, 1991, based on the Participant's Accrued Benefit as of that date and his age and his Spouse's age as of his date of death.

(e)     **Optional Deferred Annuity**

        Effective October 1, 1994 the surviving Qualified Spouse who is eligible for a benefit under this Section 9.02 prior to the date the Participant would have attained Normal Retirement Age may elect to defer commencement of this benefit until the first day of any month through the date the Participant would have attained Normal Retirement Age. In such case, the amount of the benefit shall be determined as in paragraphs (b), (c), or (d) above, except that the reduction for early retirement from Table 3 that is applied when calculating this benefit shall be based on the age that would have been used when calculating the Participant's pension had he survived to the surviving Spouse's benefit commencement date.

        If the surviving Spouse dies before benefits commence, no benefits shall be payable.

(f)     **Disabled Participant Surviving Spouse Annuity**

        A Surviving Spouse Annuity will be payable upon the death of a disabled Participant as follows:

53

(i)    For a disabled Participant eligible for a Disability Pension described in Section 7.01(b)(i):

    (A)    If his Disability Pension has commenced under Section 7.03(a), a Surviving Spouse Annuity is payable subject to the requirements of Section 7.05(a)(i).

    (B)    If his Disability Pension has not commenced under Section 7.03(a), a Surviving Spouse Annuity is payable subject to the requirements of Section 7.05(b)(i).

(ii)    For a disabled Participant eligible for a Disability Pension described in Section 7.01(b)(ii), 7.01(b)(iii) or 7.01(b)(iv), a Surviving Spouse Annuity is payable subject to the requirements of paragraphs (b) and (c) above. The percentage continuation to the surviving Spouse is dependent upon the date of the Participant's death. If a disabled Participant dies on or after January 1, 2001, a Surviving Spouse Annuity is payable subject to the requirements of paragraph (b) above.

## 9.03    THIRTY SIX MONTH ANNUITY FOR UNMARRIED PARTICIPANTS

(a)    Upon the death of an unmarried Participant who satisfies the eligibility requirements below, a 36 Month Annuity shall be paid to his designated Beneficiary for 36 months. The 36 Month Annuity shall be paid if the unmarried Participant

    (i)    dies on or after October 1, 2000 and who could have retired under Article VI and would have been entitled to an immediate lifetime income under the Plan, or

    (ii)    dies on or after December 1, 2001 and who

        (A)    was Actively Engaged in Covered Employment; and

        (B)    had accumulated at least 15 years of Pension Credit, including at least four months of Contributory Credit at $1.00 per hour or more.

The 36 Month Annuity shall be in an amount equal to that pension benefit the Participant would have been entitled to at the time of his death based upon age and Pension Credits determined under Article VI less a 25% reduction factor. If the Participant was under age 52 on his date of death, the benefit amount shall be calculated as if he were age 52. The requirement for six months of Pension Credit after age 49 will be waived for Participants who satisfy the eligibility requirements of paragraph 9.03(a)(ii) above.

(b)    Upon the death of an unmarried disabled Participant who dies on or after October 1, 2000 and is eligible for a Disability Pension described in Section 7.01, a 36 Month Annuity will be payable only if his Disability Pension has not commenced. The 36 Month Annuity shall be in accordance with Section 7.05(b)(i)(B) by applying the Early Disability Pension factors described in Table 3, if payable prior to Normal Retirement Age.

# ARTICLE X

# APPLICATIONS, BENEFITS PAYMENTS, AND RETIREMENT

**SECTION**

**10.01    APPLICATIONS**

To receive any benefit under this Plan, an eligible Participant must complete in writing and file two forms in the style prescribed by the Trustees.

(a)    A Pension Application must be filed with Trustees at least one calendar month in advance of the Effective Date of the pension: and

(b)    A Notice of Retirement, which gives the last day the Participant worked in Covered Employment, must be filed with the Trustees.

**10.02    INFORMATION AND PROOF**

Every claimant for the benefits shall furnish, at the request of the Trustees, any information or proof reasonably required to determine his benefit rights.  If the claimant makes a willfully false statement material to his application or furnishes fraudulent information or proof material to his claim, benefits not vested under this Plan may be denied, suspended, or discontinued.   The Trustees shall have the right to recover, through legal proceedings or offsetting against future benefits any benefits paid in reliance on any false statement, information, or proof submitted by a claimant (including withholding of material fact) plus interest and costs, including attorney fees, without limitation by recovery through offset of benefit payments as permitted by this Article X.  Further, in the administration of these rules concerning suspension of benefits, the Trustees may require of the Pensioner that he furnish evidence from the Social Security Administration concerning his employment history during a specified period of time.

**10.03    ACTION OF TRUSTEES**

(a)    The Trustees shall have full discretionary authority with respect to the interpretation and construction of the Plan, including the power to make factual findings, as set forth in the Restated Agreement and Declaration of Trust.  The Trustees shall be the judges of the standard of proof required in any case and of the application and interpretation of this Plan, and the decisions of the Trustees shall be final and binding on all parties, subject to appeal under Section 10.04.

(b)    Wherever in the Plan the Trustees are given discretionary powers, they shall exercise such powers in a uniform and non-discriminatory manner.

(c)    The Trustees shall process a claim for benefits as diligently as is feasible, consistent with the need for adequate information and proof necessary to determine the claimant's rights to benefits and to commence the payment of benefits. If circumstances cause a delay in processing a claim for benefits, and the claimant has fulfilled all the conditions for entitlement to benefits in accordance with Section 10.05(b), the Trustees shall approve retroactive payment of benefits for any month for which benefits are due and payable in accordance with such Section 10.03.

(d)    The Trustees shall be entitled to rely upon written representations, consents, and revocations submitted by Participants, Spouses or other parties in making determinations under the Plan and, unless such reliance is arbitrary or capricious, the Trustees' determinations shall be final and binding, and shall discharge the Plan and the Trustees from liability to the extent of the payments made. This means that, unless the Plan is administered in a manner determined to be inconsistent with the fiduciary standards of Part 4 of Title I of ERISA, the Plan shall not be liable for duplicate benefits with respect to the same Participant, or for surviving Spouse benefits in excess of actuarial present value of the benefits described in the Plan, determined as of the Effective Date of the Participant's pension or, if earlier, the date of the Participant's death.

## 10.04    RIGHT OF APPEAL

A claimant whose application for benefits under his Plan has been denied in whole or in part shall be provided with adequate notice in writing setting forth the specific reasons for such denial. He shall have the right to appeal the decision by written request which shall set forth the facts and arguments therefor and which shall be filed with the Trustees within ninety (90) days after receipt of such notice. The appeal shall be considered by the Trustees or by a person or committee designated by the Trustees. No claimant shall have the right to bring suit for benefits under his Plan unless he shall have first exhausted the procedures for appeal established under this Section 10.04.

## 10.05    BENEFIT PAYMENTS

(a)    A Participant who is eligible to receive benefits under this Plan and who makes application in accordance with the rules of the Pension Plan shall be entitled upon retirement to receive the monthly benefits for the remainder of his life, subject to the other provisions of this Article X and of any other applicable provisions of the Plan.

(b)    Pension benefits shall be payable commencing with the month following the month in which the claimant has fulfilled all the conditions for entitlement to benefits, including retirement and the requirements of Section 10.01 for the filing of the pension application and the notice of retirement with the Trustees.

If the Participant dies after making an application to receive benefits, but before such benefits commence, such death will be deemed to have occurred after retirement and pension benefits will be paid to his Spouse or Beneficiary in accordance with the elections made on his application.

The pension shall last be payable for the month in which the death of the Pensioner occurs, except as provided in accordance with the survivor's pension option or any other provision of this Plan for payments after the death of the Pensioner.

If the Participant dies on or after May 1, 2002, the Spouse or Beneficiary may elect to have the death treated as either before retirement or after retirement. If the death is treated as before retirement, pension benefits will be paid to his Spouse or Beneficiary in accordance with the provisions of Article IX. If the death is treated as after retirement, pension benefits will be paid to his Spouse or Beneficiary in accordance with the elections made on his application.

(c)   **Minimum Distributions**

Payment of the benefits may begin sooner but shall begin no later than the earlier of:

(i)   April 1 of the Calendar Year following the Calendar Year in which the Participant attained age 70½ (if the Participant attained age 70½ before January 1, 1999): or

(ii)   the latest of (A), (B), or (C) below:

    (A)   60 days after the end of the Calendar Year in which the Participant retired; and

    (B)   60 days after the date the Participant filed the pension application for benefits; and

    (C)   effective January 1, 1999, the April 1 following the Calendar Year in which the Participant attained age 70½.

In any event, the Trustees need not make payment before they are first able to ascertain entitlement to, or the amount of, the pension, nor before such later date as the Participant has elected to receive benefits, in writing and filed with the Trustees.

**10.06   RETIREMENT**

(a)   To be considered retired, whether or not he has attained his Normal Retirement Age, a Participant must have completed his last day of work in Covered Employment unless this Plan shall otherwise provide.

(b)   A Participant who has retired from previous employment as defined in paragraph (a) above and who attains his Normal Retirement Age shall thereafter be considered retired notwithstanding subsequent employment or reemployment in Covered Employment for less than 48 hours in any month.

**10.07   INCOMPETENCE OR INCAPACITY OF A PENSIONER OR BENEFICIARY**

In the event it is determined to the satisfaction of the Trustees that a Pensioner or Beneficiary is unable to care for his affairs because of mental or physical incapacity, any payment due may be applied, in the discretion of the Trustees, to the maintenance and support of such Pensioner or Beneficiary or to such person as the Trustees find to be primarily responsible for the Pensioner or Beneficiary in the manner decided by the Trustees, unless prior to such payment, claim shall have been made for such payment by a legally appointed guardian, committee or other legal representative appropriate to receive such payments on behalf of the Pensioner or Beneficiary.

**10.08    DESIGNATION OF BENEFICIARY**

Each Participant may designate a Beneficiary and, if he wishes, one contingent Beneficiary, in writing in the form and manner required by the Trustees with respect to the Single Payment Death Benefit and Thirty Six Month Annuity for Unmarried Participants provided in Section 9.01 and 9.03, respectively.

**10.09    NON-ASSIGNMENT OF BENEFITS**

(a)    No Participant, Pensioner or Beneficiary entitled to any benefits under this Pension Plan shall have the right to assign, alienate, transfer, encumber, pledge, mortgage, hypothecate, anticipate, or impair in any manner his legal or beneficiary interest, or any interest in assets of the Pension Fund, or benefits of this Pension Plan.  Neither the Pension Fund nor any of the assets thereof shall be liable for the debts of any Participant, Pensioner or Beneficiary entitled to any benefits under this Plan, nor be subject to attachment or execution or process in any court or action or proceeding, except as provided in paragraphs (b), (c), (d) and (e) below.

(b)    Notwithstanding paragraph (a) above, benefits may be paid to an Alternate Payee in accordance with a "Qualified Domestic Relations Order" as defined in ERISA 206(d)(3).  The Plan shall maintain written procedures for determining the qualified status of the domestic relations order and for administering distributions of benefits under qualified orders.    Those procedures shall be binding on all Participants, Beneficiaries, and Alternate Payees.  The Plan shall not comply with orders which do not meet the requirements of ERISA 206(d)(3) or the procedures adopted in accordance with this paragraph (b).  If any such Qualified Domestic Relations Order requires benefits to be converted from a benefit paid for the Participant's lifetime to a benefit paid for the Alternate Payee's lifetime, such conversion shall be made using the Actuarial Equivalent factors in effect on the date the Order is qualified.

(c)    Any rights of a former Spouse or other Alternate Payee under a qualified Domestic Relations Order, with respect to a Participant's pension, shall take precedence over those of any later Spouse of the Participant.

(d)    Notwithstanding paragraph (a) above, once a Participant or Beneficiary begins receiving benefits such Participant or Beneficiary may assign the right to future benefit payments to be directed to pay the Participant's or Beneficiary's share of retiree medical benefit coverage provided such assignment meets the requirements of Section 1.401(a)-13 of the Income Tax Regulations.

(e)    Notwithstanding paragraph (a) above, a Participant's pension benefits may be offset for certain judgments or settlements described in IRC Section 401(a)(13)(C).  Such judgments or settlements must be court ordered.

**10.10    NO RIGHT TO ASSETS**

No person other than the Trustees of the Pension Fund shall have any right, title or interest in any of the income or property of any character received or held by or for the account of the Pension Fund, and no person shall have any right to benefits provided by the Pension Plan except as expressly provided herein.  No Employee, Beneficiary, group of Employees, Local Union, or Employer, who ceases to maintain his or its status as a Participant, Beneficiary,

Local Union or Contributing Employer shall have any right to any of the assets of the Fund nor may any contributions to the Fund on behalf of the employment of a Participant be transferred to any other pension fund, local union or employer, or be paid to any Participant or Beneficiary except in the form of benefits as provided in the Plan.

**10.11   MAXIMUM LIMITATION**

In no event shall this Plan pay benefits in excess of the maximum amounts described in Section 415 of the Internal Revenue Code, except for benefits accrued prior to October 1, 1976.

The Trustees shall be entitled to rely on a representation by an Employer that the pension payable to a Participant under this Plan, to the extent attributable to employment with that Employer, does not, together with any other pension payable to him under any other plan maintained by that Employer (and the extent attributable to employment with that Employer), exceed these maximum limitations.  If these limitations are exceeded, benefits under the Employer's other plans shall be reduced so as to comply with Section 415 of the Internal Revenue Code.

The maximum dollar limitation under Code Section 415(b)(l)(A) shall be adjusted pursuant to Code Section 415(b)(2)(C) when applied to early retirement benefits paid under the Plan with such adjustment based on the early reduction factors actually used in determining the Participant's early retirement benefit under the Plan, if any, or an interest rate of five percent (5%) and the mortality table referenced in Section 417(e)(3) of the Code, whichever produces the larger reduction.  For purposes of applying the limitations of Code Section 415(b)(1)(B), the Participant's highest average compensation shall be adjusted for cost of living increases beginning after the Participant's termination of employment.

For purposes of applying the limitations of Section 415 of the Code with respect to a Participant of a Contributing Employer, there shall be taken into account only the benefits provided by that particular Employer, provided that this special rule shall apply only if it would increase the maximum permissible amount payable under Section 415 of the Code (relative to the maximum permissible amount which would be payable if the limitations were determined by aggregating the benefits provided by all Contributing Employers under the Plan).  For this purposes, the annual pension benefit provided by a particular Contributing Employer shall be equal to the total annual pension benefit payable to the Participant (disregarding benefits attributable to past service with nonparticipating employers) multiplied by a fraction, the numerator of which is the Participant's period of Credited Service with the Employer and the denominator of which is the Participant's total period of Credited Service (in both cases counting only period for which contributions to the Plan were made).  In applying the limitations of Code Section 415(b)(l)(B) in such cases, the Participant's highest average compensation shall be determined separately for each Contributing Employer, and shall be adjusted for cost of living increases beginning after the Participant's termination of employment with that Employer.

For purposes of adjusting the maximum dollar limitation under Code Section 415(b)(1)(A) pursuant to Code Section 415(b)(2)(B) and Code Section 415(b)(2)(D), applicable assumptions set forth under Code Section 415(b)(2)(E) shall be used.

Effective January 1, 2002, the compensation limitations of Code Section 415(b)(1)(B) shall no longer apply. Any pension amounts that were reduced due to the application of Code Section 415(b)(1)(B) prior to January 1, 2002 will be fully restored effective January 1, 2002.

59

**10.12   WAIVER OF BENEFITS**

Any Pensioner who is eligible for or who is receiving any other pension benefit, the receipt of which is dependent upon his not exceeding certain income limits, may, if he so elects, by signing and acknowledging a written waiver and delivering the same to the Trustees, waive all or any part of his pension benefits under this Plan provided, however, that such waiver may not be withdrawn except upon 30 days' written notice by registered mail to the Trustees. After having executed such waiver, the Pensioner shall at no time be entitled to make claim for the benefits which have been waived.  Withdrawal of such waiver shall not be effective until 30 days receipt thereof by the Trustees.

**10.13   WORKING AFTER RETIREMENT**

(a)    If a Pensioner is receiving his monthly pension benefits after age 70, such Pensioner may work and continue to receive his monthly pension benefit. If, as a result of such employment, the Pensioner earns additional Pension Credit, he may be entitled to an additional pension, earned through his additional service.  Such additional benefit shall be determined without recognizing his prior years of Pension Credit, but, in total, no more than the maximum years of recognized Pension Credit under Section 6.02 shall be recognized under this Section 10.13. Any adjusted monthly pension benefit will be payable each January 1. If a Pensioner's original Effective Date precedes his 70th birthday, his adjusted monthly pension benefit shall include the offset provisions of Section 11.02(b). If a Pensioner's original Effective Date is on or after his 70th birthday, his adjusted monthly pension benefit shall not be offset.

(b)    Any other Pensioner not described in paragraph (a) above, may work up to 48 hours per month and continue to receive his monthly pension benefit. If, as a result of such employment, the Pensioner earns additional Pension Credit, he may be entitled to an additional pension, earned through his additional service.  Such additional benefit shall be determined without recognizing his prior years of Pension Credit, but, in total, no more than the maximum years of recognized Pension Credit under Section 6.02 shall be recognized under this Section 10.13. Any adjusted monthly pension benefit will be payable each January 1 and shall include the offset provisions of Section 11.02(b).

If a Pensioner not described in paragraph (a) above works more than 48 hours per month, he will be subject to the suspension of benefit provisions of Article XI.

(c)    A Pensioner who was not eligible for a Special Service Pension described in Section 6.10 as of his original Effective Date and who earns additional Pension Credit during his benefit suspension, may become eligible for a Special Service Pension if he earns at least five years of Pension Credit subsequent to his original Effective Date, subject to the provisions of Section 6.10.

(d)    A Pensioner who was eligible for a Special Service Pension described in Section 6.10 as of his original Effective Date and who earns additional Pension Credit during his benefit suspension, may become eligible for improvements to the Special Service Pensions adopted subsequent to his original Effective Date, if he earns at least five years of Pension Credit subsequent to his original Effective Date, subject to the provisions of Section 6.10.

# ARTICLE XI

# SUSPENSION OF BENEFITS

**SECTION**

**11.01    SUSPENSION OF BENEFITS**

(a)    **General Rule**

Payment of pension benefits to which a Pensioner is otherwise entitled shall be suspended for any month in which a Pensioner works at least 49 hours in Disqualifying Employment (as defined in Sections 1.15 and 1.16).    If a Participant is receiving a pension benefit under the age 70½ minimum distribution rules described in Section 10.05(c)(i), his pension benefit will not be suspended for any periods of Disqualifying Employment.

(b)    **Further Suspension**

A Pensioner who has not attained his Normal Retirement Age shall have his monthly benefits suspended for up to three consecutive months after any consecutive period of one or more months during which the Pensioner engaged in Disqualifying Employment. Further, if such Pensioner has failed to notify the Plan of any employment in accordance with the Notice-of-Employment requirements of paragraph (d) below or has willfully misrepresented any material facts with respect to such employment, the monthly benefits shall be suspended for an additional period of six months.

The Trustees may, for good cause, waive either or both of these additional periods of suspension.

(c)    **Suspension of Benefits**

Suspension of Benefits for a month means non-entitlement to benefits for the month.  If benefits were paid for a month for which benefits were later to be suspended, the over-payment shall be recoverable through deductions from future pension payments, pursuant to paragraph (g)(i) below, and in accordance with Section 10.03.

(d)    **Notices**

(i)    Upon commencement of pension payments, the Trustees shall notify the Pensioner of the rules governing suspension of benefits.  If benefits have been suspended and payment resumed, new notification shall, upon resumption, be given to the Participant, if there has been any material change in the suspension rules or the identity of the industries or area covered by the Plan.

(ii)    A Pensioner shall notify the Trustees in writing, within fifteen days after starting any work, without regard to the number of hours of such work (that is, whether or not less than 49 hours in a month).  A Pensioner may also request a determination in advance of starting any work whether such work will be Disqualifying Employment.  The Pensioner shall be required to describe such work in sufficient detail for the Trustees to determine whether the employment

61

is Disqualifying Employment.  The Trustees shall provide the Pensioner with its determination within a reasonable period of time.

If a Pensioner has worked in Disqualifying Employment in any month and has failed to give notice to the Trustees of such employment, the Trustees shall presume that he worked at least 49 hours in such month and any subsequent month before the Participant gives notice that he has ceased such Disqualifying Employment.   The Participant shall have the right to overcome such presumption by establishing to the satisfaction of the Trustees that his employment was not in fact an appropriate basis for suspension of his benefits under the Plan.  The Trustees shall inform all Pensioners at least once every 12 months of the re-employment notice requirements and the presumptions set forth in this paragraph (d)(ii).

(iii)  A Pensioner whose pension has been suspended shall notify the Trustees when Disqualifying Employment has ended.  The Trustees shall have the right to withhold benefit payments until such notice is filed with the Trustees and proof satisfactory to the Trustees is furnished that employment has ended.  Further, in the administration of these rules concerning suspension of benefits, the Trustees may require the Pensioner to furnish evidence from the Social Security Administration concerning his employment history during a specific period of time.

(iv)  The Trustees shall inform a Pensioner of any suspension of his benefit by notice given by personal delivery or first class mail before or during the first calendar month in which his benefits are withheld.  The Trustees shall be entitled to rely on the last known address furnished to the Trustees by the Pensioner.

(v)  With regard to a Participant who is eligible for a Special Service Pension who continues in Disqualifying Employment after his Normal Retirement Age, the benefit payable for a calendar month under the Special Service Pension will not be actuarially increased to reflect the missed payments that could have been paid had the Participant retired.  The Trustees shall provide the Participant with a written suspension of benefit notice as required by DOL Regulation 2530-203-3(b)(4) no later than the end of the first calendar month in which the payment of benefits would have commenced if the Participant had not remained in Disqualifying Employment.

(e)  **Review**

A Participant shall be entitled to a review of a determination suspending his benefits by written request filed with the Trustees within 180 days of the notice of suspension together with a written statement of facts and arguments and relevant documents in support of such claim.  The same right of review shall apply, under the same terms, to a determination by or on behalf of the Trustees that contemplated employment will be disqualifying.

(f)  **Waiver of Suspension**

The Trustees may, upon their own motion or on request of a Participant, waive suspension of benefits subject to such limitations as the Trustees may determine, including any limitations based on the Participant's previous record of benefit suspensions or noncompliance with reporting requirements under this Article XI.

62

(g)   **Resumption of Benefit Payments**

(i)   The resumption of benefit payments for months after the last month for which benefits were suspended shall begin no later than the third month after the last calendar month for which the Pensioners benefit was suspended provided the Pensioner has complied with the notification requirements of paragraph (d)(iii) above.

(ii)   Overpayments attributable to payments made for any months for which a Pensioner was employed in Disqualifying Employment prior to Normal Retirement Age shall be recouped from pension payments otherwise payable subsequent to the period of suspension up to 100 per cent of the pension payments until the overpayments are recovered.  With respect to recovery from monthly payments for months in which the Pensioner worked in Disqualifying Employment after Normal Retirement Age, the recovery shall not exceed 25 per cent of the monthly pension amount otherwise payable before deduction except that the Trustees may withhold up to 100 per cent of the first such monthly pension payment made upon resumption after a suspension.  If a Pensioner dies before recovery of overpayment has been completed, deductions shall be made from the benefits payable to the Beneficiary or Spouse receiving a pension, subject to the 25 per cent limitation with respect to overpayments following Disqualifying Employment.

**11.02    BENEFIT PAYMENTS FOLLOWING SUSPENSION**

(a)   The monthly amount of pension when resumed after suspension shall be determined under either paragraphs (b) or (c) below, subject to the nature of his employment requiring such suspension. Nothing in this Section 11.02 shall be understood to extend any benefit increase or adjustment effective after the Participant's initial retirement to the amount of pension upon resumption of payment, except to the extent that it may be expressly directed by other provisions of the Plan.

(b)   **Pensioner Returns to Covered Employment**

For a Pensioner who returns to Covered Employment, his monthly amount of pension will be recomputed upon subsequent termination of employment to reflect any additional Pension Credit earned and adjusted for pension benefits previously received. The Pensioner's adjusted monthly amount of pension is equal to the largest amount determined under paragraphs (i), (ii) and (iii) below. In no event, however, will his adjusted monthly amount of pension be smaller than the monthly amount of pension he received immediately preceding to his return to Covered Employment.

(i)   His pension benefit upon his re-retirement shall be determined as if it were then being determined for the first time including any additional amounts earned under this Section 11.02(b) and adjusted to reflect any survivor's pension or other optional form of benefit elected at his original retirement date. Then, such amount shall be offset by the value of payments previously received, prior to the time such Participant engaged in Disqualifying Employment, as set forth in Table 7.

(ii)   If the Pensioner earns Pension Credit, he shall be entitled to resume his prior pension amount and commence any additional pension, which he may have earned through his additional service.   Such additional benefit shall be

63

determined without recognizing his prior years of Pension Credit, but, in total, no more than the maximum years of recognized Pension Credit under Section 6.02 shall be recognized under this Section 11.02.

(iii) If the Pensioner earns five additional years of Pension Credit, he shall be entitled to a recomputation of his suspended amount to reflect any changes in the level of benefits to which he would be entitled if his service before and after his initial retirement were considered not to have been interrupted by retirement. This amount will be offset by the sum of all pension payments previously received, without accumulated interest, divided by the pension conversion factor shown in Table 7, Part 3 based on his age at re-retirement.

(iv) A Pensioner who was not eligible for a Special Service Pension described in Section 6.10 as of his original Effective Date and who earns additional Pension Credit during his benefit suspension, may become eligible for a Special Service Pension if he earns at least five years of Pension Credit subsequent to his original Effective Date, subject to the provisions of Section 6.10.

(v) A Pensioner who was eligible for a Special Service Pension described in Section 6.10 as of his original Effective Date and who earns additional Pension Credit during his benefit suspension, may become eligible for improvements to the Special Service Pensions adopted subsequent to his original Effective Date, if he earns at least five years of Pension Credit subsequent to his original Effective Date, subject to the provisions of Section 6.10.

(c) **Pensioner Does Not Return to Covered Employment**

If a Pensioner engages in Disqualifying Employment without returning to Covered Employment, his pension benefit following his period of Disqualifying Employment will resume in the same amount and in the same form as paid prior to his period of Disqualifying Employment.

(d) **Optional Forms of Payment and Suspended Benefits**

A Husband and Wife Pension in effect immediately prior to suspension of benefits and any other optional benefit following the death of the Pensioner shall remain effective if the Pensioner's death occurs while his benefits are in suspension. If a Pensioner has returned to Covered Employment, he shall not be entitled to change any election as to Husband and Wife Pension or any optional form of pension unless after that return he has sufficient service in Covered Employment to earn at least two consecutive Years of Vesting Service.

# ARTICLE XII

# MISCELLANEOUS

**SECTION**

## 12.01   NON-REVERSION

It is expressly understood that in no event shall any of the corpus or assets of the Pension Fund revert to the Employers or Local Unions or be subject to any claims of any kind or nature by the Employers or Local Unions, except for the return within the time limits prescribed by law and at the discretion of the Trustees of an erroneous contribution made in good faith.

## 12.02   LIMITATION OF LIABILITY

This Pension Plan has been established on the basis of an actuarial calculation which has established, to the extent possible, that the contributions will, if continued, be sufficient to maintain the Plan on a permanent basis, fulfilling the funding requirements of ERISA as amended.  Except for liabilities which may result from provisions of ERISA, nothing in this Plan shall be construed to impose any obligation to contribute beyond the obligation of the Employer to make contributions as provided in its collective bargaining with the Union, except as described an Article XV.

There shall be no liability upon the Trustees individually, or collectively, or upon the Union to provide the benefits established by this Pension Plan, if the Pension Fund does not have assets to make such payments.

## 12.03   TERMINATION OF THE PLAN

(a)   **Right to Terminate**

The Trustees shall have the right to discontinue or terminate this Plan in whole or in part, subject to the provisions of ERISA as amended by the Multiemployer Pension Plan Amendments Act of 1980.  The rights of all affected Participants to benefits accrued to the date of termination, partial termination, or discontinuance to the extent funded as of such date shall be nonforfeitable.

(b)   **Priorities of Allocation**

In the event of termination, the assets then remaining in the Plan after providing for any administrative expenses, shall be allocated among the Pensioners, Beneficiaries, and Participants in the following order:

(i)   First, in the case of benefits payable as a pension:

(A)   In the case of the pension of a Participant or Beneficiary which was in pay status as of the beginning of the three year period ending on the termination date of the Plan, to each such pension, based on the provisions of the Plan (as in effect during the five year period ending on

65

such date) under which such pension would be least. The lowest pension in pay status during the three year period shall be considered the pension in pay status for such period.

(B)    In the case of the pension of a Participant or Beneficiary which would have been in pay status as of the beginning of such three year period, if the Participant had retired prior to the beginning of the three year period and if his pension has commenced (in the standard form) as of the beginning of such period, to each such pension based on the provisions of the Plan (as in effect during the five year period ending on such date) under which the pension would be the least.

(ii)    Second, to all other benefits (if any) of the individuals under the Plan guaranteed under Title IV of ERISA.

(iii)    Third, to all other vested benefits under this Plan.

(iv)    Fourth, to all other benefits under this Plan.

(c)    **Allocation Procedure**

For purposes of paragraph (b) above:

(i)    The amount allocated under paragraphs (b)(i), (b)(ii), (b)(iii) or (b)(iv) above with respect to any benefit shall be properly adjusted for any allocation of assets with respect to that benefit under a prior paragraph of that paragraph (b).

(ii)    If the assets available for allocation under paragraphs (b)(i) or (b)(ii) are insufficient to satisfy in full the benefits of all individuals which are described in that paragraph (c), the assets shall be allocated *pro rata* among such individuals on the basis of the present value (as of termination date) of their respective benefits described in such paragraph.

(iii)    This paragraph (iii) applies if the assets available for allocation under paragraph (b)(iii) are not sufficient to satisfy in full the benefits of individuals described in that paragraph.

(A)    If this paragraph (A) applies except as provided in paragraph (B) below, the assets shall be allocated to the benefits of individuals described in paragraph (b)(iii) above on the basis of the benefits of individuals which would have been described in such paragraph (b)(iii) above under the Plan as in effect at the beginning of the five year period ending on the date of Plan termination.

(B)    If the assets available for allocation under paragraph (A) above are sufficient to satisfy in full the benefits described in such paragraph (without regard to this paragraph (c)(iii)), then for purposes of paragraph (A) above, benefits of individuals described in such paragraph shall be determined on the basis of the Plan as amended by the most recent Plan amendment effective during such five year period under which the assets available for allocation are sufficient to satisfy in full the benefits of individuals described in paragraph (A) on the basis of the Plan as amended by the next succeeding Plan amendment effective during such period.

The provisions of this Section 12.03 are intended to comply with the requirements of ERISA and regulations promulgated thereunder. Should ERISA, as amended, or such regulations

require any different allocation of assets, the required allocation shall apply in lieu of this Section 12.03. ·

**12.04   SAVING CLAUSE**

If any court or any agency of the United States Government having jurisdiction over this Pension Plan shall determine that any provision of this Pension Plan is unlawful or adversely affects the tax exempt status of the Fund as a qualified pension plan, then such provision shall be suspended and the Trustees shall, if possible, provide an appropriate substitute thereof.

**12.05   MERGER**

This Plan may be merged and/or consolidated with another pension plan, but only if each Participant in the Plan is entitled to an Accrued Benefit immediately following such merger and/or consolidation which is at least equal to the Accrued Benefit of such Participant immediately before such merger and/or consolidation.

**12.06   MISSING PARTICIPANTS**

Upon termination of the Plan, benefits of missing participants shall be treated in accordance with Section 4050 of ERISA.

**12.07   BENEFITS   PAYABLE   ONLY   TO   PARTICIPANT,   QUALIFIED   SPOUSE, BENEFICIARY OR ALTERNATE PAYEE**

All benefits under the Plan shall be payable only to the eligible Participant, Qualified Spouse or other Beneficiary as the case may be. No payment shall be made to a "living trust" established by the Participant, Qualified Spouse, Alternate Payee or other Beneficiary. All wire transfers shall only be made to an account in the name of the Participant, Qualified Spouse or other Beneficiary, as the case may be.

# ARTICLE XIII

# PARTIAL PENSIONS UNDER RECIPROCAL AGREEMENT

**SECTION**

**13.01 PURPOSE**

Partial pensions are provided under this Plan for Employees who would otherwise lack sufficient years of Pension Credit to be eligible or any pension because their years of employment were divided between different pension plans or if eligible, whose pensions would be less than the full amount because of such division of employment.

**13.02 RELATED PLANS**

By resolution duly adopted, the Trustees recognize one or more other pension plans which have executed a Reciprocal Agreement to which this Plan is a party, as a "Related Plan".

**13.03 RELATED PENSION CREDIT**

Years of Pension Credit accumulated and maintained by an Employee under a Related Plan shall be recognized under this Plan as "Related Pension Credit". The Trustees shall compute Related Pension Credit on the basis on which that credit has been earned and granted under the Related Plan and certified by the Related Plan to this Plan.

**13.04 COMBINED PENSION CREDIT**

The total of an Employee's years of Pension Credit under this Plan and Related Pension Credit comprise the Employee's years of Combined Pension Credit. Not more than one year of Combined Pension Credit shall be counted in any Calendar Year unless the Participant has Hours of Service in the movie or pipeline industries.

**13.05 PARTIAL PENSION ELIGIBILITY**

An Employee shall be eligible for a Partial Pension under this Plan if he satisfies all of the following requirements:

(a) The Employee must be a Participant Actively Engaged in Covered Employment in this Plan or in a Related Plan on or after January 1, 1996;

(b) He would be eligible for any type of pension if his years of Combined Pension Credit were treated as years of Vesting Service and/or of Contributory Credit;

(c) In addition to any other requirements necessary to be eligible under paragraph (a) above, he has, under this Plan, a minimum of 12 months Contributory Credit;

(d)   He is found to be (i) eligible for a Partial Pension from a Related Plan and (ii) eligible for a Partial Pension from the Terminal Plan. The Terminal Plan shall be deemed to be the Plan associated with the Local Union which represents the Employee at the time of, or immediately prior to, his retirement. If at that time the Employee was not represented by any one such Local Union, then the Terminal Plan is the one to which the majority of contribution hours were made on behalf of the Employee in the 6 consecutive calendar months immediately preceding his retirement; and

(e)   A pension is not payable to him from a Related Plan independently of its provisions for a Partial Pension.

An Employee who is entitled to a pension other than a Partial Pension from this Plan or a Related Plan may elect to waive the other pension and qualify for the Partial Pension.

## 13.06   ELECTION OF PENSION

If an Employee is eligible for more than one type of pension or option under this Plan, he shall be entitled to elect the type of pension or option he is to receive.

## 13.07   PARTIAL PENSION AMOUNT

The amount of the Partial Pension shall be determined as follows:

(a)   The amount of the Pension to which the Employee would be entitled under this Plan taking into account his Combined Pension Credit shall be determined; then

(b)   His years of Pension Credit earned with this Plan since January 1, 1955, shall be divided by the total amount of Combined Pension Credit earned by the Employee since January 1, 1955; then

(c)   The fraction so determined in paragraph (b) shall be multiplied by the pension amount determined in paragraph (a) and the result shall be the Partial Pension amount payable by this Plan.

## 13.08   PAYMENT OF PARTIAL PENSIONS

The Payment of a Partial Pension shall be subject to all the conditions contained in the Plan applicable to other types of pensions including, but not limited to, retirement as herein defined and timely application. Partial Pension payments subject to this Article XIII shall be limited to monthly pension payments to a Pensioner or to monthly payments or death benefits to the survivor of a Pensioner.

## 13.09   EFFECTIVE DATE

This Article XIII and the payment of Partial Pensions hereunder, shall be effective on April 20, 1965.

## 13.10   TERMINATION OF PARTIAL PENSION

The Trustees may terminate this Partial Pension upon giving ninety days' notice to Participants and to all other plans of its intentions to do so.

# ARTICLE XIV

# AMENDMENTS

**SECTION**

**14.01   AMENDMENT**

This Plan may be amended at any time by a vote of the Board of Trustees, consistent with the provisions of the Trust Agreement. No amendment may decrease the Accrued Benefit of any Participant, except:

(a)   as necessary to establish or maintain the qualification of the Plan or the Trust Fund under the Code and to maintain compliance of the Plan with the requirements of ERISA, or

(b)   if the amendment meets the requirements of 301(c)(8) of ERISA and 412(c)(8) of the Code, and the Secretary of Labor has been notified of such amendment and has either approved of it or, within 90 days after the date on which such notice was filed, failed to disapprove.

# ARTICLE XV

# EMPLOYER WITHDRAWAL LIABILITY

**SECTION**

**15.01   PREAMBLE**

This Article XV sets forth and describes the rules and regulations applicable to Employer Withdrawal Liability pursuant to and in addition to those set forth in ERISA. The term "Employer" as used herein shall be defined as in ERISA and governing law, and trades and businesses under common control shall constitute a single Employer as provided under ERISA Section 4001(b).

**15.02   CALCULATION OF WITHDRAWAL LIABILITY**

The amount of the unfunded vested benefits allocable to an Employer who withdraws from the Plan shall be the product of (a) and (b) described below:

(a)   An amount equal to:

 (i)   the unfunded vested benefits of the Plan as of the end of the Plan Year preceding the Plan Year in which the Employer withdraws, plus

 (ii)   the value as of such date of all outstanding claims for withdrawal liability which can reasonably be expected to be collected.

(b)   A fraction:

 (i)   the numerator of which is the total amount required to be contributed under the Plan by the Employer for the last 10 Plan Years ending before the date on which the Employer withdraws; and

 (ii)   the denominator of which is the total amount contributed under the Plan by all Employers for the last 10 Plan Years ending before the date on which the Employer withdraws, increased by the amount of Employer Contributions owed with respect to earlier periods which were collected in those Plan Years, and decreased by any amount contributed by an Employer who withdrew from the Plan during those Plan Years.

**15.03   SPECIAL RULES WITH RESPECT TO EMPLOYER CONTRIBUTIONS**

For purposes of determining the fraction defined in Section 15.02(b), the amount of Employer Contributions made or contributed with respect to a Plan Year shall be the amount of Employer Contributions accrued in the Plan Year if received within one and one-half months after the end of the Plan Year plus any contributions received in that period that accrued earlier but were not included as contributions with respect to any earlier Plan Years.

71

**15.04   PAYMENT OF WITHDRAWAL LIABILITY**

(a)   The amount of payment shall be calculated as follows:

(i)   Except as provided in paragraph (ii) below, and in paragraphs (c) and (d) below, the Employer shall pay the amount determined under Section 15.02 appropriately adjusted for partial withdrawal and *de minimis* reductions of $50,000 or less as provided in ERISA Sections 4206 and 4209(a), over the period of years required to amortize the amount in level annual payments determined under paragraph (iii) below, calculated as if the first payment were made on the first day of the Plan Year following the Plan Year in which the withdrawal occurs and as if each subsequent payment were made on the first day of each subsequent Plan Year. Such amortization period shall be determined based on actuarial assumptions used in the most recent actuarial valuation of the Plan completed under ERISA Section 4213.

(ii)   If the amortization period described in paragraph (i) above exceeds 20 years, the liability of the Employer shall be limited to the first 20 annual payments determined in paragraph (iii) below.

(iii)   Except as provided in paragraph (v) below, the amount of each annual payment shall be the product of:

(A)   the average number of hours of contributions for the three consecutive Plan Years during the 10 consecutive Plan Years ending before the date of withdrawal in which the Employer had an obligation to contribute to the Plan for the greatest number of hours of contributions: and

(B)   the highest Contribution Rate at which the employer had an obligation to contribute to the Plan during the 10 Plan Years ending with the Plan Year in which the withdrawal occurs.

(vi)   In the event of a withdrawal of all or substantially all Employers which contribute to the Plan (as described in Section 4219(c)(1)(D) of ERISA), paragraph (ii) above shall not apply, and total unfunded vested benefits shall be allocated among all such Employers according to the regulations established by the Pension Benefit Guaranty Corporation (the "PBGC").

(vii)   As described in Section 4219(c)(1)(E) of ERISA, the amount of annual payment may be adjusted in the event of a partial withdrawal.

(b)   Withdrawal liability shall be payable monthly, according to the schedule determined by the Trustees. Payments of withdrawal liability shall commence no later than 60 days after demand is made therefor by the Trustees.

(c)   An employer shall be entitled to prepay his withdrawal liability and accrued interest without penalty.

(d)   Nonpayment by an Employer of any amounts due shall not relieve any other Employer from his obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on the amounts due to the Fund from the date when the payment was due to the date when the payment is made. The interest payable by an Employer, in accordance with the preceding

72

sentence, shall be computed and charged to the Employer at the rate prescribed under Section 6621 of the Code compounded as described in Section 6622 of the Code. Any judgment against an Employer entered on and after September 26, 1980, for withdrawal liability payments owed to the Fund shall include by mandate of the court such additional amounts as may be permitted by law as if the action were for nonpayment of contributions as described in the Trust Agreement.

(e)   In the event of a default, the outstanding amount of the withdrawal liability shall immediately become due and payable. A default occurs if:

(i)    the Employer fails to make, when due, any payments of withdrawal liability, if such failure is not cured within 60 days after such Employer receives written notification from the Fund of such failure; or

(ii)   the Trustees deem the Fund insecure as a result of any of the following events with respect to the Employer:

(A)   the Employer's insolvency, or any assignment by the Employer for the benefit of creditors, or the Employer's calling of a meeting of creditors for the purpose of offering a composition or extension to such creditors, or the Employer's appointment of a committee of creditors or liquidating agent, or the Employer's offer of a composition or extension to creditors.

(B)   The Employer's failure or liability to pay its debts as they become due.

(C)   The commencement of any proceedings by or against the Employer (with or without the Employer's consent) pursuant to any bankruptcy or insolvency laws or any laws relating to the relief of debtors, or the readjustment, composition, or extension of indebtedness, or to the liquidation, receivership, dissolution, or reorganization of debtors.

(D)   The withdrawal, revocation, or suspension, by any governmental or judicial entity or by any national securities exchange or association, of any charter, license, authorization, or registration required by the Employer in the conduct of its business.

(E)   Any other event or circumstance which in the judgement of the Trustees materially impairs the Employer's creditworthiness or the Employer's ability to pay its withdrawal liability when due.

## 15.05   RESOLUTION OF DISPUTES

Any dispute concerning whether a complete or partial withdrawal has occurred, the amount and/or payment of any withdrawal liability or any other matter pertaining to ERISA Sections 4201 through 4219 and ERISA Section 4225 shall be resolved in accordance with ERISA Sections 4219 and 4221.

Arbitration of all withdrawal liability disputes shall proceed in accordance with the Multiemployer Pension Plan Arbitration Rules for Withdrawal Liability Disputes of the American Arbitration Association ("AAA Rules"), except as otherwise provided herein.

(a) **Manner of Initiation**

Arbitration shall be initiated in accordance with the AAA Rules, with written notice to the Boston Regional Office of the American Arbitration Association ("AAA") and copies to the Plan, or, if initiated by the Plan, to the Employer, and the bargaining representative, if any, of the affected Employees of the Employer. The initial filing fee is to be paid by the party initiating the arbitration proceeding. Arbitration is timely initiated, if received by the AAA along with the initial filing fee within the time period prescribed in ERISA Section 4221(a)(1).

(b) **Venue**

Arbitration of all withdrawal liability disputes shall be conducted in Boston, Massachusetts.

(c) **Statement of Issues**

The Employer shall file with the AAA and serve upon the Plan at the same time it initiates arbitration a Statement of Issues. Each Statement of Issues shall contain:

(i) a complete and detailed list of the issues the Employer intends to submit to arbitration;

(ii) a statement of the factual and legal contentions of the party with respect to each of the issues before the arbitrator; and

(iii) a statement of relief sought by the party.

The employer shall not include in its Statement of Issues any issue not initially raised in its request for review under ERISA Section 4219(b)(2)(A), and the arbitrator shall have no authority to allow the submission of additional issues.

## 15.06   CONSTRUCTION INDUSTRY EXEMPTION

(a) Notwithstanding ERISA Section 4203(a), if an Employer has no obligation to contribute to the Fund for work performed in the building and construction industry, and if substantially all the employees with respect to whom the employer has an obligation to contribute under the Plan perform work in the building and construction industry, a complete withdrawal occurs only as described in paragraph (b) below.

(b) A complete withdrawal occurs under this Section 15.06 only if:

(i) an Employer ceases to have an obligation to contribute under the Plan, and

(ii) the Employer:

(A) continues to perform work in the jurisdiction of the Collective Bargaining Agreement of the type for which contributions were previously required, or

(B) resumes such work within five years after the date on which the obligation to contribute under the Plan ceases and does not renew the obligation to contribute at the time of the resumption.

(c)   An Employer as defined in paragraph (a) above is liable for a partial withdrawal only if the Employer's obligation to contribute under the Plan is continued for no more than an insubstantial portion of its work in the craft and area jurisdiction of the Collective Bargaining Agreement of the type for which contributions are required as more fully described in ERISA Section 4208.

(d)   This exemption provision shall be effective March 1, 1992.

**15.07    FREE LOOK RULE**

Pursuant to ERISA Section 4210, withdrawal liability shall not be assessed against a new Employer if such new Employer:

(a)   first had an obligation to contribute to the Plan after September 26, 1980;

(b)   had been obligated to contribute to the Plan:

     (i)    for less than six consecutive Plan Years preceding the date of its withdrawal, if the withdrawal occurred prior to October 1, 1990, or

     (ii)   for less than five consecutive Plan Years preceding the date of its withdrawal if the withdrawal occurred on or after October 1, 1990;

(c)   had been required to make contributions for each such Plan Year in an amount which is less 2% of the sum of all Employer Contributions reported on the Form 5500 filed by the Plan for each such Plan Year; and

(d)   has never avoided withdrawal liability because of the application of this Section 15.07.

This Free Look Rule shall apply to an Employer only if the ratio of the assets of the Fund for the Plan Year preceding the first Plan Year for which the Employer was required to contribute to the Fund to the benefit payments made during that Plan Year was at least eight to one.

**IN WITNESS WHEREOF,** the undersigned duly appointed Trustees do cause this Pension Plan to be approved and executed this _____ day of _____, 2002.

**UNION TRUSTEES**                                    **EMPLOYER TRUSTEES**

_____                  _____
David W. Laughton, Co-Chairman                   J. Leo Barry, Co-Chairman


_____                  _____
George W. Cashman                                John J. McCarthy, Jr.


_____                  _____
Paul V. Walsh                                    William M. Vaughn, III


_____                  _____
                                                 J. Dawson Cunningham

76

# APPENDIX A

# DETERMINATION OF TYPE OF
# COLLECTIVE BARGAINING AGREEMENT

## A.1.01   GENERAL

Because the Plan provides benefits for employees of many Contributing Employers and at broadly varying Contribution Rates, and because Participants may work under many types of Collective Bargaining Agreements during their careers, the following rules shall be used to determine the "type of Collective Bargaining Agreement" upon which the Participant's benefit shall be based.  The type of Collective Bargaining Agreement designation is used in various provisions of the Plan to distinguish the amount of, or eligibility for, the various benefits offered by the Plan.  The applicable type of Collective Bargaining Agreement upon which a Participant's benefits will be based shall be determined as follows:

(a)   As of the benefit determination date, the record of employment for the Participant shall be examined for (i) the five Calendar Years immediately preceding the Calendar Year for which contributions were last payable to the Pension Fund on his behalf, or (ii) if the Participant earned Pension Credit during the last Calendar Year for which contributions were payable on his behalf, for the five Calendar Years ending with the last Calendar Year, whichever would produce the better result.

(b)   The contracts of Contributing Employers obligated to contribute for the Participant in such five year period shall be classified by the Trustees according to their type of Collective Bargaining Agreement - that is, based on the level of benefits appropriate to the contribution payable by each such Contributing Employer as of the date contributions were last payable to the Pension Fund on the Participant's behalf, and such other features as the Trustees may define.

(c)   If one Collective Bargaining Agreement applied for a majority of the time actually worked during this five year period, the Participant's benefits shall be based on this majority type of Collective Bargaining Agreement and on the benefit levels under that type of Collective Bargaining Agreement as of the date contributions under that type of Collective Bargaining Agreement were last made on his behalf.

(d)   If no Collective Bargaining Agreement applied for a majority of the time actually worked during this five year period, the Participant's benefits shall be based on the type of Collective Bargaining Agreement which applied for a plurality of the time actually worked during this five year period, and upon the benefit levels under that type of Collective Bargaining Agreement were last made on his behalf.

(e)   Notwithstanding any other requirement, in determining the benefit under the Participant's type of Collective Bargaining Agreement, the Participant must have earned at lest four months of Contributory Credit at the Contribution Rate applicable to that type of Collective Bargaining Agreement.

(f)  Once a Participant has achieved Vested Status, additional subsequent Covered Employment under a type of Collective Bargaining Agreement which provides for smaller Contribution Rates shall not result in the reduction in the dollar amount of Accrued Benefit earned through the date employment commenced under the type of Collective Bargaining Agreement providing the reduced benefit.  Additional Accrued Benefit shall be granted for such subsequent Covered Employment at the benefit levels applicable to that Covered Employment, subject to the limitation on the maximum years of recognized Pension Credit.

## A.1.02   ADDITIONAL CONTINUITY OF SERVICE REQUIREMENT

If a Participant did not earn at least 18 months of Pension Credit in the 36 calendar months immediately prior to the month in which his pension is to become effective, his benefit amount and/or rights may not exceed such amounts and/or rights applicable to the type of Collective Bargaining Agreement in effect in the most recent period of 36 calendar months during which the Participant earned at least 18 months of Pension Credit.

# APPENDIX B

# PROVISIONS FOR CERTAIN GROUPS OF PARTICIPANTS

This Appendix B contains provisions that are applicable only to a limited group of Participants, or which cover the special provisions applicable to participants in other pension plans that merge into this Plan.

## B.1.01   ALTERNATIVE DEFINITION OF VESTED STATUS

(a)   An Employee who:

(i)   became a Participant prior to October 1, 1990,

(ii)   has one Hour of Service after September 30, 1989, and

(iii)   is not working under a Collective Bargaining Agreement,

shall attain Vested Status under this Alternative Definition after accumulating three Years of Vested Service, if he does not attain Vested Service under Section 5.01(b). Participants eligible to have their Vested Status calculated under this Appendix B.1.01 shall be able to improve their Vested Percentage above that earned as of October 1, 1990 only if they had been employed by a Contributing Employer for three years prior to that date.

(b)   If Vested Status is attained under this Alternative Definition, any benefit payable to the Participant, Surviving Spouse, Beneficiary, or Alternate Payee shall be multiplied by the Vesting Percentage shown below associated with the Participants' Years of Vesting Service.

| Years of Vesting Service | Vesting Percentage |
|---|---|
| Less than 3 | 0% |
| 3 | 20% |
| 4 | 40% |
| 5 | 60% |
| 6 | 80% |
| 7 or more | 100% |

## B.1.02   MERGERS

(a)   **Mergers Effective January 1, 1995**

Effective January 1, 1995, the Heavy Haulers Administrative Staff Pension Plan and the Construction Teamsters Administrative Staff Pension Plan shall merge into this Plan and the sponsoring employers of those plans shall become Contributing Employers under this Plan.

(i)   **Initial Rights**

79

As of January 1, 1995, the Accrued Benefit under this Plan of the participants who joined this Plan through the merger shall be their Accrued Benefit as of January 1, 1995 under their former plans, including the right to all optional forms of benefit under their former plans (including the right to a complete lump sum cash out of this Accrued Benefit). These Participants shall be credited with Vesting Service under this Plan equal to their Vesting Service under their prior Plan.

(ii)   **Benefits**

These Participants shall earn Contributory Credit and Contributory Service Accrual under this Plan for Covered Employment on and after January 1, 1995 according to this Plan's regular terms and conditions. For service with their employers prior to the merger date they shall be entitled to a benefit under this Plan which is the greater of:

(A)   their accrued benefit as of the date of merger, or

(B)   the Past Service benefit available to all new Contributing Employers according to the regular terms and conditions of this Plan, including the granting of such Past Service Credit at the rate of two years of Past Service Credit for each year of Contributory Credit until the Participant shall have earned the full amount of Past Service Credit to which he is entitled.

(iii)   **Years of Contributory Credit for Employment Prior to Participation in This Plan**

These Participants shall be granted Years of Contributory Credit in this Plan for their prior years of employment for the period of time it would have taken them to accumulate in this Plan a benefit equal to their accrued benefit as of the date of merger, had their employer always been a Contributing Employer in this Plan.

(iv)   **Guarantee Upon Plan Termination Within Five Years**

The Accrued Benefits of the Participants who joined the Plan at the merger were fully funded in their respective former plans immediately prior to the merger. If this Plan terminates within five years of the effective date of the merger, there shall be allocated to these Plan Participants at least sufficient assets to provide 100% of their Accrued Benefit as of the date of merger.

(b)   **Mergers Effective January 1, 2001**

Effective January 1, 2001, the Local 25 Retirement Plan shall merge into this Plan and the sponsoring employers of those plans shall become Contributing Employers under this Plan.

(i)   **Initial Rights**

As of December 31, 2000, the Accrued Benefit under this Plan of the participants who joined this Plan through the merger shall be their accrued benefit as of December 31, 2000 under the prior plan, including the right to all optional forms of benefit under their former plans. These Participants shall be credited with Vesting Service under this Plan equal to their Vesting Service under the prior Plan.

Effective January 1, 2001, the Accrued Benefit under this Plan of the Participants who joined the Plan through the merger shall be equal to:

(A) For active Participants on and after January 1, 2001, $61.80 times the years of Pension Credit earned under the prior Plan.

(B) For Pensioners, qualified Spouses and Beneficiaries receiving a monthly benefit as of January 1, 2001, 125% of their accrued benefit as of December 31, 2000 under the prior Plan.

(C) For inactive vested Participants neither receiving a monthly benefit nor working in Covered Employment as of January 1, 2001, $61.80 times the years of Pension Credit earned under the prior Plan.

(ii) **Benefits**

These Participants shall earn Contributory Credit and Contributory Service Accrual under this Plan for Covered Employment on and after January 1, 2001 according to this Plan's regular terms and conditions. Any Contributory Service Accruals earned after January 1, 2001 will be added to the January 1, 2001 Accrued Benefit described in paragraph (i) above, subject to the limitation on maximum years of Pension Credit.

(iii) **Years of Contributory Credit for Employment Prior to Participation in This Plan**

These Participants shall be granted Years of Contributory Credit in this Plan for their years Pension Credit earned in the prior Plan, as if their employer always been a Contributing Employer in this Plan.

(iv) **Guarantee Upon Plan Termination Within Five Years**

The Accrued Benefits of the Participants who joined the Plan at the merger were fully funded in the prior Plan immediately prior to the merger. If this Plan terminates within five years of the effective date of the merger, there shall be allocated to these Plan Participants at least sufficient assets to provide 100% of their Accrued Benefit as of the date of merger.

81

# APPENDIX C

# SPECIAL ONE-TIME BENEFIT ADJUSTMENTS

## C.1.01 COST OF LIVING ADJUSTMENTS

From time-to-time, the Trustees have granted cost-of-living adjustments for certain groups of Pensioners, Beneficiaries and Qualified Spouses. These adjustments are intended to be one-time benefit adjustments, not a permanent feature of the Plan. Any adjustment described below applies only to the monthly pension benefit. For a Pensioner in receipt of a Christmas Benefit described in paragraph C.1.02 below, such Christmas Benefit will not be adjusted due to the increases described in this paragraph C.1.01.

(a)  With respect to any Pensioner, Beneficiary or Qualified Spouse in receipt of benefit payments under the Plan on January 1, 1998 who began receiving benefits prior to 1980, the amount of monthly benefit such Pensioner, Beneficiary or Qualified Spouse was receiving immediately prior to January 1, 1998 shall be increased 1% for each year of retirement.

(b)  With respect to any Pensioner, Beneficiary or Qualified Spouse in receipt of benefit payments under the Plan on January 1, 1999 who began receiving benefits in the 1980 Calendar Year, the amount of monthly benefit such Pensioner, Beneficiary or Qualified Spouse was receiving immediately prior to January 1, 1999, increased by 19% (1% for each year of retirement).

(c)  With respect to any Pensioner, Beneficiary or Qualified Spouse in receipt of benefit payments under the Plan on January 1, 2000 who began receiving benefits in the 1981 Calendar Year, the amount of monthly benefit payable to any such person shall be equal to the amount of monthly benefit such Pensioner, Beneficiary or Qualified Spouse was receiving immediately prior to January 1, 2000, increased by 19% (1% for each year of retirement).

(d)  With respect to any Pensioner, Beneficiary or Qualified Spouse in receipt of benefit payments under the Plan on January 1, 2001 who began receiving benefits in the 1982 Calendar Year, the amount of monthly benefit payable to any such person shall be equal to the amount of monthly benefit such Pensioner, Beneficiary or Qualified Spouse was receiving immediately prior to January 1, 2001, increased by 19% (1% for each year of retirement).

(e)  With respect to any Pensioner, Beneficiary or Qualified Spouse in receipt of benefit payments under the Plan on January 1, 2002 who began receiving benefits in the 1983 Calendar Year, the amount of monthly benefit payable to any such person shall be equal to the amount of monthly benefit such Pensioner, Beneficiary or Qualified Spouse was receiving immediately prior to January 1, 2002, increased by 19% (1% for each year of retirement).

(f)  Alternate Payees are not entitled to any Special Benefit Adjustments as outlined above, unless specifically so ordered by a Court under a Qualified Domestic Relations Order.

## C.1.02 CHRISTMAS BENEFIT ADJUSTMENTS

With respect to any Pensioner who did not earn six months of Contributory Credit after 1990 and is in receipt of the Christmas Benefit described in Appendix C of the Rules & Regulations restated effective October 1, 1989 shall be entitled to the Christmas Benefit adjustments described below, subject to the eligibility requirements for such adjustments. The adjustments described below relate to the Christmas Benefit first paid in the December following the Pensioner's 12-month anniversary of his Effective Date.

(a)   Pensioners who retired before 1983 were paid a one-time benefit adjustment equal to 100% of the Christmas Benefit in December, 1996.

(b)   Pensioners who retired before 1984 were paid a one-time benefit adjustment equal to 100% of the Christmas Benefit in December, 1997.

(c)   Pensioners who retired before 1989 and after 1983 were paid a one-time benefit adjustment equal to 50% of the Christmas Benefit in December, 1997.

(d)   Pensioners who retired before 1985 were paid a one-time benefit adjustment equal to 100% of the Christmas Benefit in December, 1998.

(e)   Pensioners who retired before 1990 and after 1984 were paid a one-time benefit adjustment equal to 50% of the Christmas Benefit in December, 1998.

(f)   Pensioners who retired before 1986 were paid a one-time benefit adjustment equal to 100% of the Christmas Benefit in December, 1999.

(g)   Pensioners who retired before 1991 and after 1985 were paid a one-time benefit adjustment equal to 50% of the Christmas Benefit in December, 1999.

(h)   Pensioners who retired before 1987 were granted a permanent benefit adjustment equal to 100% of the Christmas Benefit first paid in December, 2000.

(i)   Pensioners who retired after 1986 and before 1992 were granted a permanent benefit adjustment equal to 50% of the Christmas Benefit first paid in December, 2000.

(j)   Pensioners described in paragraph (i) above are granted a permanent benefit adjustment equal to 50% of the Christmas Benefit first paid commencing in the December of the 15th Calendar Year of retirement or portion thereof.

(k)   Pensioners who retired after 1992 and who are entitled to a Christmas Benefit described above are granted a permanent benefit adjustment equal to 50% of the Christmas Benefit first paid commencing in the December of the 10th Calendar Year of retirement or portion thereof. An additional permanent benefit adjustment equal to 50% of the Christmas Benefit first paid commencing in the December of the 15th Calendar Year of retirement or portion thereof.

(l)   For Pensioners whose pension benefit was converted from a Disability Pension as described in Section 7.03(b)(ii) or 7.03(b)(iii) and who has been in receipt of a Christmas Benefit described in this Appendix C.1.02, may be eligible for an increased Christmas Benefit upon conversion. Any adjustments to the Christmas Benefit under this Appendix C.1.02 shall be made to the Christmas Benefit applicable to each December. The first payment year is the original Christmas Benefit payment year.

## TABLE 1A

## FRACTIONAL CONTRIBUTORY CREDIT

| Hours of Service in Calendar Year For Which Contributions To The Pension Fund Are Required | Months of Contributory Credit For Calendar Year |
|---|---|
| Less than 375 | 0 |
| 375 - 449 | 2 |
| 450 - 599 | 3 |
| 600 - 749 | 4 |
| 750 - 829 | 5 |
| 830 - 999 | 6 |
| 1,000 - 1,149 | 7 |
| 1,150 - 1,299 | 8 |
| 1,300 - 1,499 | 9 |
| 1,500 - 1,649 | 10 |
| 1,650 - 1,799 | 11 |
| 1,800 | 12 |
| In the period January 1, 1976 through December 31, 1979, Contributory Credit shall be granted as follows in lieu of the Contributory Credit set forth above. | |
| Less than 150 | 0 |
| 150 - 299 | 1 |
| 300 - 449 | 2 |
| 450 - 599 | 3 |
| 600 - 749 | 4 |
| 750 - 829 | 5 |
| 830 - 999 | 6 |
| 1,000 - 1,149 | 7 |
| 1,150 - 1,299 | 8 |
| 1,300 - 1,499 | 9 |
| 1,500 - 1,649 | 10 |
| 1,650 - 1,799 | 11 |
| 1,800 | 12 |

**Note:** For Hours of Service worked prior to October 1, 1979, Contributory Credit will accrue only for those Hours of Service for which contributions were paid to the Pension Fund.

**TABLE 1B**

**CONTRIBUTORY CREDIT FOR HOURS OF SERVICE
IN EXCESS OF 1,800**

| Hours of Service in Calendar Year For Which Contributions To The Pension Fund Are Required | Months of Contributory Credit For Calendar Year |
|---|---|
| 1,800 - 2,229 | 12 |
| 2,230 - 2,379 | 13 |
| 2,380 - 2,529 | 14 |
| 2,530 - 2,679 | 15 |
| 2,680 - 2,829 | 16 |
| 2,830 - 2,979 | 17 |
| 2,980 - 3,129 | 18 |
| 3,130 - 3,279 | 19 |
| 3,280 - 3,429 | 20 |
| 3,430 - 3,579 | 21 |
| 3,580 - 3,729 | 22 |
| 3,730 - 3,879 | 23 |
| 3,880 - 4,029 | 24 |
| 4,030 - 4,179 | 25 |
| 4,180 - 4,329 | 26 |
| 4,330 - 4,479 | 27 |
| 4,480 - 4,629 | 28 |
| 4,630 - 4,779 | 29 |
| 4,780 and above | 30 |

**Note:** The schedule above is effective January 1, 1998 solely for Hours of Service worked in the Movie or Pipeline Industry or on the Central Artery/Tunnel Project.

## TABLE 2A

## CONTRIBUTORY SERVICE ACCRUAL
## FOR EACH YEAR OF CONTRIBUTORY CREDIT

**(For Participants With 6 Months of Contributory Credit Earned On and After January 1, 1991)**

| Contributory Service Accrual for Contributory Pension Credit Through December 31, 1986 | | | |
|---|---|---|---|
| Pre-1987 Approved Contribution Rate | Monthly Contributory Service Accrual Payable at Age 64 for Each Year of Contributory Pension Credit | Monthly Contributory Service Accrual Payable at Age 64 for Each Year of Contributory Pension Credit | Monthly Contributory Service Accrual Payable at Age 64 for Each Year of Contributory Pension Credit |
| | Pensions Effective Before 8/1/1998 | Pensions Effective 8/1/1998 through 9/30/2000 | Pensions Effective On or After 10/1/2000 |
| $0.36 | $11.90* | $13.10* | $15.00 |
| 0.42 | 14.80* | 16.30* | 18.00 |
| 0.49 | 17.80* | 19.60* | 22.00 |
| 0.57 | 20.70* | 22.80* | 26.00 |
| 0.60 | 22.10 | 24.30 | 27.00 |
| 0.71 | 25.10 | 27.60 | 31.00 |
| 0.82 | 29.60 | 32.60 | 36.00 |
| 0.92 | 32.40 | 35.60 | 40.00 |
| 1.04 | 38.30 | 42.10 | 47.00 |
| 1.14 | 41.30 | 45.40 | 50.00 |
| 1.24 | 44.20 | 48.60 | 54.00 |
| 1.30 | 44.20 | 48.60 | 54.00 |
| 1.41 | 44.20 | 48.60 | 54.00 |
| 1.56 | 44.20 | 48.60 | 54.00 |
| 1.61-1.66-1.71 | 53.10 | 58.40 | 65.00 |

**Notes:** The Approved Hourly Contribution Rate is the highest rate from this Table 2A which is less than or equal to the actual hourly Contribution Rate made on the Participant's behalf.

A Collective Bargaining Agreement qualifies for the $1.61-$1.66-$1.71 Contribution Rate once contributions are first made at $1.61 per hour or more for a period scheduled to be 12 months or less and either (a) contributions for the next two 12 month periods will be made at least at $1.66 and $1.71 per hour or (b) contributions for the next 12 month period will be made at least at $1.71 per hour.

\* These monthly Contributory Service Accrual amounts also apply to Pension Credit earned after 1986 and prior to 1995 for contributions at hourly rates under $0.60

86

**TABLE 2B**

**CONTRIBUTORY SERVICE ACCRUAL
FOR EACH YEAR OF CONTRIBUTORY CREDIT**

**(For Participants With 6 Months of Contributory Credit Earned On and After January 1, 1991)**

| Contributory Service Accrual for Pension Credit Beginning January 1, 1987 | | Contributory Service Accrual for Pension Credit Beginning January 1, 1987 | |
|---|---|---|---|
| Approved Hourly Contribution Rate | Monthly Contributory Service Accrual Payable at Age 64 for Each Year of Pension Credit | Approved Hourly Contribution Rate | Monthly Contributory Service Accrual Payable at Age 64 for Each Year of Pension Credit |
| $   0.15* | $   6.00 | $2.46 | $162.30 |
| 0.20* | 8.00 | 2.51 | 166.70 |
| 0.25* | 11.25 | 2.56 | 171.20 |
| 0.30* | 15.00 | 2.61 | 171.20 |
| 0.35* | 17.50 | 2.66 | 171.20 |
| 0.40* | 20.00 | 2.71 | 173.00 |
| 0.45* | 22.50 | 2.76 | 174.80 |
| 0.50* | 25.00 | 2.81 | 176.60 |
| 0.55* | 27.50 | 2.86 | 178.40 |
| 0.60 | 31.00 | 2.91 | 180.20 |
| 0.71 | 35.10 | 2.96 | 182.00 |
| 0.82 | 41.30 | 3.01 | 183.80 |
| 0.92 | 45.40 | 3.06 | 185.60 |
| 1.04 | 53.70 | 3.11 | 187.40 |
| 1.14 | 57.80 | 3.16 | 189.20 |
| 1.24 | 61.80 | 3.21 | 191.00 |
| 1.30 | 65.60 | 3.26 | 192.80 |
| 1.41 | 73.60 | 3.31 | 194.60 |
| 1.56 | 84.60 | 3.36 | 196.40 |
| 1.61 | 88.40 | 3.41 | 198.20 |
| 1.66 | 92.10 | 3.46 | 200.00 |
| 1.71 | 95.70 | 3.51 | 202.00 |
| 1.76 | 100.15 | 3.56 | 204.00 |
| 1.81 | 104.60 | 3.61 | 206.00 |
| 1.86 | 109.00 | 3.66 | 208.00 |
| 1.91 | 113.40 | 3.71 | 210.00 |
| 1.96 | 117.90 | 3.76 | 212.00 |
| 2.01 | 122.30 | 3.81 | 214.00 |
| 2.06 | 126.80 | 3.86 | 216.00 |
| 2.11 | 131.20 | 3.91 | 218.00 |
| 2.16 | 135.60 | 3.96 | 220.00 |
| 2.21 | 140.10 | 4.01 | 222.00 |
| 2.26 | 144.50 | 4.06 | 224.00 |
| 2.31 | 149.00 | 4.11 | 226.00 |
| 2.36 | 153.40 | 4.16 | 228.00 |
| 2.41 | 157.80 | 4.21 | 230.00 |

**Notes:**   The approved Hourly Contribution Rate is the highest rate from this Table 2B which is less than or equal to the actual hourly Contribution Rate made on the Participant's behalf.

A collective Bargaining Agreement qualifies for the $1.61-$1.66-$1.71 Contribution Rate once contributions are first made at $1.61 per hour or more for a period scheduled to be 12 months or less and either (a) contributions for the next two 12 month periods will be made at least at $1.66 and $1.71 per hour or (b) contributions for the next 12 month period will be made at least at $1.71 per hour.

* Effective July 1, 1995.

## TABLE 3

## EARLY RETIREMENT REDUCTION PERCENTAGES

**(For Participants With 6 Months Of Contributory Credit Earned On And After January 1, 1991)**

| Age at Retirement | Early Retirement Pension | 30 Year Full Service Pension | Minimum 30 Year Service Pension | Early Statutory Pension | Early Disability Pension |
|---|---|---|---|---|---|
| 64 and older | 100% | 100% | 100.00% | 100% | 100% |
| 63 | 96% | 96% | 96.00% | 88% | 100% |
| 62 | 92% | 92% | 92.00% | 78% | 100% |
| 61 | 88% | 88% | 88.00% | 69% | 100% |
| 60 | 83% | 83% | 83.00% | 62% | 100% |
| 59 | 74% | 83% | 74.00% | 55% | 100% |
| 58 | 66% | 83% | 66.00% | 49% | 90% |
| 57 | 60% | 83% | 62.25% | 44% | 82% |
| 56 | 54% | 83% | 62.25% | 40% | 74% |
| 55 | 48% | 83% | 62.25% | 36% | 66% |
| 54 | 44% | 83% | 62.25% | 32% | 61% |
| 53 | 40% | 83% | 62.25% | 29% | 55% |
| 52 | 36% | 83% | 62.25% | 27% | 50% |
| 51 and younger | N/A | 83% | 62.25% | N/A | 50% |

88

## TABLE 4A
## MONTHLY SPECIAL SERVICE PENSIONS
### PLAN A SCHEDULE

#### Years of Contributory Credit

| Age | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 51 and under | N/A | N/A | N/A | N/A | N/A | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 |
| 52 | $ 720 | $ 720 | $ 720 | $ 720 | $ 720 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| 53 | 800 | 800 | 800 | 800 | 800 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| 54 | 885 | 885 | 885 | 885 | 885 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| 55 | 970 | 970 | 970 | 970 | 970 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| 56 | 1,085 | 1,085 | 1,085 | 1,085 | 1,085 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| 57 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| 58 | 1,340 | 1,340 | 1,340 | 1,340 | 1,340 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| 59 | 1,490 | 1,490 | 1,490 | 1,490 | 1,490 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| 60 | 1,675 | 1,675 | 1,675 | 1,675 | 1,675 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| 61 | 1,755 | 1,755 | 1,755 | 1,755 | 1,755 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 |
| 62 | 1,835 | 1,835 | 1,835 | 1,835 | 1,835 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 |
| 63 | 1,915 | 1,915 | 1,915 | 1,915 | 1,915 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 |
| 64 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 |
| 65 and over | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |

Notes: **Effective October 1, 1991**

Subject to the requirements of Section 6.10(a) through (e).

Generally, requires Contribution Rate sequence of $2.26 - $2.41 - $2.56

89

## TABLE 4A1
## MONTHLY SPECIAL SERVICE PENSIONS
### PLAN A1 SCHEDULE
#### Years of Contributory Credit

| Age | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 51 and under | N/A | N/A | N/A | N/A | N/A | $2,000 | $2,040 | $2,080 | $2,120 | $2,160 | $2,200 |
| 52 | $ 720 | $ 720 | $ 720 | $ 720 | $ 720 | 2,000 | 2,040 | 2,080 | 2,120 | 2,160 | 2,200 |
| 53 | 800 | 800 | 800 | 800 | 800 | 2,000 | 2,040 | 2,080 | 2,120 | 2,160 | 2,200 |
| 54 | 885 | 885 | 885 | 885 | 885 | 2,000 | 2,040 | 2,080 | 2,120 | 2,160 | 2,200 |
| 55 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 2,000 | 2,040 | 2,080 | 2,120 | 2,160 | 2,200 |
| 56 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 2,000 | 2,040 | 2,080 | 2,120 | 2,160 | 2,200 |
| 57 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 2,000 | 2,040 | 2,080 | 2,120 | 2,160 | 2,200 |
| 58 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 2,000 | 2,040 | 2,080 | 2,120 | 2,160 | 2,200 |
| 59 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 2,000 | 2,040 | 2,080 | 2,120 | 2,160 | 2,200 |
| 60 | 1,675 | 1,675 | 1,675 | 1,675 | 1,675 | 2,000 | 2,040 | 2,080 | 2,120 | 2,160 | 2,200 |
| 61 | 1,755 | 1,755 | 1,755 | 1,755 | 1,755 | 2,100 | 2,142 | 2,184 | 2,226 | 2,268 | 2,310 |
| 62 | 1,835 | 1,835 | 1,835 | 1,835 | 1,835 | 2,200 | 2,244 | 2,288 | 2,332 | 2,376 | 2,420 |
| 63 | 1,915 | 1,915 | 1,915 | 1,915 | 1,915 | 2,300 | 2,346 | 2,392 | 2,438 | 2,484 | 2,530 |
| 64 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,400 | 2,448 | 2,496 | 2,544 | 2,592 | 2,640 |
| 65 and over | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,500 | 2,548 | 2,596 | 2,644 | 2,692 | 2,740 |

**Notes: Effective October 1, 1995**

Subject to the requirements of Sections 6.10(a) through (d) and 6.10(f).

30 – 35 year Special Service Pension requires service at specified Contribution Rates after various effective dates.

Service after 30 years must be earned after 1993.

Additional requirements include:

    (1) eligibility for Plan A Special Service Benefits, and

    (2) Contribution Rate sequences increasing to $3.46.

## TABLE 4B
## MONTHLY SPECIAL SERVICE PENSIONS
### PLAN B SCHEDULE

#### Years of Contributory Credit

| Age | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 51 and under | N/A | N/A | N/A | N/A | N/A | $2,000 | $2,040 | $2,080 | $2,120 | $2,160 | $2,200 |
| 52 | $720 | $720 | $720 | $720 | $720 | 2,000 | 2,040 | 2,080 | 2,120 | 2,160 | 2,200 |
| 53 | 800 | 800 | 800 | 800 | 800 | 2,000 | 2,040 | 2,080 | 2,120 | 2,160 | 2,200 |
| 54 | 885 | 885 | 885 | 885 | 885 | 2,000 | 2,040 | 2,080 | 2,120 | 2,160 | 2,200 |
| 55 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,500 | 2,540 | 2,580 | 2,620 | 2,660 | 2,700 |
| 56 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,500 | 2,540 | 2,580 | 2,620 | 2,660 | 2,700 |
| 57 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,500 | 2,540 | 2,580 | 2,620 | 2,660 | 2,700 |
| 58 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,500 | 2,540 | 2,580 | 2,620 | 2,660 | 2,700 |
| 59 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,500 | 2,540 | 2,580 | 2,620 | 2,660 | 2,700 |
| 60 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,500 | 2,540 | 2,580 | 2,620 | 2,660 | 2,700 |
| 61 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,600 | 2,642 | 2,684 | 2,726 | 2,768 | 2,810 |
| 62 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,700 | 2,744 | 2,788 | 2,832 | 2,876 | 2,920 |
| 63 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,800 | 2,846 | 2,892 | 2,938 | 2,984 | 3,030 |
| 64 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,900 | 2,948 | 2,996 | 3,044 | 3,092 | 3,140 |
| 65 and over | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 3,000 | 3,048 | 3,096 | 3,144 | 3,192 | 3,240 |

Notes: Effective October 1, 1996

Subject to the requirements of Section 6.10(a) through (d) and 6.10(g).

30 – 35 year Special Service Pension requires service at specified Contribution Rates after various effective dates.

Service after 30 years must be earned after 1993.

Additional requirements include:

    (1) eligibility for Plan A1 Special Service Benefits,

    (2) one contributory hour at $3.46, and

    (3) satisfy the minimum 5-year Contributory Rate requirement set forth in Table 6.

91

## TABLE 4C - 1999

### MONTHLY SPECIAL SERVICE PENSIONS

### PLAN C SCHEDULE

*Effective For Retirement On And After October 1, 1999*

Years of Contributory Credit

| Age | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 59 and under | $2,000 | $2,150 | $2,300 | $2,450 | $2,600 | $3,000 | $3,150 | $3,300 | $3,450 | $3,600 | $3,750 | $3,900 | $4,050 | $4,200 | $4,200 | $4,200 |
| 60 | 2,500 | 2,650 | 2,800 | 2,950 | 3,100 | 3,250 | 3,400 | 3,550 | 3,700 | 3,850 | 4,000 | 4,150 | 4,200 | 4,200 | 4,200 | 4,200 |
| 61 | 2,600 | 2,750 | 2,900 | 3,050 | 3,200 | 3,350 | 3,500 | 3,650 | 3,800 | 3,950 | 4,100 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 |
| 62 | 2,700 | 2,850 | 3,000 | 3,150 | 3,300 | 3,450 | 3,600 | 3,750 | 3,900 | 4,050 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 |
| 63 | 2,800 | 2,950 | 3,100 | 3,250 | 3,400 | 3,550 | 3,700 | 3,850 | 4,000 | 4,150 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 |
| 64 | 2,900 | 3,050 | 3,200 | 3,350 | 3,500 | 3,650 | 3,800 | 3,950 | 4,100 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 |
| 65 and over | 3,000 | 3,150 | 3,300 | 3,450 | 3,600 | 3,750 | 3,900 | 4,050 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 |

**Requirements include:**

Subject to the requirements of Sections 6.10(a) through (d) and 6.10(h) or (i).

(1) eligibility for Plan A1 Special Service Benefits,

(2) working under a contract with a promise of $3.76,

(3) 320 contributory hours at $3.46 (or $3.41 if applicable), and

(4) satisfy the minimum 5-year Contribution Rate requirement set forth in Table 6.

92

# TABLE 4C – 1998

## MONTHLY SPECIAL SERVICE PENSIONS

### PLAN C SCHEDULE

*Effective For Retirement On And After April 1, 1998, And Before October 1, 1999*

| Age | Years of Contributory Credit | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 |
| 59 and under | $2,000 | $2,100 | $2,200 | $2,300 | $2,400 | $3,000 | $3,100 | $3,200 | $3,300 | $3,400 | $3,500 |
| 60 | 2,500 | 2,600 | 2,700 | 2,800 | 2,900 | 3,000 | 3,100 | 3,200 | 3,300 | 3,400 | 3,500 |
| 61 | 2,600 | 2,700 | 2,800 | 2,900 | 3,000 | 3,100 | 3,200 | 3,300 | 3,400 | 3,500 | 3,600 |
| 62 | 2,700 | 2,800 | 2,900 | 3,000 | 3,100 | 3,200 | 3,300 | 3,400 | 3,500 | 3,600 | 3,700 |
| 63 | 2,800 | 2,900 | 3,000 | 3,100 | 3,200 | 3,300 | 3,400 | 3,500 | 3,600 | 3,700 | 3,800 |
| 64 | 2,900 | 3,000 | 3,100 | 3,200 | 3,300 | 3,400 | 3,500 | 3,600 | 3,700 | 3,800 | 3,900 |
| 65 and over | 3,000 | 3,100 | 3,200 | 3,300 | 3,400 | 3,500 | 3,600 | 3,700 | 3,800 | 3,900 | 4,000 |

**Requirements include:**

Subject to the requirements of Sections 6.10(a) through (d) and 6.10(h) or (i).

(1) eligibility for Plan A1 Special Service Benefits,

(2) working under a contract with a promise of $3.76,

(3) 320 contributory hours at $3.46 (or $3.41 if applicable), and

(4) satisfy the minimum 5-year Contribution Rate requirement set forth in Table 6.

93

## TABLE 4C – 1997

## MONTHLY SPECIAL SERVICE PENSIONS

### PLAN C SCHEDULE

*Effective For Retirement On And After October 1, 1997 And Before April 1, 1998*

Years of Contributory Credit

| Age | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **59 and under** | $2,000 | $2,100 | $2,200 | $2,300 | $2,400 | $3,000 | $3,100 | $3,200 | $3,300 | $3,400 | $3,500 |
| **60** | 2,500 | 2,600 | 2,700 | 2,800 | 2,900 | 3,000 | 3,100 | 3,200 | 3,300 | 3,400 | 3,500 |
| **61** | 2,500 | 2,600 | 2,700 | 2,800 | 2,900 | 3,000 | 3,100 | 3,200 | 3,300 | 3,400 | 3,500 |
| **62** | 2,500 | 2,600 | 2,700 | 2,800 | 2,900 | 3,000 | 3,100 | 3,200 | 3,300 | 3,400 | 3,500 |
| **63** | 2,500 | 2,600 | 2,700 | 2,800 | 2,900 | 3,000 | 3,100 | 3,200 | 3,300 | 3,400 | 3,500 |
| **64** | 2,500 | 2,600 | 2,700 | 2,800 | 2,900 | 3,000 | 3,100 | 3,200 | 3,300 | 3,400 | 3,500 |
| **65 and over** | 2,500 | 2,600 | 2,700 | 2,800 | 2,900 | 3,000 | 3,100 | 3,200 | 3,300 | 3,400 | 3,500 |

**Requirements include:**

Subject to the requirements of Sections 6.10(a) through (d) and 6.10(h) or (i).

(1) eligibility for Plan A1 Special Service Benefits,

(2) working under a contract with a promise of $3.76,

(3) 320 contributory hours at $3.46 (or $3.41 if applicable), and

(4) satisfy the minimum 5-year Contribution Rate requirement set forth in Table 6.

94

**TABLE 5**

**HUSBAND AND WIFE PENSION PERCENTAGES**

| Husband and Wife Pension | | | |
|---|---|---|---|
| **Survivor Benefit Percentage** | **50%** | **75%** | **100%** |
| *Pension Reduction* | *15%* | *20%* | *25%* |
| | **Benefit Paid as Percent of Participant's Unreduced Annuity Amount** | | |
| **While Pensioner and Qualified Spouse Are Both Alive** | 85% | 80% | 75% |
| **To Pensioner Following Qualified Spouse's Death** | 85% | 80% | 75% |
| **To Qualified Spouse Following Pensioner's Death** | 42.5% | 60% | 75% |
| Husband and Wife Pension With "Pop-Up" | | | |
| **Survivor Benefit Percentage** | **50%** | **75%** | **100%** |
| *Pension Reduction* | *16%* | *21%* | *26%* |
| | **Benefit Paid as Percent of Participant's Unreduced Annuity Amount** | | |
| **While Pensioner and Qualified Spouse Are Both Alive** | 84% | 79% | 74% |
| **To Pensioner Following Qualified Spouse's Death** | 100% | 100% | 100% |
| **To Qualified Spouse Following Pensioner's Death** | 42% | 59.25% | 74% |

## TABLE 6

### MINIMUM FIVE YEAR CONTRIBUTION RATE REQUIREMENTS

**Year of Retirement**

|         | 1997   | 1998   | 1999   | 2000   | 2001   | 2002   | 2003   | 2004   | 2005   | 2006   | 2007   | 2008   | 2009   |
|---------|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|
| Rate 1  | $2.26  | $2.41  | $2.56  | $2.56  | $2.56  | $2.66  | $2.86  | $3.11  | $3.11  | $3.11  | $3.11  | $3.11  | $3.46  |
| Rate 2  | $2.41  | $2.56  | $2.56  | $2.56  | $2.66  | $2.86  | $3.11  | $3.11  | $3.11  | $3.11  | $3.11  | $3.46  | $3.46  |
| Rate 3  | $2.56  | $2.56  | $2.56  | $2.66  | $2.86  | $3.11  | $3.11  | $3.11  | $3.11  | $3.11  | $3.46  | $3.46  | $3.46  |
| Rate 4  | $2.56  | $2.56  | $2.66  | $2.86  | $3.11  | $3.11  | $3.11  | $3.11  | $3.11  | $3.46  | $3.46  | $3.46  | $3.46  |
| Rate 5  | $2.56  | $2.66  | $2.86  | $3.11  | $3.11  | $3.11  | $3.11  | $3.11  | $3.46  | $3.46  | $3.46  | $3.46  | $3.46  |
| Average | $2.46  | $2.56  | $2.66  | $2.76  | $2.86  | $2.96  | $3.06  | $3.11  | $3.18  | $3.25  | $3.32  | $3.39  | $3.46  |

**Note:**  To satisfy the minimum five year Contribution Rate requirements, the Participant's five year average of Contribution Rates must equal or exceed the average shown in this Table 6 corresponding to the Participant's year of retirement. The Contribution Rate applicable to Contributions received in the Participant's year of retirement is combined with the Contribution Rates applicable to Contributions received in the four Calendar Years immediately preceding the Participant's year of retirement in which the Participant earned Pension Credit.

96

**TABLE 7**

## CALCULATION OF RESUMED AMOUNT FOLLOWING SUSPENSION

The calculation of the Resumed Amount shall be determined as follows:

- Step 1:   Multiply the monthly pension benefit paid times the factor in Part 1 based on the years and months of payments.

- Step 2:   Multiply the amount calculated in Step 1 by the factor in Part 2, based on the years and months of benefit suspension.

- Step 3:   Divide the amount calculated in Step 2 by the factor in Part 3, based on the Pensioner's age at re-retirement.

- Step 4:   Adjust the new gross benefit amount at re-retirement for the form of payment and options originally elected.

- Step 5:   Subtract the amount calculated in Step 4 from the amount determined in Step 3. In no event shall this resultant benefit be less than the monthly benefit amount used in Step 1.

**Note:**   Consideration for pension payments made prior to suspension shall be recovered over the life of the Pensioner only.

97

## TABLE 7 (continued)

## CALCULATION OF RESUMED AMOUNT FOLLOWING SUSPENSION

### Part 1: Accumulation Factor During Period of Pension Payments

| Years | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 0.0000 | 1.0068 | 2.0205 | 3.0411 | 4.0687 | 5.1033 | 6.1449 | 7.1936 | 8.2495 | 9.3126 | 10.3830 | 11.4606 |
| 1 | 12.5456 | 13.6380 | 14.7379 | 15.8452 | 16.9601 | 18.0826 | 19.2128 | 20.3507 | 21.4963 | 22.6498 | 23.8111 | 24.9804 |
| 2 | 26.1576 | 27.3429 | 28.5362 | 29.7377 | 30.9474 | 32.1653 | 33.3915 | 34.6261 | 35.8692 | 37.1207 | 38.3807 | 39.6493 |
| 3 | 40.9266 | 42.2126 | 43.5074 | 44.8110 | 46.1235 | 47.4450 | 48.7754 | 50.1150 | 51.4636 | 52.8215 | 54.1887 | 55.5651 |
| 4 | 56.9510 | 58.3463 | 59.7511 | 61.1656 | 62.5896 | 64.0234 | 65.4669 | 66.9203 | 68.3837 | 69.8570 | 71.3403 | 72.8338 |
| 5 | 74.3374 | 75.8514 | 77.3756 | 78.9102 | 80.4553 | 82.0110 | 83.5772 | 85.1542 | 86.7419 | 88.3404 | 89.9499 | 91.5703 |
| 6 | 93.2017 | 94.8443 | 96.4981 | 98.1632 | 99.8397 | 101.5275 | 103.2269 | 104.9379 | 106.6606 | 108.3950 | 110.1412 | 111.8994 |
| 7 | 113.6695 | 115.4517 | 117.2461 | 119.0527 | 120.8716 | 122.7030 | 124.5468 | 126.4033 | 128.2723 | 130.1542 | 132.0488 | 133.9564 |
| 8 | 135.8770 | 137.8107 | 139.7576 | 141.7178 | 143.6914 | 145.6784 | 147.6789 | 149.6931 | 151.7211 | 153.7629 | 155.8186 | 157.8883 |
| 9 | 159.9722 | 162.0703 | 164.1826 | 166.3094 | 168.4507 | 170.6066 | 172.7773 | 174.9627 | 177.1630 | 179.3783 | 181.6088 | 183.8545 |
| 10 | 186.1154 | 188.3918 | 190.6838 | 192.9913 | 195.3147 | 197.6538 | 200.0089 | 202.3801 | 204.7675 | 207.1711 | 209.5911 | 212.0277 |
| 11 | 214.4809 | 216.9508 | 219.4375 | 221.9412 | 224.4620 | 227.0000 | 229.5553 | 232.1280 | 234.7183 | 237.3263 | 239.9520 | 242.5957 |
| 12 | 245.2573 | 247.9372 | 250.6353 | 253.3518 | 256.0869 | 258.8406 | 261.6131 | 264.4045 | 267.2150 | 270.0446 | 272.8935 | 275.7619 |
| 13 | 278.6498 | 281.5575 | 284.4849 | 287.4324 | 290.3999 | 293.3877 | 296.3958 | 299.4245 | 302.4739 | 305.5440 | 308.6351 | 311.7473 |
| 14 | 314.8807 | 318.0355 | 321.2118 | 324.4097 | 327.6295 | 330.8712 | 334.1351 | 337.4212 | 340.7298 | 344.0609 | 347.4147 | 350.7914 |
| 15 | 354.1912 | 357.6141 | 361.0604 | 364.5302 | 368.0236 | 371.5409 | 375.0822 | 378.6476 | 382.2374 | 385.8517 | 389.4906 | 393.1543 |
| 16 | 396.8430 | 400.5569 | 404.2961 | 408.0608 | 411.8512 | 415.6675 | 419.5098 | 423.3783 | 427.2732 | 431.1947 | 435.1429 | 439.1180 |
| 17 | 443.1203 | 447.1498 | 451.2069 | 455.2916 | 459.4042 | 463.5449 | 467.7137 | 471.9111 | 476.1370 | 480.3918 | 484.6756 | 488.9887 |
| 18 | 493.3311 | 497.7032 | 502.1051 | 506.5370 | 510.9992 | 515.4918 | 520.0150 | 524.5691 | 529.1543 | 533.7707 | 538.4187 | 543.0983 |
| 19 | 547.8099 | 552.5536 | 557.3296 | 562.1383 | 566.9797 | 571.8542 | 576.7619 | 581.7031 | 586.6780 | 591.6869 | 596.7299 | 601.8073 |
| 20 | 606.9193 | | | | | | | | | | | |

98

## TABLE 7 (continued)

## CALCULATION OF RESUMED AMOUNT FOLLOWING SUSPENSION

### Part 2: Accumulation Factor During Period of Pension Suspension

Months

| Years | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 1.0000 | 1.0068 | 1.0137 | 1.0206 | 1.0276 | 1.0346 | 1.0416 | 1.0487 | 1.0559 | 1.0631 | 1.0703 | 1.0776 |
| 1 | 1.0850 | 1.0924 | 1.0999 | 1.1074 | 1.1149 | 1.1225 | 1.1302 | 1.1379 | 1.1456 | 1.1535 | 1.1613 | 1.1692 |
| 2 | 1.1772 | 1.1853 | 1.1933 | 1.2015 | 1.2097 | 1.2179 | 1.2262 | 1.2346 | 1.2430 | 1.2515 | 1.2600 | 1.2686 |
| 3 | 1.2773 | 1.2860 | 1.2948 | 1.3036 | 1.3125 | 1.3215 | 1.3305 | 1.3395 | 1.3487 | 1.3579 | 1.3671 | 1.3765 |
| 4 | 1.3859 | 1.3953 | 1.4048 | 1.4144 | 1.4241 | 1.4338 | 1.4436 | 1.4534 | 1.4633 | 1.4733 | 1.4834 | 1.4935 |
| 5 | 1.5037 | 1.5139 | 1.5242 | 1.5346 | 1.5451 | 1.5556 | 1.5663 | 1.5769 | 1.5877 | 1.5985 | 1.6094 | 1.6204 |
| 6 | 1.6315 | 1.6426 | 1.6538 | 1.6651 | 1.6764 | 1.6879 | 1.6994 | 1.7110 | 1.7227 | 1.7344 | 1.7462 | 1.7581 |
| 7 | 1.7701 | 1.7822 | 1.7944 | 1.8066 | 1.8189 | 1.8313 | 1.8438 | 1.8564 | 1.8691 | 1.8818 | 1.8947 | 1.9076 |
| 8 | 1.9206 | 1.9337 | 1.9469 | 1.9602 | 1.9735 | 1.9870 | 2.0006 | 2.0142 | 2.0280 | 2.0418 | 2.0557 | 2.0697 |
| 9 | 2.0839 | 2.0981 | 2.1124 | 2.1268 | 2.1413 | 2.1559 | 2.1706 | 2.1854 | 2.2003 | 2.2153 | 2.2304 | 2.2457 |
| 10 | 2.2610 | 2.2764 | 2.2919 | 2.3076 | 2.3233 | 2.3392 | 2.3551 | 2.3712 | 2.3874 | 2.4036 | 2.4200 | 2.4365 |
| 11 | 2.4532 | 2.4699 | 2.4867 | 2.5037 | 2.5208 | 2.5380 | 2.5553 | 2.5727 | 2.5903 | 2.6080 | 2.6257 | 2.6437 |
| 12 | 2.6617 | 2.6798 | 2.6981 | 2.7165 | 2.7351 | 2.7537 | 2.7725 | 2.7914 | 2.8105 | 2.8296 | 2.8489 | 2.8684 |
| 13 | 2.8879 | 2.9076 | 2.9275 | 2.9474 | 2.9675 | 2.9878 | 3.0082 | 3.0287 | 3.0493 | 3.0701 | 3.0911 | 3.1122 |
| 14 | 3.1334 | 3.1548 | 3.1763 | 3.1980 | 3.2198 | 3.2417 | 3.2639 | 3.2861 | 3.3085 | 3.3311 | 3.3538 | 3.3767 |
| 15 | 3.3997 | 3.4229 | 3.4463 | 3.4698 | 3.4935 | 3.5173 | 3.5413 | 3.5654 | 3.5898 | 3.6143 | 3.6389 | 3.6637 |
| 16 | 3.6887 | 3.7139 | 3.7392 | 3.7647 | 3.7904 | 3.8163 | 3.8423 | 3.8685 | 3.8949 | 3.9215 | 3.9482 | 3.9751 |
| 17 | 4.0023 | 4.0296 | 4.0571 | 4.0847 | 4.1126 | 4.1406 | 4.1689 | 4.1973 | 4.2260 | 4.2548 | 4.2838 | 4.3130 |
| 18 | 4.3425 | 4.3721 | 4.4019 | 4.4319 | 4.4622 | 4.4926 | 4.5232 | 4.5541 | 4.5852 | 4.6164 | 4.6479 | 4.6796 |
| 19 | 4.7116 | 4.7437 | 4.7761 | 4.8086 | 4.8414 | 4.8745 | 4.9077 | 4.9412 | 4.9749 | 5.0088 | 5.0430 | 5.0774 |
| 20 | 5.1120 | | | | | | | | | | | |

# TABLE 7 (continued)

## CALCULATION OF RESUMED AMOUNT FOLLOWING SUSPENSION

### Part 3:  Pension Conversion Factor at Most Recent Retirement Age

| Years | | | | | | | Months | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 50 | 123.0876 | 122.9694 | 122.8512 | 122.7330 | 122.6148 | 122.4966 | 122.3784 | 122.2602 | 122.1420 | 122.0238 | 121.9056 | 121.7874 |
| 51 | 121.6692 | 121.5465 | 121.4238 | 121.3011 | 121.1784 | 121.0557 | 120.9330 | 120.8103 | 120.6876 | 120.5649 | 120.4422 | 120.3195 |
| 52 | 120.1968 | 120.0692 | 119.9416 | 119.8140 | 119.6864 | 119.5588 | 119.4312 | 119.3036 | 119.1760 | 119.0484 | 118.9208 | 118.7932 |
| 53 | 118.6656 | 118.5329 | 118.4002 | 118.2675 | 118.1348 | 118.0021 | 117.8694 | 117.7367 | 117.6040 | 117.4713 | 117.3386 | 117.2059 |
| 54 | 117.0732 | 116.9351 | 116.7970 | 116.6589 | 116.5208 | 116.3827 | 116.2446 | 116.1065 | 115.9684 | 115.8303 | 115.6922 | 115.5541 |
| 55 | 115.4160 | 115.2721 | 115.1282 | 114.9843 | 114.8404 | 114.6965 | 114.5526 | 114.4087 | 114.2648 | 114.1209 | 113.9770 | 113.8331 |
| 56 | 113.6892 | 113.5390 | 113.3888 | 113.2386 | 113.0884 | 112.9382 | 112.7880 | 112.6378 | 112.4876 | 112.3374 | 112.1872 | 112.0370 |
| 57 | 111.8868 | 111.7299 | 111.5730 | 111.4161 | 111.2592 | 111.1023 | 110.9454 | 110.7885 | 110.6316 | 110.4747 | 110.3178 | 110.1609 |
| 58 | 110.0040 | 109.8402 | 109.6764 | 109.5126 | 109.3488 | 109.1850 | 109.0212 | 108.8574 | 108.6936 | 108.5298 | 108.3660 | 108.2022 |
| 59 | 108.0384 | 107.8685 | 107.6986 | 107.5287 | 107.3588 | 107.1889 | 107.0190 | 106.8491 | 106.6792 | 106.5093 | 106.3394 | 106.1695 |
| 60 | 105.9996 | 105.8239 | 105.6482 | 105.4725 | 105.2968 | 105.1211 | 104.9454 | 104.7697 | 104.5940 | 104.4183 | 104.2426 | 104.0669 |
| 61 | 103.8912 | 103.7101 | 103.5290 | 103.3479 | 103.1668 | 102.9857 | 102.8046 | 102.6235 | 102.4424 | 102.2613 | 102.0802 | 101.8991 |
| 62 | 101.7180 | 101.5312 | 101.3444 | 101.1576 | 100.9708 | 100.7840 | 100.5972 | 100.4104 | 100.2236 | 100.0368 | 99.8500 | 99.6632 |
| 63 | 99.4764 | 99.2840 | 99.0916 | 98.8992 | 98.7068 | 98.5144 | 98.3220 | 98.1296 | 97.9372 | 97.7448 | 97.5524 | 97.3600 |
| 64 | 97.1676 | 96.9702 | 96.7728 | 96.5754 | 96.3780 | 96.1806 | 95.9832 | 95.7858 | 95.5884 | 95.3910 | 95.1936 | 94.9962 |

## TABLE 7 (continued)

## CALCULATION OF RESUMED AMOUNT FOLLOWING SUSPENSION

### Part 3: Pension Conversion Factor at Most Recent Retirement Age

Months

| Years | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|-------|---|---|---|---|---|---|---|---|---|---|----|----|
| 65 | 94.7988 | 94.5976 | 94.3964 | 94.1952 | 93.9940 | 93.7928 | 93.5916 | 93.3904 | 93.1892 | 92.9880 | 92.7868 | 92.5856 |
| 66 | 92.3844 | 92.1808 | 91.9772 | 91.7736 | 91.5700 | 91.3664 | 91.1628 | 90.9592 | 90.7556 | 90.5520 | 90.3484 | 90.1448 |
| 67 | 89.9412 | 89.7362 | 89.5312 | 89.3262 | 89.1212 | 88.9162 | 88.7112 | 88.5062 | 88.3012 | 88.0962 | 87.8912 | 87.6862 |
| 68 | 87.4812 | 87.2750 | 87.0688 | 86.8626 | 86.6564 | 86.4502 | 86.2440 | 86.0378 | 85.8316 | 85.6254 | 85.4192 | 85.2130 |
| 69 | 85.0068 | 84.8008 | 84.5948 | 84.3888 | 84.1828 | 83.9768 | 83.7708 | 83.5648 | 83.3588 | 83.1528 | 82.9468 | 82.7408 |
| 70 | 82.5348 | 82.3309 | 82.1270 | 81.9231 | 81.7192 | 81.5153 | 81.3114 | 81.1075 | 80.9036 | 80.6997 | 80.4958 | 80.2919 |
| 71 | 80.0880 | 79.8865 | 79.6850 | 79.4835 | 79.2820 | 79.0805 | 78.8790 | 78.6775 | 78.4760 | 78.2745 | 78.0730 | 77.8715 |
| 72 | 77.6700 | 77.4691 | 77.2682 | 77.0673 | 76.8664 | 76.6655 | 76.4646 | 76.2637 | 76.0628 | 75.8619 | 75.6610 | 75.4601 |
| 73 | 75.2592 | 75.0562 | 74.8532 | 74.6502 | 74.4472 | 74.2442 | 74.0412 | 73.8382 | 73.6352 | 73.4322 | 73.2292 | 73.0262 |
| 74 | 72.8232 | 72.6167 | 72.4102 | 72.2037 | 71.9972 | 71.7907 | 71.5842 | 71.3777 | 71.1712 | 70.9647 | 70.7582 | 70.5517 |
| 75 | 70.3452 | 70.1353 | 69.9254 | 69.7155 | 69.5056 | 69.2957 | 69.0858 | 68.8759 | 68.6660 | 68.4561 | 68.2462 | 68.0363 |

101

# IMPORTANT

No local Union Officer, Business Agent, Local Union Employee, Employer or Employer Representative or the Pension Fund office personnel, consultant or attorney is authorized to speak for, or on behalf of, or to commit the Trustees of the New England Teamsters and Trucking Industry Pension Fund on any matter relating to that Fund without the express authority of the Trustees.

Only the Trustees of the Fund have the authority to determine eligibility for benefits and the right to participate in the Fund, including the manner in which service is to be credited, eligibility for any benefit, discontinuance of benefits, status as a covered or non-covered employee, credit for Past or Future Service, the level of benefits, and the interpretation and application of Rules and Regulations to a particular claim or application.

For any information concerning the Pension Plan write to:

New England Teamsters & Trucking Industry Pension Fund
1 Wall Street
Burlington, Massachusetts 01803-4757

Telephone:   781-345-4400
Toll-Free:   1-800-447-7709

Or visit our website:   WWW.NETTIPF.com

102

K:\1471\32000\DOC\97penplan100R.doc