# EXHIBIT D1

## WITHDRAWAL AGREEMENT

This Agreement is by and among Americold Logistics, LLC ("Employer"), Teamsters Local 42 affiliated with the International Brotherhood of Teamsters ("Union"), in its capacity as the collective bargaining representatives for Employer's employees represented by the Union ("Employees") and the Trustees of the New England Teamsters and Trucking Industry Pension Fund (the "Pension Fund").

1.  The Employer, Pension Fund and the Union agree that the effective date of this Agreement is October 30, 2017.

2.  The Pension Fund further confirms that the Employer permanently ceased to have any obligation to contribute under the Fund as of midnight on October 31, 2017 and that, as of that time, the Employer withdrew from the Pension Fund in a complete withdrawal within the meaning of ERISA §4203.

3.  The Pension Fund also confirms that the Employer made all required contributions to the Pension Fund for all hours worked by its employees, respectively, through October 31, 2017, as reported to the Pension Fund by the Employer, although subject to audit by the Pension Fund for accuracy and agrees to make contributions for hours worked during the month of October 2017.

4.  The Pension Fund and the Employer recognize that there is a disagreement between them with respect to the amount of the withdrawal liability owed by the Employer. Both parties also recognize that litigation will produce an uncertain result and will be costly and time consuming. Therefore, rather than engage in expensive and lengthy litigation, the Pension Fund and the Employer agree, as a compromise of their respective positions, that, in anticipation of the Employer's complete withdrawal from the Pension Fund effective as of 11:59 PM on October 31, 2017, the Employer's withdrawal liability is $11,356,800 which shall be payable in three hundred sixty (360) payments commencing on November 1, 2017 in the sum of $31,547 per month (except to the extent prepaid in whole or in part as described below). The Pension Fund acknowledges and agrees that upon completion of the payments required in this Agreement, the Employer will have satisfied in full any and all complete and/or partial withdrawal liability owed or incurred by the Employer; provided, however, that the Employer acknowledges that such payments would not satisfy any additional liability that could be imposed on the Employer under ERISA §4219(c)(1)(D) in the event of a mass withdrawal that occurs within the period described in ERISA §4219(c)(1)(D). The Pension Fund and the Employer agree that this Paragraph 4 constitutes the notification to the Employer of its withdrawal liability and schedule for liability payments, and the demand for payment in accordance with the schedule, required under ERISA §4219(b)(1). All payments made by or on behalf of the Employer pursuant to this Paragraph 4 shall be treated as withdrawal liability payments under ERISA §§4201 through 4225.

Notwithstanding the foregoing, the Employer shall be entitled at any time to prepay the present value of the then outstanding amount of the unpaid monthly withdrawal liability payments set forth in this Agreement, in whole or in part, in a lump sum payment utilizing the discount rate of the ten-year United States Treasury Note, in effect on the date of the notice provided by the Employer, plus two (2) percent based on a remaining term of the number of months, if any, between the lump sum payment date and three hundred (300) months from November 1, 2017.

5.  The Pension Fund and the Union agree that satisfaction of the payments required in this Agreement or the full prepayment of the liability will constitute a complete and total accord and satisfaction of any and all claims for withdrawal liability, mass withdrawal liability that may occur in the so-called Alternative Plan entered into by the Employer on November 1, 2017 pursuant to the companion Reentry Agreement, contributions, minimum funding obligations, surcharges and other payments that the Employer may be obligated to make to the Pension Fund with respect to its participation as a contributing employer in the Pension Fund under the terms of the Pension Fund or applicable law (including, without limitation, the Pension Protection Act of 2006, as amended), excepting only any liability that could be imposed on the Employer under ERISA §4219 (c)(1)(D) in the event of a mass withdrawal that occurs within the period described in ERISA §4219(c)(1)(D).

6.  The Pension Fund also represents and warrants, except as provided for in Paragraph 7, that it does not have any rules pursuant to ERISA §4219(c)(5)(B) and that there is no event, other than failure to make a scheduled payment that is not cured within the time period prescribed by ERISA §4219(c)(5)(A), that would permit the Pension Fund to require immediate payment of the Employer's withdrawal liability, as determined under Paragraph 4.

7.  In the event the Employer or the Employer's successors, assigns or purchasers of Employer's assets under ERISA §4204 ("Successor Employer"), if any withdraws from the so-called Alternative Plan as a New Employer for reasons other than those contained in Paragraph 9 of the companion Reentry Agreement entered into by the parties effective on November 1, 2017, the Pension Plan and the Employer agree that the remaining monthly payments under Paragraph 4 that have yet to be paid at the time of withdrawal from the so-called Alternative Plan shall be increased on a monthly basis in an amount, commencing on the first day of the first monthly payment date following the withdrawal from the so-called Alternative Plan by the Employer (or by the Employer's successors, assigns or purchasers of Employer's assets under ERISA §4204, if any) in order to make certain that entire amount of withdrawal liability of $17,735,537 is fully paid within two hundred and forty (240) months from November 1, 2017.  In no event, however, will the amount of  (i) the monthly payments paid under Paragraph 4 plus (ii) the monthly payments due under this Paragraph 7 be less than or exceed $17,735,537, which is the amount that would have been payable by the Employer under ERISA §§4203 and 4219, based on a complete withdrawal utilizing the actuarial assumptions and methods (including but not limited to interest rate, mortality and attrition assumptions) used by the Pension Fund for determining withdrawal liability as of October 31, 2017.

In the event the Employer elects to lump sum its withdrawal liability as set forth in Paragraph 4 and, subsequent thereto, the Employer or Employer's Successor Employer, if any, completely withdraws or completely ceases its participation in the Pension Fund, for any reason other than those reasons contained in Paragraph 9 of the Reentry Agreement entered into by the Parties effective on November 1, 2017, within the period of ten (10) years from the payment of the lump sum, the Pension Fund and the Employer agree that the Employer or Successor Employer, if any, shall pay, in a lump sum payment, the difference between the sum of any monthly payments made prior to the payment of the lump sum plus the lump sum previously paid to the Fund and $11,356,800 ("Remaining Obligation") within sixty (60) days of the complete withdrawal to the Pension Fund.  In the event the Employer's Successor Employer, if any, fail or refuse to remit the lump sum for the Remaining Obligation within sixty (60) days of written demand by the Pension Fund, the Employer shall be responsible for said payment.

In the event the Employer elects to lump sum the withdrawal liability as set forth in Paragraph 4 and, subsequent thereto, the Employer or Employer's Successor Employer, if any, completely withdraws or completely ceases its participation in the Pension Fund, for any reason other than the reasons contained in Paragraph 9 of the Reentry Agreement entered into by the Parties effective on November 1, 2017, after the period of ten (10) years from the payment of the lump sum, the Pension Fund and the Employer agree that no additional monies shall be due the Fund from either the Employer or the Employer's Successor Employer, if any.

8.      Each party represents and warrants that this Agreement has been duly executed and delivered by such party and constitutes the legal, valid and binding obligation of the party enforceable in accordance with its terms.  This Agreement may be executed in counterparts, and each such duly executed counterpart shall be of the same validity, force and effect as the original. Signature pages may be transmitted by facsimile or by electronic mail of a PDF document created from the originally signed document.

IN WITNESS WHEREOF, the parties have caused their hands and seals to be set as of the dates written below.


AMERICOLD LOGISTICS, LLC


_____          By:     _____
        Date                                  Robert L. Hutchison
                                              Vice President Labor Relations

TEAMSTERS LOCAL 42

_____     By:     _____
Date                              Bruce Bolduc, President and Principal
                                  Officer

                                  TRUSTEES OF THE NEW ENGLAND
                                  TEAMSTERS & TRUCKING INDUSTRY
                                  PENSION FUND

_____     By:     _____
Date                              Sean M. O'Brien, Co-Chairman
                                  Union Trustees

_____     By:     _____
Date                              Frank Keller, Co-Chairman
                                  Employer Trustees