UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AMERICOLD LOGISTICS, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 22-cv-11018-ADB |
| | * | |
| NEW ENGLAND TEAMSTERS & | * | |
| TRUCKING INDUSTRY PENSION FUND, et al., | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

BURROUGHS, D.J.

Plaintiff Americold Logistics, LLC ("Americold") brings statutory and common law claims against Defendant New England Teamsters & Trucking Industry Pension Fund ("Pension Fund"), International Brotherhood of Teamsters Local 25 ("Local 25"), and International Brotherhood of Teamsters Local 42 ("Local 42") (collectively, "Defendants") related to agreements signed by the parties concerning withdrawal liability under the Employment Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). Currently before the Court is Defendants' motion to dismiss Americold's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF No. 8]. For the following reasons, the motion is GRANTED.

I.   BACKGROUND

The following facts are taken primarily from the complaint, [ECF No. 1 ("Compl.")], the factual allegations of which are assumed to be true when considering a motion to dismiss, Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014). As it may on a motion to dismiss,

the Court has also considered "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (alteration in original) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)).

Americold is a Delaware limited liability company with operations in Massachusetts. [Compl. ¶¶ 6, 11 (pp. 4–5)].[1] The Pension Fund is a multiemployer pension fund as defined by ERISA, 29 U.S.C. § 1301(a)(3). [Id. ¶ 7]. Local 25 and Local 42 are both labor organizations, each with a principal place of business in Boston, Massachusetts. [Id. ¶¶ 8–9]. Americold has participated in the Pension Fund under two Collective Bargaining Agreements ("CBAs"), one with Local 25, covering Americold's operations in Boston, Massachusetts, and one with Local 42, covering its operations in Gloucester, Massachusetts, since at least late 2017. [Id. ¶¶ 1–2, 11–12 (pp. 4–5)].

In 2011, with approval from the Pension Benefit Guaranty Corporation, the federal agency created by ERISA, the Pension Fund amended its plan document to adopt a "two-pool" method for determining an employer's liability for withdrawing from the Pension Fund. [Compl. ¶¶ 13, 15]; see 29 U.S.C. § 1302. Pursuant to the "two-pool" method, existing employers would remain subject to the Pension Fund's original method of calculating withdrawal liability (the "Legacy Plan"), under which employers were liable for their proportionate share of the Pension Fund's total unfunded vested benefits over a twenty-year period. [Compl. ¶¶ 2, 14]. New employers, on the other hand, would not have liability for unfunded vested benefits that accrued before they entered the Pension Fund (the "Alternative Plan"). [Id. ¶¶ 2, 13]. Additionally,

---

[1] There are two paragraphs numbered 11 and 12 in the complaint. This citation refers to the second paragraph numbered 11 on pages 4 and 5.

under the amendment, existing employers could withdraw from the Legacy Plan and re-enter the newly created Alternative Plan, allowing them to pay a discounted amount for their withdrawal liability over a longer period of time (thirty years), without interest, in addition to contributions under the terms of their CBAs.  [Id. ¶¶ 2, 16].  As outlined in the Pension Plan's model agreement, if these employers later withdrew, they would owe larger monthly payments to account for the difference between their "actual withdrawal liability" and "deemed withdrawal liability under the agreement."  [Id. ¶ 17].

On October 18, 2017, the parties entered into agreements executing Americold's exit from the Legacy Plan and re-entry into the Alternative Plan.  [Compl. ¶¶ 2, 22].  Americold and the Pension Fund signed two sets of agreements, one with Local 25 and one with Local 42, each consisting of a withdrawal agreement (the "Withdrawal Agreements") and a re-entry agreement (the "Re-entry Agreements") (collectively, the "Agreements").  [Id. ¶ 22].  The Agreements used terms defined in ERISA provisions, including "employer," "complete withdrawal," and "partial withdrawal," and did not include alternative definitions for those terms.  [Id. ¶ 18 (citing 29 U.S.C. §§ 3(5), (9), 1301(b)(1), 1383(a), 1385(a))].

In the Withdrawal Agreement with Local 25, Americold agreed to make 360 monthly payments of $6,460 towards its withdrawal liability, for a total of $2,325,600 over thirty years, assuming it did not "withdraw[] from the so-called Alternative Plan."  [Compl. ¶¶ 23–24; ECF No. 1-5 ("Local 25 Withdrawal Agreement") ¶ 7].  If Americold "withdr[e]w[] from the so-called Alternative Plan," Americold would make larger monthly payments towards a larger total, $3,838,386, over twenty years (or 240 months).  [Compl. ¶¶ 23–24; Local 25 Withdrawal Agreement ¶ 7].  The Withdrawal Agreement did not specify the amount of the increased payment, but stated that:

> [R]emaining monthly payments . . . that have yet to be paid at the time of withdrawal from the so-called Alternative Plan shall be increased on a monthly basis in an amount, commencing on the first day of the first monthly payment date following the withdrawal from the so-called Alternative Plan by the Employer . . . in order to make certain that entire amount of withdrawal liability of $3,838,386 is fully paid within two hundred and forty (240) months from November 1, 2017.

[Local 25 Withdrawal Agreement ¶ 7]. The Withdrawal Agreement also stated that "Employer" (defined as Americold) "withdrew from the Pension Fund in a complete withdrawal within the meaning of ERISA §4203[,]" and "[t]he Pension Fund and the Employer agree that this Paragraph 4 constitutes the notification to the Employer of its withdrawal liability and schedule for liability payments, and the demand for payment in accordance with the schedule, required under ERISA § 4219(b)(1)." [Id. ¶¶ 2, 4].

In November 2020, Americold closed its Boston operations. [Compl. ¶ 26]. On December 21, 2020, the Pension Fund issued an invoice to Americold for the month of January 2021 for an increased payment of $17,786.00. [Id.; ECF No. 1-9]. In the following months, the Pension Fund sent similar invoices to Americold. [Compl. ¶ 26]. Americold wrote to the Pension Fund on March 15, 2021, stating that it had not withdrawn from the Alternative Plan but would nonetheless make the increased monthly payments, albeit under protest. [Id. ¶¶ 27, 31].

Americold filed the instant lawsuit on June 27, 2022, alleging that the Pension Fund breached the Withdrawal Agreements by charging Americold the increased monthly payments even though Americold did not withdraw from the Alternative Plan and asking for the return of the payments that Americold made under protest (Counts I and VII, respectively). [Compl. ¶¶ 32–36, 59–62]. Americold's complaint asserts the following additional state and federal statutory and common law claims against all Defendants: breach of the duty of good faith and fair dealing (Count II), declaratory judgment (Count III), violation of Mass. Gen. Laws ch. 93A,

§§ 2(a), 11 (Count IV), breach of 29 U.S.C. § 1394 (Count V), equitable estoppel (Count VI), and reformation (Count VIII). [Id. ¶¶ 37–58, 63–66].

Americold does not allege that it has initiated arbitration.

## II.    LEGAL STANDARD

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in the plaintiff's favor. See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019).

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). "The plausibility standard invites a two-step pavane." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

## III.    DISCUSSION

The MPPAA makes employers withdrawing from a multiemployer pension fund liable for their proportionate share of the fund's unfunded vested benefits. Giroux Bros. Transp., Inc. v. New England Teamsters & Trucking Indus. Pension Fund, 73 F.3d 1, 2–3 (1st Cir. 1996). "The plan sponsor must assess, schedule and demand withdrawal liability payment '[a]s soon as

Case 1:22-cv-11018-ADB   Document 13   Filed 01/31/23   Page 6 of 9

practicable after an employer's complete or partial withdrawal,' [] and an employer must pay according to the Fund's schedule notwithstanding any pending dispute." Id. at 3 (first alteration in original) (quoting 29 U.S.C. § 1399(b)(1) and 29 U.S.C. § 1399(c)(2)).

"If an employer contests either the fact or amount of liability, the dispute must be submitted to arbitration." Alongi v. Moores Crane Rental Corp., No. 12-cv-10055, 2012 WL 6589702, at *3 (D. Mass. Dec. 17, 2012) (citing 29 U.S.C. § 1401(a)(1)); id. (quoting 29 U.S.C. § 1401(a)(1)) ("'Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title [the provisions relating to withdrawal liability] shall be resolved through arbitration.'"). It was "Congress's intention to enact a broad arbitration requirement in the MPPAA. '[A]rbitration reigns supreme under the MPPAA. And the consequences of failing to arbitrate . . . are clearly enunciated by the statute.'" Groden v. J. Tartaglia Trucking, Inc., 235 F. Supp. 3d 326, 331–32 (D. Mass. 2017) (alterations in original) (quoting I.A.M. Nat'l Pension Fund, Plan A, A Benefits v. Clinton Engines Corp., 825 F.2d 415, 422 (D.C. Cir. 1987)). "An employer waives the right to contest the assessment on the merits if it fails to initiate arbitration on a timely basis." Alongi, 2012 WL 6589702, at *2 (quoting Langone v. Bridgeport Steel Co., 757 F. Supp. 2d 62, 65 (D. Mass. 2010)).

"[T]he MPPAA's exhaustion of administrative remedies requirement is not jurisdictional," Debreceni v. Merchants Terminal Corp., 889 F.2d 1, 8 (1st Cir. 1989) (citation and internal quotation marks omitted), but rather "a prudential matter within [the Court's] discretion," T.I.M.E.-DC, Inc. v. Mgmt-Lab. Welfare & Pension Funds, 756 F.2d 939, 945 (2d Cir. 1985).

6

Defendants argue that Americold's complaint is based upon Americold's withdrawal from the Pension Fund pursuant to the Withdrawal Agreements, and the resulting withdrawal liability, and must therefore be dismissed because "[a]n assessment of withdrawal liability is subject to the mandatory arbitration provisions of the MPPAA[.]"  [ECF No. 9 at 8 (quoting Langone, 757 F. Supp. 2d at 65)].  Americold contends that because the Withdrawal Agreements did not constitute a "statutory withdrawal," it is not "disput[ing] any determination of statutory withdrawal or a calculation of statutory withdrawal liability[,]" and, as a result, its claims are not subject to mandatory arbitration.  [ECF No. 12 at 9].  The Court agrees with Defendants.  The parties' baseline disagreement and Americold's claims turn on whether the Agreements constituted a withdrawal within the meaning of the MPPAA, all of which are governed by 29 U.S.C. § 1383 and 29 U.S.C. § 1385, two provisions subject to mandatory arbitration.  For example, Americold's claim in Count VIII that Americold "mistakenly believ[ed] that only a complete or partial withdrawal by Americold" would trigger the increased monthly payments and its request that the Court reform the Withdrawal Agreements into a single agreement that "provid[es] that only a statutory withdrawal by Americold, taken as a whole" triggers such payments, assume that the Withdrawal Agreements did not constitute a withdrawal.  [Compl. ¶¶ 65–66].  This determination is subject to the MPPAA's mandatory arbitration provision.

Claims related to withdrawal liability that courts have found not subject to mandatory arbitration do not implicate the merits of withdrawal liability.  In Alongi v. Moores Crane Rental Corp., for example, the court found that certain claims for fraud and misrepresentation were not subject to the MPPAA's mandatory arbitration provision because they "d[id] not truly dispute the fact or amount of withdrawal liability" but rather implicated the employer's "participation in the Fund in the first place[.]"  2012 WL 6589702 at *3.

7

The out-of-circuit cases cited by Americold for the proposition that claims related to settlement agreements involving withdrawal liability are not subject to mandatory arbitration similarly did not concern whether the agreements themselves constituted withdrawal or other aspects of withdrawal liability. See, e.g., Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc. - Pension Fund v. Centra, 983 F.2d 495, 499 (3d Cir. 1992) (involving fraud and misrepresentation claim related to bankruptcy settlement agreement with a "broad release clause, releasing [the employer] and all of its successors in interest from all claims, including withdrawal liability claims."); Pension Tr. Fund for Operating Eng'rs v. Dalecon, Inc., No. 11-cv-02851, 2014 WL 1007274, at *3–4 (N.D. Cal. Mar. 12, 2014) (claim involving agreement between a fund and an employer settling a dispute involving delinquent fund contributions included a general release and was executed before employer's withdrawal); Operating Eng'rs' Pension Tr. Fund v. Clark's Welding & Mach., 688 F. Supp. 2d 902, 909 (N.D. Cal. 2010) (claim related to delinquency settlement agreement, executed before demand for withdrawal liability, was not subject to arbitration). Where, as here, the claims address the fact or amount of withdrawal liability, they are subject to the MPPAA's mandatory arbitration provision.[2]

## IV. CONCLUSION

Accordingly, for the reasons set forth above, Defendants' motion to dismiss is GRANTED.

---

[2] If Americold believes that it has not received adequate notice of or demand for withdrawal liability, this too is subject to mandatory arbitration. See Amalgamated Lithographers of Am. v. Unz & Co. Inc., 670 F. Supp. 2d 214, 225 (S.D.N.Y. 2009) (quoting Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 262 (2d Cir. 1990)) ("If [the employer] took issue with the adequacy of the notice it received it was required to demand arbitration. . . . 'Any dispute concerning the notice or amount of withdrawal liability shall be resolved through arbitration.'"); Giroux Bros. Transp., 73 F.3d at 4 ("[A]ny dispute regarding the timeliness of the Fund's demand under § 1399(b)(1) is statutorily committed to arbitration in the first instance.").

**SO ORDERED.**

January 31, 2023 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE